**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FTE NETWORKS, INC.                   : | |
|                                      : | |
| Plaintiff         : | |
|                                      : | |
| v.                                   :          No. 1:22-cv-00785 | |
|                                      : | |
| ALEXANDER SZKARADEK AND              : | |
| ANTONI SZKARADEK                     : | |
|                                      : | |
| Defendants         : | |

## ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendants, Alexander Szkaradek and Antoni Szkaradek ("Szkaradeks"), by and through their undersigned counsel, hereby submit this Answer with Affirmative Defenses and Counterclaim in response to the Complaint filed by Plaintiff FTE Networks, Inc. ("FTE"), in accordance with the numbered paragraphs thereof, as follows:

1.      Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

2.      Denied.

3.      Denied.  The Complaint filed by the Commonwealth of Pennsylvania speaks for itself and FTE's characterization of same specifically is denied.

4.      Admitted that the Szkaradeks met with bankruptcy counsel in mid-October 2019. The remaining allegations are denied.

5.      Denied.

6.      Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

7.      Denied.

8.      Denied.

9.      Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

10.      Admitted that FTE was aware of the SEC charges filed against Singal before closing on the Vision portfolio. The remaining allegations are denied.

11.      Denied.  FTE was well aware of the SEC charges against Singal prior to closing on the Vision portfolio. FTE had conducted extensive due diligence prior to closing.

12.      Denied.

13.      Denied.  The press release speaks for itself and FTE's characterization of same specifically is denied.

14.      Denied.

15.      Denied.

16.      Admitted.

17.      Denied.

18.      Denied.  The amendment to bylaws speaks for itself and FTE's characterization of same specifically is denied.

19.      Denied.

20.      Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

21.      Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

22.      Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

23.     Denied.  The Complaint in this case speaks for itself and FTE's characterization of same specifically is denied.

24.     Admitted upon information and belief.

25.     Admitted.

26.     Admitted.

27.     Denied as a conclusion of law to which no response is required.

28.     Denied as a conclusion of law to which no response is required.

29.     Denied as a conclusion of law to which no response is required.

30.     Denied as a conclusion of law to which no response is required.

31.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

32.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

33.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

34.     Denied.

35.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

36.     Denied.

37.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

38.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

39.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

40.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

41.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

42.     Admitted.

43.     Denied as stated.   The SEC's press release speaks for itself and FTE's characterization of same specifically is denied.

44.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

45.     Admitted only that the NYSE commenced de-listing procedures of FTE stock on December 17, 2019.  The remaining allegations are denied.

46.     Denied.  It is admitted that all parties were ready, willing and able to complete the Vision portfolio transaction.   By way of further answer, FTE had conducted extensive due diligence before proceeding with the Vision portfolio transaction.

47.     Denied.

48.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

49.     Admitted that FTE conducted extensive due diligence prior to proceeding with the Vision portfolio transaction.  The remaining allegations are denied.

50.     Denied.  FTE was well aware of consumer complaints that had been lodged against Vision in various states.

4

51.     Denied.  FTE conducted extensive due diligence before proceeding with the Vision portfolio transaction.

52.     Denied.

53.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

54.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

55.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

56.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

57.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

58.     Denied.  FTE conducted extensive due diligence on all of the matters that are the subject of this paragraph. By way of further answer, this paragraph contains conclusions of law to which no response is required.

59.     Admitted that the Szkaradeks consulted with a bankruptcy attorney in October 2019.  The remaining allegations are denied.

60.     Denied.   After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied. By way of further answer, FTE conducted extensive due diligence before proceeding with the closing on the Vision portfolio.

61.     Denied.  The consideration to have been received by the various parties is set forth in the Purchase Agreement, which speaks for itself and FTE's characterization of its terms specifically is denied.

62.     Denied.  The consideration to have been received by the various parties is set forth in the Purchase Agreement, which speaks for itself and FTE's characterization of its terms specifically is denied.

63.     Denied.   After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

64.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

65.     Denied.

66.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

67.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

68.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

69.     Denied.

70.     Denied.

71.     Denied.

72.     Admitted that Alex Szkaradek opened one or more accounts at TD Bank.  The remaining allegations are denied.

73.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

74.     Denied as a conclusion of law to which no response is required.

75.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

76.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

77.     Denied.  The Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

78.     Denied.  The amendment to the Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

79.     Denied.  The amendment to the Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

80.     Denied.  The amendment to the Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.  The amendment to the Purchase Agreement speaks for itself and FTE's characterization of its terms specifically is denied.

86.     Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

87.    Denied.   The Allegheny County Court Order speaks for itself and FTE's characterization of its terms specifically is denied.

88.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

89.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

90.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

91.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

92.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

93.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

94.    Denied.

95.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

96.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

97.    Denied.

98.    Denied as stated.  It is admitted only that April 2, 2021, an amendment to the Purchase Agreement was executed by the parties.

99.     Denied as stated.  It is admitted only that on April 2, 2021, an amendment to the Purchase Agreement was executed by the parties.

100.    Denied.

101.    Denied.  The email referenced in this paragraph speaks for itself and FTE's characterization of same specifically is denied.

102.    Denied.  The email referenced in this paragraph speaks for itself and FTE's characterization of same specifically is denied.

103.    Denied.  The Innovativ Agreement speaks for itself and FTE's characterization of same specifically is denied.

104.    Denied.  The Ladnier Agreement speaks for itself and FTE's characterization of same specifically is denied.

105.    Denied as a conclusion of law to which no response is required.

106.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

107.    Denied.

108.    Denied.  The written consent speaks for itself and FTE's characterization of same specifically is denied.

109.    Denied.  The written consent speaks for itself and FTE's characterization of same specifically is denied.

110.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

111.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

112.    Denied.

## FIRST CAUSE OF ACTION
### (Fraudulent Inducement and Fraud)

113.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

114.    Denied as a conclusion of law to which no response is required.

115.    Denied.

116.    Denied as a conclusion of law to which no response is required.

117.    Denied as a conclusion of law to which no response is required.

118.    Denied as a conclusion of law to which no response is required.

119.    Denied as a conclusion of law to which no response is required.

120.    Denied as a conclusion of law to which no response is required.

121.    Denied as a conclusion of law to which no response is required.

## SECOND CAUSE OF ACTION
### (Tortious Interference with Contract)

122.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

123.    Denied.  The Purchase Agreement speaks for itself and FTE's characterization of same specifically is denied.

124.    Denied.  The April 2021 Amendment speaks for itself and FTE's characterization of same specifically is denied.

125.    Denied.  After reasonable investigation, the Szkaradeks are without knowledge or information sufficient to form a belief as to the truth of this allegation, which accordingly is denied.

126.    Denied.

127.   Denied.

128.   Denied.

129.   Denied.

130.   Denied.

131.   Denied.

### THIRD CAUSE OF ACTION
**(Indemnification)**

132.   The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

133.   Denied.

134.   Denied.  The Purchase Agreement speaks for itself and FTE's characterization of same specifically is denied. By way of further answer, Section 7.1 of the PSA contains the following limitation on indemnification:

(a) Except as set forth in Section 7.1(b), the representations and warranties in this Agreement, together with the associated rights of indemnification, shall survive the Closing hereunder and continue in full force and effect until the date that is twenty-four months (24) after the Closing, and shall thereupon expire, together with the associated rights of indemnification, except to the extent that a claim for breach thereof has been asserted in writing prior to such expiration (in which event the representation or warranty, together with the associated rights of indemnification shall survive with respect to such claim until such claim has been resolved).

135.   Denied.

136.   Denied.

137.   Denied.

138.   Denied.

139.   Denied.

140.   Denied.

11

141.    Denied.

142.    Denied.

143.    Denied.

144.    Denied.

145.    Denied.

## FOURTH CAUSE OF ACTION
### (Civil Conspiracy)

146.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

147.    Denied as a conclusion of law to which no response is required.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Denied.

## FIFTH CAUSE OF ACTION
### (Breach of Contract and Injunctive Relief)

155.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

156.    Denied.

157.    Denied.  The Purchase Agreement speaks for itself and FTE's characterization of same specifically is denied.

158.    Denied.  The Amendment to the Purchase Agreement speaks for itself and FTE's characterization of same specifically is denied.

159.    Denied.

160.    Denied.  The Purchase Agreement speaks for itself and FTE's characterization of same specifically is denied.

161.    Denied.

162.    Denied as a conclusion of law to which no response is required.

163.    Denied as a conclusion of law to which no response is required.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the doctrine of estoppel.

### SECOND AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by payment.

### THIRD AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the statute of frauds.

### FOURTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the statute of limitations.

### FIFTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the doctrine of waiver.

### SIXTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by its own actions and omissions.

### SEVENTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited because FTE did not reasonably rely on any alleged misrepresentation, omission, disclosure or non-disclosure by the Szkaradeks.

### EIGHTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the failure to establish any intentional conduct by the Szkaradeks.

### NINTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the gist of the action doctrine.

### TENTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited because FTE cannot demonstrate that it has suffered any harm or damage as a result of any action or omission of the Szkaradeks.

### ELEVENTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited because FTE cannot establish the prerequisites to obtaining any injunctive relief.

### TWELFTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the doctrine of unclean hands.

### THIRTEENTH AFFIRMATIVE DEFENSE

FTE's claims are barred for failure of consideration.

### FOURTEENTH AFFIRMATIVE DEFENSE

FTE's claims are barred on the basis that FTE committed the first material breach.

### FIFTEENTH AFFIRMATIVE DEFENSE

FTE's claims are barred and/or limited by the doctrine of ratification.

### SIXTEENTH AFFIRMATIVE DEFENSE

FTE's claims are barred on the basis that a party cannot interfere with its own contracts.

## SEVENTEENTH AFFIRMATIVE DEFENSE

FTE's claims are barred by the doctrine of intra-corporate conspiracy.

## EIGHTEENTH AFFIRMATIVE DEFENSE

FTE's claims are barred by the doctrine of unjust enrichment.

## NINETEENTH AFFIRMATIVE DEFENSE

FTE's claims are barred by the doctrine of accord and satisfaction.

## TWENTIETH AFFIRMATIVE DEFENSE

FTE's claims are barred by the doctrines of settlement and release.

## TWENTYFIRST AFFIRMATIVE DEFENSE

FTE's claims are barred by the terms and conditions of the PSA, as amended.

## TWENTYSECOND AFFIRMATIVE DEFENSE

FTE's claims are barred by its breach of the implied covenant of good faith and fair dealing.

## COUNTERCLAIM

164.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

### Nature of the Dispute

165.    FTE is a Nevada corporation, registered to do business in the state of Nevada.

166.    FTE is a former publicly-traded telecommunications company which now focuses almost entirely on real estate investments. FTE was listed on the New York Stock Exchange ("NYSE").

167.    The Szkaradeks are stockholders of FTE, having obtained their stock in FTE through a 2019 Purchase Agreement (the "PSA"), as amended in 2021, under which the

Szkaradeks transferred a portfolio of over 3,100 residential homes and other properties to FTE in exchange for 22,063,376 shares of common stock, 200 shares of preferred stock, promissory notes, re-transfer of certain properties, and $250,000 in cash, among other consideration (and with the stock representing approximately 40% of the issued and outstanding FTE stock).[1]

168.    The real estate assets were held in limited liability companies, and consisted of lease-to-own homes located throughout the country (the "Vision Portfolio").  The Vision Portfolio was principally-owned by the Szkaradeks and was managed by Vision Property Management, LLC which was owned by the Szkaradeks.

169.    The Vision Portfolio was subject to indebtedness which funded the purchase of the properties, and also claims and other indebtedness.

170.    To manage and oversee the Vision Portfolio, FTE created a wholly-owned subsidiary, U.S. Home Rentals, LLC ("USHR").

171.    Because lease-to-own homes was a relatively new concept, the Vision Portfolio came under legislative and legal scrutiny beginning in 2016, three years before the parties entered into the PSA.[2] After the attorney generals of multiple states initiated consumer rights litigation against the Vision Portfolio, the Vision Portfolio was restructured to focus on a pure rental model in order to be brought into better compliance with consumer protection laws.

---

[1]    The Szkaradeks have the right to Board representation under a Second Amendment to the PSA, Section 6, but the Szkaradeks have not been permitted by FTE and its authorized agents to exercise this right.

[2]    In November 2016, the Wisconsin Attorney General filed a lawsuit against Vision Property Management, LLC, the umbrella entity for the Vision Portfolio.  In March 2017, the Maryland Attorney General filed a similar lawsuit against Vision.  The Vision Portfolio became national news and was reported on by the New York Times.  On August 1, 2018, the New York Attorney General filed a similar lawsuit against Vision. And, on August 31, 2018, a private class action was filed in New Jersey against Vision.

172.    Since the sale of the Vision Portfolio and the Szkaradeks' receipt of FTE stock, FTE has squandered the equity created by the Vision Portfolio acquisition and faces the imminent loss of the Vision Portfolio, which is FTE's last viable asset.

173.    FTE has reneged upon its obligations to the Szkaradeks by failing the pay the purchase price, failing to pay the $10,000,000 initial down payment, failing to pay the promissory notes to the Szkaradeks, and failing to pay the debt and claims FTE assumed as part of the purchase, resulting in substantial portions of the Vision Portfolio being lost to foreclosures, lawsuits, and tax sales.

174.    FTE's actions and omissions have resulted in a receiver being appointed by a state court in Pennsylvania to oversee USHR.

General Allegations

175.    In 2019, Richard De Silva ("De Silva"), an FTE board member, pursued an opportunity for FTE to purchase the Vision Portfolio from the Szkaradeks.

176.    De Silva was interested in acquiring the Vision Portfolio for FTE in 2019 so that De Silva could execute his loan-to-own scheme[3] on FTE's only viable subsidiary at the time, Benchmark Builders, LLC ("Benchmark"). FTE's shareholders' claims surrounding De Silva's scheme to acquire Benchmark through the loan-to-own scheme are the subject of pending litigation in Nevada. *See Innovativ v. Beys, et al.,* 1:22-cv-01184 (D. Nev.).

177.    In October 2019, De Silva became a director of FTE, and appointed his acquaintance Michael Beys ("Beys") as a director as well as a third independent director, Joseph Cunningham ("Cunningham").

---

[3] "Loan-to-own" schemes are ways in which a creditor obtains a valuable corporate asset for a fraction of its value, by loaning money less than the value of the asset to a company that the lender knows cannot pay the debt, securing the loan with the valuable asset, and then foreclosing upon it.

178.    Around this same time, on October 10, 2019, the Pennsylvania Attorney General filed a lawsuit against Vision Property Management, LLC.

179.    The existence of the Pennsylvania Attorney General lawsuit did not deter De Silva from pursuing the Vision Portfolio, and De Silva continued to focus his attention on FTE acquiring the Vision Portfolio as a replacement asset for Benchmark.

180.    At the same time, the Szkaradeks were seeking a purchaser of the Vision Portfolio who had the financial ability to inject capital and funding to be used to pay the related indebtedness and claims against the properties, rehabilitate and improve the properties. The Szkaradeks had indications of interest from a number of parties.

181.    The Szkaradeks were approached by De Silva to sell the Vision Portfolio to FTE. De Silva represented and assured the Szkaradeks that FTE had current access to capital and funding to be used to handle the claims against the properties, and to rehabilitate and improve the properties, and De Silva represented that FTE would assuredly be able to acquire further and additional capital and funds for this purpose. De Silva aggressively pursued the Szkaradeks promising to pay them $10,000,000 up front as an inducement.

182.    On December 20, 2019, four years *after* the Vision litigation began (*see* footnote 1, *supra*), and over three years *after* the Vision litigation became national news, FTE entered into the PSA with the Szkaradeks to acquire the Vision Portfolio.  The Szkaradeks transferred title to the Vision Portfolio to FTE (USHR) the same day.

183.    FTE did not blindly enter into the PSA. Far from it. FTE performed significant due diligence, as FTE was by then being run by Beys, an experienced lawyer and real estate investor. Prior to closing on the transaction, FTE was aware of an independent audit that Turner Stone &

Company had performed on the Vision Portfolio. In addition, FTE hired the reputable law firm of Troutman Pepper to draft the PSA and assist FTE with due diligence.

184.    In addition, Lateral Investment Management – managed by De Silva – prepared an investment memorandum on December 6, 2019 (prior to closing), which specifically noted that there were "legal risk factors" associated with the Vision Portfolio. The Memorandum went on to conclude that future legal risk was mitigated and ultimately recommended that FTE move forward with acquiring the Vision Portfolio. The Memorandum stated that the Vision Portfolio was then valued at $350,000,000.

185.    As part of the PSA, the Szkaradeks agreed to provide FTE with a schedule of pending litigation. Included within that schedule was every pending lawsuit against the Szkaradeks and the Vision Portfolio and notifications of homes that were not in compliance with local laws, or that had other issues which may lead to future litigation.

186.    All pending litigation against the Vision Portfolio was included in Appendix 3.14 of the PSA.

187.    Pursuant to the PSA, the initial terms of the purchase were that the Szkaradeks would sell the Vision Portfolio to FTE in exchange for: (a) a $250,000 deposit; (b) $10,000,000 in cash; (c) and approximately 20% of FTE's common stock, as well as preferred shares to provide over a 40% ownership stake in FTE.

188.    While the Szkaradeks transferred title to FTE (USHR) to the Vision Portfolio on December 20, 2019, FTE paid the Szkaradeks $250,000 and nothing else.

189.    On December 30, 2019, FTE and the Szkaradeks entered into a First Amendment to the PSA which acknowledged FTE had paid $250,000, but, in lieu of a $10,000,000 payment, FTE instead issued short-term promissory notes to the Szkaradeks due March 2020 for

approximately $4.8 million each, and agreed to issue FTE stock to the Szkaradeks, and also to re-transfer certain properties that were part of the Vision Portfolio back to the Szkaradeks. The Szkaradeks received the short-term notes from FTE, in addition to the $250,000 that had been paid, but no other promised consideration including the issuance of FTE stock to the Szkaradeks. That same day, FTE filed an 8-K which specifically stated:

> The Seller is engaged in ongoing litigation as part of the acquisition . . . Management does not believe that any ongoing litigation will have a material impact on the statements of revenue and certain expenses . . .

"Management" of FTE as of December 30, 2019 consisted of Beys, the CEO, and also included Maria Fernandez, Esq., FTE's current in-house counsel.

190.    As a result, De Silva was able to obtain Benchmark because he "replaced" Benchmark with the Vision Portfolio. And Beys, who undoubtedly performed competent due diligence on this transaction, raised no issues with the Vision Portfolio whose legal woes had been the subject of national news for years, including within the weeks leading up to the closing of the PSA, and which were fully disclosed to and known by FTE.

191.    On or about January 5, 2020, the Pennsylvania Attorney General obtained a temporary restraining order against the Szkaradeks, requiring them to place their $4.8 million promissory notes from FTE into an escrow account. On January 14, 2020, the Szkaradeks and the Pennsylvania Attorney General entered into an escrow agreement pursuant to which the Szkaradeks placed the FTE promissory notes into escrow. The promissory notes represent the approximately $10,000,000 in cash that FTE owed the Szkaradeks for the closing on the Vision Portfolio.

192.    Nothing in the escrow agreement with the Pennsylvania Attorney General prohibits the Szkaradeks from voting their shares of FTE stock, and nothing in the escrow agreement places the Szkaradeks' stock into escrow.

193.    In February 2020, Beys filed a verification on behalf of FTE in the Pennsylvania Attorney General Litigation, in which he confirmed that no proceeds had been paid to the Szkaradeks under the promissory notes and that he did not know when, or if, FTE could ever pay these notes.  According to Ms. Fernandez, FTE's general counsel, as of February 2020, the Szkaradeks had not yet been transferred FTE stock either, as she attests under oath that the stock transfer did not occur until April 2021.

194.    In March 2020, FTE failed to pay and defaulted on the short-term promissory notes to the Szkaradeks.

195.    On July 1, 2020, Inmost, the senior secured creditor for the Vision Portfolio, declared default. At risk of defaulting on its obligations with another Vision Portfolio secured creditor, DLP Lending Fund, LLP ("DLP"), FTE spent weeks negotiating a refinancing of the Vision Portfolio's loans with DLP.  DLP is the lender who initiated the Pennsylvania litigation in Northampton County, and which obtained a personal guarantee from Beys. Beys asserts his DLP guarantee was the product of fraud because Beys, a self-proclaimed experienced lawyer, disingenuously claims he did not read the agreement he signed multiple times in multiple places.

196.    On November 5, 2020, FTE filed a 10-K for 2019, that specifically identified pending litigation against Vision.

197.    On December 22, 2020, FTE issued a shareholder update. In that update, FTE stated its decision to separate from another subsidiary and solely pursue the Vision Portfolio.

198.     The FTE December 2020 update was also issued at a time when Beys had admitted that the Szkaradeks had not been paid under their notes for the Vision Portfolio, and when Ms. Fernandez conceded the Szkaradeks had not yet been paid in stock either.

199.     On April 2, 2021, FTE entered into the Second Amendment to the PSA with the Szkaradeks, at a time when it indisputably knew that the lenders were declaring default and that the Vision Portfolio was engaged in litigation. FTE was required to issue revised promissory notes to replace the short-term notes it defaulted on back in March 2020, and FTE issued – finally – the required common and preferred stock to the Szkaradeks.

200.     By entering into the Second Amendment, FTE ratified the PSA rather than rescinding it.

201.     Under the Second Amendment to the PSA, the Szkaradeks agreed to transfer half of their stock to First Capital Real Estate Trust, Inc. ("FC REIT").

202.     However, as of April 2021, and unknown to the Szkaradeks, FC REIT was not in good standing with Maryland, its state of incorporation, and was on the brink of having its corporate charter forfeited.

203.     On information and belief, Singal and/or entities he managed were still majority shareholders of FC REIT as of April 2021.

204.     In October 2021, the State of Maryland forfeited FC REIT's corporate charter, rendering it a legal non-entity.

205.     FTE claims that the Second Amendment to the PSA, supposedly unbeknownst to FTE, was an attempt by the Szkaradeks to initiate a hostile takeover of FTE's management by Singal, although FTE had failed to issue its stock and to pay other consideration to the Szkaradeks as required back in December 2019. However, FTE protected itself from such an attack in the

Second Amendment. Specifically, under Paragraph 1.4(b)(iii), FTE agreed that the Szkaradeks could transfer stock to Singal and his affiliates if "all voting rights associated with such [stock] shall be exercised by the [Szkaradeks]." If the Szkaradeks transferred stock in violation of this provision, both beneficial ownership and ownership of record would be restored to the Szkaradeks. And, if the Szkaradeks issued stock and did not retain the voting rights, the transfer would be "void ab initio" and the stock would be returned to the Szkaradeks.

206.    In early 2022, De Silva offered to loan FTE money to financially support the Vision Portfolio, and requested a poison pill in exchange, i.e. to make De Silva and/or Lateral the majority shareholder by allowing De Silva to purchase extra shares at a lower rate that would have priority voting rights.

207.    De Silva's plan was thwarted when the FTE shareholders representing a majority interest of the shares amended the bylaws to prevent a poison pill from occurring.  What resulted has been a war of attrition by Beys against all shareholders who signed the amendment. The Szkaradeks were among the shareholders who signed this amendment.

208.    On February 15, 2022, FTE filed counterclaims against the Szkaradeks in the DLP Pennsylvania litigation.

209.    In April 2022, FTE defaulted on its promissory notes to the Szkaradeks, issued in connection with the Second Amendment.

210.    In the DLP Pennsylvania litigation, in direct contradiction to its statements to the SEC, FTE argued for the first time that the Szkaradeks had defrauded FTE by failing to inform it about the nature of the litigation against the Vision Portfolio.

211.    Beys verified the allegations in the Pennsylvania DLP Lawsuit.

212.   The Szkaradeks filed a demurrer to the Pennsylvania DLP Lawsuit for lack of jurisdiction, because the PSA contains a venue and jurisdiction clause that requires any disputes as to the PSA's terms be filed in Delaware, not Pennsylvania.  The Pennsylvania court dismissed FTE's frivolous claims against the Szkaradeks for lack of jurisdiction.

213.   On information and belief, Beys has personally contacted various state attorney generals and requested that they initiate litigation against FTE related to the Vision Portfolio.

214.   On information and belief, Beys and/or De Silva encouraged and/or induced a third party to file an arbitration action against FTE, the Szkaradeks, USHR, Singal, FC REIT and various other parties on the premise that a finder's fee for the Vision Portfolio is owed to that third party.

215.   On information and belief, FTE is unwilling to negotiate directly with FTE's largest lenders, leaving the Szkaradeks vulnerable to personal guarantees on these loans.

216.   In June of 2022, FTE filed the current action against the Szkaradeks, undoubtedly as a result of the dismissal of similar claims they had attempted unsuccessfully to assert in the Pennsylvania action.

217.   In the Complaint, FTE essentially seeks to unwind the purchase of the Vision Portfolio, and seeks to enjoin the Szkaradeks from exercising their FTE shareholder voting rights.

218.   In July of 2022, FTE shareholders Innovativ Media Group, Inc. ("Innovativ") and TTP8, LLC ("TTP8") filed a shareholder derivative lawsuit in the United States District Court for the District of Nevada against Beys, De Silva and FTE (among others), Case No. 2:22-cv-01184 ("Nevada Derivative Lawsuit"), asserting claims for the various breaches of fiduciary duties committed by Beys and De Silva.

219.   In August of 2022, FTE took additional steps designed to interfere with, and prevent the Szkaradeks from exercising, their shareholder voting rights.

220.    Through a Schedule 14-A dated August 17, 2022, FTE issued a Notice of Annual Meeting of Stockholders ("the Meeting") and Special Meeting Proxy Statement ("Proxy Statement") for Monday, August 29, 2022 commencing at 9:00 a.m. (Eastern Time).

221.    The Notice, issued through Beys, provided that at the Meeting FTE would consider and vote on (among other items): 1) to elect three directors to serve on the Company's Board of Directors, and, 2) to approve the amended and restated Company Bylaws.

222.    Beys, De Silva and Jeremy Stillings were nominated by FTE for the three Board Directors seats.

223.    Current director Cunningham was not nominated by FTE and would have been deemed removed from the Board and having vacated his position.

224.    On page 22 of the Notice of Annual Meeting of Stockholders, FTE in essence implements self-help and blatantly purported to exclude the Szkaradeks – who own approximately 40% of the issued and outstanding FTE stock - from those entitled to vote at the shareholder meeting and represents that:

(1) The beneficial ownership reported in the table includes: (l) 33,110,629 shares of Common Stock beneficially owned and entitled to vote as of July 21 , 2022; (2) 2,844,985 shares of Common Stock which are issuable pursuant to conversions of the Company's legacy Series A and Series A-1 Preferred Stock; and (3) the voting rights associated with 1,000 shares of the Company's Series J-1 Preferred Stock and 1,000 shares of the Company's Series J-2 Preferred Stock issued to the Lateral Entities, which are entitled to 6,405.5 votes per share of Series J-1 and Series J-2 Preferred Stock.

(2) **Excludes shares of Common Stock and Series I Preferred Stock issued to Alexander Szkaradek and Antoni Szkaradek in connection with the Second Amendment to the Vision Asset Purchase Agreement, which are the subject of litigation in Delaware and are not entitled to vote at this Meeting**.

(Emphasis added).

225.    The efforts of FTE, through Beys, to unilaterally disenfranchise the Szkaradeks is transparently improper – FTE justifies its purported interference with their voting rights simply because FTE itself has brought the instant lawsuit against the Szkaradeks.

226.    The existence of litigation (especially litigation brought by an entrenched Board seeking to eliminate any competition for control) is not legal justification to exercise self-help and disenfranchise the Szkaradeks, and the Szkaradeks' shares are not restricted under FTE's articles of incorporation or certificate of designation.

227.    Furthermore, it is believed and therefore alleged that FTE plans to issue additional shares of FTE stock, common or preferred, or other securities convertible into or exchangeable or exercisable for shares of common or preferred stock in an effort to further dilute the Szkaradeks' voting rights.

228.    Designating any new series of preferred shares and/or converting any existing common stock into a series of preferred shares prior to the next properly noticed annual meeting with all record shareholders entitled to vote is likewise improper.

229.    This is not a theoretical dispute – the Szkaradeks possess enough votes to impact the election of any Board Director candidate – including Beys and De Silva – and FTE's efforts are designed simply to prevent the Szkaradeks' franchise.

230.    The effect of a board meeting and the election of directors without the Szkaradeks participation would be to freeze-out the Szkaradeks, deprive them of the value of their investment in FTE, and accomplish the hijacking of proper corporate governance in favor of rank gamesmanship.

231.    Stockholders like the Szkaradeks have the right to choose those individuals who, as members of the board, will direct and oversee the business and affairs of the corporation. Simply because FTE has sued the Szkaradeks does not allow FTE to unilaterally eliminate their franchise.

232.    Because FTE is a Nevada corporation, shareholder voting rights associated with its stock are governed by Chapter 78 of the Nevada Revised Statutes. Under Nevada law, all shareholders owning shares as of the record date may vote at a meeting of the shareholders.  Nev. Rev. St. 78.350(1). Voting rights may only be limited by the articles of incorporation or in the certificate of designation. *Id.*

233.    There was no justification for preemptively interfering with the exercise of the Szkaradeks' franchise at a shareholder's meeting and Beys' and De Silva's effort to do so was a violation of the control group's fiduciary duty.

234.    On August 25, 2022, the Szkaradeks filed a Motion for Preliminary Injunction before this Court, seeking to enjoin the August 29 shareholder's meeting from going forward.

235.    In addition, Innovativ filed a complaint in the United States District Court for the District of Nevada against Beys, De Silva and FTE, Case No. 2:22-cv-01362 ("Nevada Proxy Lawsuit") as a result of the failure to make required, accurate proxy filings and other reports with the SEC regarding FTE, also seeking to prohibit the shareholders meeting from going forward.

236.    Fortunately, after Innovativ went to Court in Nevada seeking to prohibit the August 29, 2022 shareholders' meeting from going forward, and after the Szkaradeks filed its injunction petition in this Court and participated in a telephone conference with this Court, FTE at the last moment cancelled the shareholder's meeting.

237.    As a result of all of the above, the Szkaradeks have not, and upon information and belief will not, receive the consideration to which they are entitled under the PSA.

## COUNT I – FRAUDULENT INDUCEMENT

238.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

239.    FTE, by and through its authorized representatives, made material misrepresentations of fact to the Szkaradeks for purposes of inducing the Szkaradeks to enter into the PSA and also the Second Amendment.

240.    The material misrepresentations of fact were made knowingly and intentionally, with knowledge of their falsity, for purposes of causing the Szkaradeks to enter into the PSA and Second Amendment.

241.    The material misrepresentations were made with the intent of misleading the Szkaradeks into relying upon these representations.

242.    The Szkaradeks reasonably and justifiably relied upon the material misrepresentations of fact made by FTE and its authorized representatives.

243.    FTE caused the Szkaradeks to incur harm and damage as a result of the Szkaradeks reasonable reliance on material misrepresentations of fact made by FTE and its authorized representatives.

244.    The Szkaradeks harm and damage includes, but is not limited to, the loss of the value of the Vision Portfolio.

245.    Through its actions and omissions and those of its authorized representatives, FTE has wasted and lost many of the properties that were a part of the Vision Portfolio.

246.    As a result of FTE's fraudulent inducement as set forth herein, the PSA, and all amendments, must be rescinded such that ownership of the Vision Portfolio is returned to the

Szkaradeks, and the Szkaradeks will in turn return to FTE the stock and promissory notes currently held by the Szkaradeks.

247.    In addition, to the extent that FTE has wasted properties that were part of the Vision portfolio and as a result cannot be returned to the Szkaradeks, a judgment for rescissory damages in the amount of the value of those wasted and lost properties must be entered in favor of the Szkaradeks.

**WHEREFORE**, for these reasons, Defendants Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Plaintiff, FTE Network, Inc., and that the Court order that the PSA between the Szkaradeks and FTE be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by FTE, be entered in favor of the Szkaradeks and against FTE, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## <u>COUNT II – MISREPRESENTATION</u>
### <u>(in the alternative to the fraudulent inducement claim)</u>

248.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

249.    FTE, by and through its authorized representatives, made material misrepresentations of fact to the Szkaradeks that induced the Szkaradeks to enter into the PSA and also the Second Amendment.

250.    The material misrepresentations of fact, even if innocently made, misled the Szkaradeks into relying upon these representations.

251.    The Szkaradeks reasonably and justifiably relied upon the material misrepresentations of fact made by FTE and its authorized representatives.

252.    FTE caused the Szkaradeks to incur harm and damage as a result of the Szkaradeks reasonable reliance on material misrepresentations of fact made by FTE and its authorized representatives.

253.    The Szkaradeks harm and damage includes, but is not limited to, the loss of the value of the Vision Portfolio.

254.    Through its actions and omissions and those of its authorized representatives, FTE has wasted and lost many of the properties that were a part of the Vision Portfolio.

255.    As a result of FTE's misrepresentations as set forth herein, the PSA, and all amendments, must be rescinded such that ownership of the Vision Portfolio is returned to the Szkaradeks, and the Szkaradeks will in turn return to FTE the stock and promissory notes currently held by the Szkaradeks.

256.    In addition, to the extent that FTE has wasted properties that were part of the Vision portfolio and as a result cannot be returned to the Szkaradeks, a judgment for rescissory damages in the amount of the value of those wasted and lost properties must be entered in favor of the Szkaradeks.

**WHEREFORE**, for these reasons, Defendants Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Plaintiff, FTE Network, Inc., and that the Court order that the PSA between the Szkaradeks and FTE be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by FTE, be entered in favor of the Szkaradeks and against FTE, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## COUNT III – BREACH OF CONTRACT

257.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

258.    FTE and the Szkaradeks entered into agreements (the PSA and Second Amendment) in which FTE was required to provide the Szkaradeks with substantial consideration in the form of stock, promissory notes, and other consideration in exchange for the Vision Portfiolio.

259.    FTE has breached the contract by failing to provide the Szkaradeks with the consideration required by the PSA in exchange for the Vision Portfolio, and by failing and refusing to take required steps to protect the equity that FTE obtained through the Vision Portfolio.

260.    FTE's breach has caused damage to the Szkaradeks, and will continue to cause substantial further damage to the Szkaradeks as long as FTE (itself and through USHR) continue to administer the Vision Portfolio, such that rescission is the only appropriate relief to be granted.

261.    As a result of FTE's breaches as set forth herein, the PSA must be rescinded such that ownership of the Vision Portfolio is returned to the Szkaradeks, and the Szkaradeks will in turn return to FTE the stock and promissory notes currently held by the Szkaradeks.

262.    In addition, to the extent that FTE has lost or wasted properties that were part of the Vision Portfolio and as a result cannot be returned to the Szkaradeks, a judgment in the amount of the value of those wasted or lost properties must be entered in favor of the Szkaradeks.

**WHEREFORE**, for these reasons, Defendants Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Plaintiff, FTE Network, Inc., and that the Court order that the PSA between the Szkaradeks and FTE be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by FTE, be entered

31

in favor of the Szkaradeks and against FTE, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

**COUNT IV – NEGLIGENT MISREPRESENTATION**
**(In the Alternative)**

263.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length

264.    FTE and its authorized agents Beys and De Silva owed a duty of care to the Szkaradeks as FTE shareholders.

265.    FTE and its authorized agents supplied false information to the Szkaradeks.

266.    FTE and its authorized agents knew or should have known that the information provided to the Szkaradeks was false.

267.    FTE and its authorized agents failed to exercise reasonable care in communicating this information to the Szkaradeks.

268.    The Szkaradeks reasonably relied on the false information that was provided to them.

269.    The Szkaradeks were financially harmed by relying on the false information provided by FTE and its authorized agents.

**WHEREFORE**, for these reasons, Defendants Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Plaintiff, FTE Network, Inc., and that the Court order that the PSA between the Szkaradeks and FTE be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by FTE, be entered in favor of the Szkaradeks and against FTE, plus such other and further relief to which the Court finds the Szkaradeks are entitled (including but not limited to pecuniary damages).

## COUNT V – DECLARATORY JUDGMENT

270.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

271.    The Szkaradeks are current record shareholders of FTE.

272.    As shareholders, the Szkaradeks are entitled to vote their shares.

273.    FTE has sought to invalidate the Szkaradeks voting rights and prevent them from voting at any FTE shareholders meeting.

274.    FTE's attempts to invalidate the Szkaradeks' voting rights has no basis in law or in fact.

275.    There is an actual case and controversy regarding the ability of the Szkaradeks to vote their shares.

**WHEREFORE**, Szkaradeks respectfully request that the Court enter a declaratory judgment in favor of the Szkaradeks and against FTE that the Szkaradeks, as long as they remain the record owners of shares of FTE stock, have the right and ability to vote those shares, notwithstanding FTE's arguments to the contrary, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## COUNT VI - ACCOUNTING

276.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

277.    FTE has failed and refused to protect FTE's financial status or to maintain FTE's assets.

278.    As shareholders, the Szkaradeks are entitled to know the financial status of the company in which they have invested, yet FTE has failed and refused to provide this information to the Szkaradeks.

279.    Accordingly, the Szkaradeks request an accounting of FTE so that the Szkaradeks can ascertain the true extent of their financial harm.

280.    The Szkaradeks have been forced to obtain counsel and are entitled to an award of reasonable attorneys' fees and costs.

**WHEREFORE**, Szkaradeks respectfully request that the Court enter an Order requiring FTE to provide an accounting to the Szkaradeks from December 30, 2019 to the present, plus attorneys' fees and such other and further relief to which the Court finds the Szkaradeks are entitled.

## COUNT VII – INJUNCTIVE RELIEF

281.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

282.    As a result of FTE's actions and omissions set forth herein, as well as its demonstrated commitment to do virtually anything to harm the interests of its shareholders, the Szkaradeks face the imminent risk of harm that FTE will continue to take efforts to minimize FTE's value, to jettison assets, and/or to further disenfranchise shareholders by diluting stock rights and/or stock value.

283.    The Szkaradeks have no adequate remedy at law because the harm cannot be remedied by an award of monetary damages.

284.    The Szkaradeks are entitled to an injunction prohibiting FTE from undertaking any efforts to minimize FTE's value, to jettison or transfer assets, and/or to further disenfranchise shareholders by diluting stock rights and/or stock value.

285.    The balance of the public interest weighs in favor of the requested injunction.

**WHEREFORE**, Szkaradeks respectfully request that the Court enter an Order prohibiting FTE from undertaking any efforts to minimize FTE's value, to jettison or transfer assets, and/or to further disenfranchise shareholders by diluting stock rights and/or stock value, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## COUNT VIII – ABUSE OF PROCESS

286.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

287.    By initiating the pursuing the litigation set forth herein, and by making multiple materially false, inaccurate and/or misleading statements to courts as set forth herein, FTE and its authorized agents had an ulterior motive and purpose other than resolving a legal dispute.

288.    The ulterior motive and purpose was to delay and prevent the Szkaradeks from exercising their rights as FTE shareholders.

289.    The ulterior motive and purpose was to harm FTE, to the detriment of FTE shareholders including the Szkaradeks.

290.    The Szkaradeks have been directly damaged as a result of FTE's actions as set forth herein.

291.    FTE's conduct and that of its authorized agents was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

**WHEREFORE**, for these reasons, Defendants Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Plaintiff, FTE Network, Inc., in an amount in excess of $75,000, plus punitive damages and such other and further relief to which the Court finds the Szkaradeks are entitled.

## COUNT IX –VIOLATION OF SEC RULE 10b-5

292.    The Szkaradeks incorporate by reference all prior paragraphs as though fully set forth herein at length.

293.    FTE and its authorized agents made materially false statements and omissions to the Szkaradeks as set forth herein.

294.    The materially false statements and omissions were made by FTE and its authorized agents with the specific intent to deceive, defraud and manipulate the Szkaradeks, and with actual knowledge that the statements and omissions were false, or at least with reckless disregard for their truth.

295.    There was a direct connection between the materially false statements and omissions and the Szkaradeks' acquisition of FTE stock.

296.    The Szkaradeks reasonably and justifiably relied upon FTE's and its authorized agent's materially false statements and omissions.

297.    FTE and its authorized agents proximately caused the Szkaradeks economic loss, harm and damage.

**WHEREFORE**, for these reasons, Defendants Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Plaintiff, FTE Network, Inc., in an amount in excess of $75,000, plus punitive damages and such other and further relief to which the Court finds the Szkaradeks are entitled.

Respectfully submitted,

**LAMB McERLANE PC**

Dated:  September 5, 2022          By:     */s/ Virginia W. Guldi*
                                          Virginia Whitehill Guldi, ID No. 2792
                                          24 East Market Street, P.O. Box 5656
                                          West Chester, Pennsylvania 19381
                                          Telephone: (610) 430-8000
                                          Email: vguldi@lambmcerlane.com

                                          Of Counsel (admitted *pro hac vice*):
                                          Joel L. Frank
                                          John J. Cunningham, IV
                                          Guy A. Donatelli
                                          LAMB McERLANE, PC
                                          24 East Market Street, P.O. Box 5656
                                          West Chester, Pennsylvania 19381
                                          Telephone: (610) 430-8000
                                          Email: jfrank@lambmcerlane.com
                                          Email: jcunningham@lambmcerlane.com
                                          Email: gdonatelli@lambmcerlane.com
                                          *Attorneys for Defendants*
                                          *Alexander Szkaradek and Antoni Szkaradek*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that in this case a complete copy of the foregoing pleading has been filed electronically and is available for viewing and downloading from the ECF system. This document is being served upon the all counsel of record, via ECF notification.

**LAMB McERLANE PC**

Dated:  September 5, 2022  By:  */s/ Virginia W. Guldi*
Virginia Whitehill Guldi, ID No. 2792
24 East Market Street, P.O. Box 5656
West Chester, Pennsylvania 19381
Telephone: (610) 430-8000
Email: vguldi@lambmcerlane.com

Of Counsel (admitted *pro hac vice*):
Joel L. Frank
John J. Cunningham, IV
Guy A. Donatelli
LAMB McERLANE, PC
24 East Market Street, P.O. Box 5656
West Chester, Pennsylvania 19381
Telephone: (610) 430-8000
Email: jfrank@lambmcerlane.com
Email: jcunningham@lambmcerlane.com
Email: gdonatelli@lambmcerlane.com
*Attorneys for Defendants*
*Alexander Szkaradek and Antoni Szkaradek*