**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

FTE NETWORKS, INC.                          :   No. 1:22-cv-00785
                                            :
           Plaintiff                        :
                                            :
      v.                                    :
                                            :
ALEXANDER SZKARADEK                         :
and ANTONI SZKARADEK                        :
                                            :
           Defendants                       :
                                            :
      v.                                    :
                                            :
MICHAEL BEYS; RICHARD DE SILVA; US HOME     :
RENTALS, LLC; LATERAL U.S. OPPORTUNITIES    :
FUND AI, L.P.; LATERAL U.S. CREDIT          :
OPPORTUNITIES FUND QP, L.P.; LATERAL CREDIT :
OPPORTUNITIES, LLC; LATERAL INVESTMENT      :
MANAGEMENT, LLC; LATERAL FTE FEEDER, LLC;   :
and LATERAL JUSCOM FEEDER, LLC              :
                                            :
           Additional Defendants            :

**THIRD-PARTY COMPLAINT AGAINST ADDITIONAL DEFENDANTS**
**MICHAEL BEYS, RICHARD DE SILVA, US HOME RENTALS, LLC,**
**LATERAL U.S. OPPORTUNITIES FUND AI, L.P., LATERAL U.S. CREDIT**
**OPPORTUNITIES FUND QP, L.P., LATERAL CREDIT OPPORTUNITIES, LLC,**
**LATERAL INVESTMENT MANAGEMENT, LLC, LATERAL FTE FEEDER, LLC,**
**AND LATERAL JUSCOM FEEDER, LLC**

Defendants, Alexander Szkaradek and Antoni Szkaradek ("Szkaradeks"), by and through

their undersigned counsel, hereby file this Third-Party Complaint against Additional Defendants,

Michael Beys, Richard De Silva, US Home Rentals, LLC, Lateral U.S. Credit Opportunities AI,

L.P., Lateral U.S. Credit Opportunities Fund Q.P., L.P., Lateral Credit Opportunities, LLC, Lateral

Investment Management, LLC, Lateral FTE Feeder, LLC, and Lateral Juscom Feeder, LLC

("Additional Defendants"), and in support thereof aver as follows:

1.      The Szkaradeks bring this Third Party Complaint against Plaintiff FTE Networks, Inc. ("FTE")'s current interim Chief Executive Officer and director, Michael Beys ("Beys") and director Richard De Silva ("De Silva"), and related claims against US Home Rentals, LLC ("USHR"), and Lateral U.S. Credit Opportunities AI, L.P., Lateral U.S. Credit Opportunities Fund Q.P., L.P., Lateral Credit Opportunities, LLC, Lateral Investment Management, LLC, Lateral FTE Feeder, LLC, and Lateral Juscom Feeder, LLC (collectively the "Lateral Entities").

**The Parties**

2.      On information and belief, Beys is a resident of New York, and is a current director and the interim Chief Executive Officer of FTE.

3.      On information and belief, De Silva is a resident of California, and is a current director of FTE.

4.      On information and belief, USHR is a wholly-owned subsidiary of FTE, which, together with FTE through its officers and representatives, manages and administers the Vision Portfolio described below.

5.      On information and belief, Lateral U.S. Credit Opportunities AI, L.P. is a Delaware limited partnership with its principal place of business in California.

6.      On information and belief, Lateral U.S. Credit Opportunities Fund Q.P., L.P. is a Delaware limited partnership with its principal place of business in California.

7.      On information and belief, Lateral Credit Opportunities, LLC is a Delaware limited liability company with its principal place of business in California.

8.      On information and belief, Lateral Investment Management, LLC is a Delaware limited liability company with its principal place of business in California.

2

9.      On information and belief, Lateral FTE Feeder, LLC, is a Delaware limited liability company with its principal place of business in California.

10.     On information and belief, Lateral Juscom Feeder, LLC is a Delaware limited liability company with its principal place of business in California.

### General Allegations

11.     FTE is a former publicly-traded telecommunications company which now focuses almost entirely on real estate investments. FTE was listed on the New York Stock Exchange ("NYSE").

12.     The Szkaradeks are stockholders of FTE, having obtained their stock in FTE through a 2019 Purchase Agreement (the "PSA"), as amended in 2021, under which the Szkaradeks transferred a portfolio of over 3,100 residential homes and other properties to FTE and USHR in exchange for 22,063,376 shares of FTE common stock, 200 shares of FTE preferred stock, FTE promissory notes, re-transfer of certain properties, and $250,000 in cash, among other consideration (and with the FTE stock representing approximately 40% of the issued and outstanding FTE stock).[1]

13.     The real estate assets were held in limited liability companies, and consisted of lease-to-own homes located throughout the country (the "Vision Portfolio").  The Vision Portfolio was principally-owned by the Szkaradeks and was managed by Vision Property Management, LLC which was owned by the Szkaradeks.

14.     The Vision Portfolio was subject to indebtedness which funded the purchase of the properties, and also claims and other indebtedness.

---

[1]      The Szkaradeks have the right to Board representation under a Second Amendment to the PSA, Section 6, but the Szkaradeks have not been permitted by FTE and its authorized agents, including some Additional Defendants, to exercise this right.

15.     To assist with the management and administration of the Vision Portfolio, FTE created a wholly-owned subsidiary, USHR.

16.     USHR was also a party to the PSA, and through the PSA USHR became the owner of title to the limited liability companies that own the properties in the Vision Portfolio.

17.     Because lease-to-own homes was a relatively new concept, the Vision Portfolio came under legislative and legal scrutiny beginning in 2016, three years before the parties entered into the PSA.[2] After the attorney generals of multiple states-initiated consumer rights litigation against the Vision Portfolio, the Vision Portfolio was restructured to focus on a pure rental model in order to be brought into better compliance with consumer protection laws.

18.     Since the sale of the Vision Portfolio and the Szkaradeks' receipt of FTE stock, FTE and Additional Defendants have squandered the equity created by the Vision Portfolio acquisition and FTE faces the imminent loss of the Vision Portfolio, which is FTE's last viable asset.

19.     FTE has reneged upon its obligations to the Szkaradeks by failing to pay the purchase price, failing to pay the $10,000,000 initial down payment, failing to pay the promissory notes to the Szkaradeks, and failing to pay the debt and claims FTE assumed as part of the purchase, resulting in substantial portions of the Vision Portfolio being lost to foreclosures, lawsuits, and tax sales.

---

[2]     In November 2016, the Wisconsin Attorney General filed a lawsuit against Vision Property Management, LLC, the umbrella entity for the Vision Portfolio.  In March 2017, the Maryland Attorney General filed a similar lawsuit against Vision.  The Vision Portfolio became national news and was reported on by the New York Times.  On August 1, 2018, the New York Attorney General filed a similar lawsuit against Vision. And, on August 31, 2018, a private class action was filed in New Jersey against Vision.

20.     FTE's actions and omissions have resulted in a receiver being appointed by a state court in Pennsylvania to oversee FTE's subsidiary USHR.

**<u>Specific Allegations</u>**

21.     In 2019, Richard De Silva ("De Silva"), an FTE board member, began to pursue an opportunity for FTE to purchase the Vision Portfolio from the Szkaradeks.

22.     De Silva was interested in acquiring the Vision Portfolio for FTE in 2019 so that De Silva could execute his loan-to-own scheme[3] on FTE's only viable subsidiary at the time, Benchmark Builders, LLC ("Benchmark"). FTE's shareholders' claims surrounding De Silva's scheme to acquire Benchmark through the loan-to-own scheme are the subject of pending litigation in Nevada. *See Innovativ v. Beys, et al.,* 1:22-cv-01184 (D. Nev.).

23.     In October 2019, De Silva became a director of FTE, and appointed his acquaintance Michael Beys ("Beys") as a director as well as a third independent director, Joseph Cunningham ("Cunningham").

24.     Around this same time, on October 10, 2019, the Pennsylvania Attorney General filed a lawsuit against Vision Property Management, LLC.

25.     The existence of the Pennsylvania Attorney General lawsuit was known to and did not deter De Silva from pursuing the Vision Portfolio, and De Silva continued to focus his attention on FTE acquiring the Vision Portfolio as a replacement asset for Benchmark.

26.     At the same time, the Szkaradeks were seeking a purchaser of the Vision Portfolio who had the financial ability to inject capital and funding to be used to pay the related indebtedness

---

[3] "Loan-to-own" schemes are ways in which a creditor obtains a valuable corporate asset for a fraction of its value, by loaning money less than the value of the asset to a company that the lender knows cannot pay the debt, securing the loan with the valuable asset, and then foreclosing upon it.

and claims against the properties, rehabilitate and improve the properties. The Szkaradeks had indications of interest from a number of parties.

27.     The Szkaradeks were approached by De Silva to sell the Vision Portfolio to FTE. De Silva provided the Szkaradeks with financial and other information for FTE and represented and assured the Szkaradeks that FTE had current access to capital and funding to be used to handle the claims against the properties, and to rehabilitate and improve the properties, and De Silva represented that FTE had commitments for additional financing and would assuredly be able to acquire further and additional capital and funds for this purpose. De Silva aggressively pursued the Szkaradeks promising to pay them $10,000,000 up front as an inducement.

28.     On December 20, 2019, four years *after* the Vision litigation began (*see* footnote 2, *supra*), and over three years *after* the Vision litigation became national news, FTE and USHR entered into the PSA with the Szkaradeks to acquire the Vision Portfolio. The Szkaradeks transferred title to the Vision Portfolio to FTE (USHR) the same day.

29.     FTE did not blindly enter into the PSA. Far from it. FTE performed significant due diligence, as FTE was by then being run by Beys, an experienced lawyer and real estate investor. Prior to closing on the transaction, FTE was aware of an independent audit that Turner Stone & Company had performed on the Vision Portfolio. In addition, FTE hired the reputable law firm of Troutman Pepper to draft the PSA and assist FTE with due diligence.

30.     In addition, one of the Lateral Entities, Lateral Investment Management, LLC – managed by De Silva – prepared an investment memorandum on December 6, 2019 (prior to closing), which specifically noted that there were "legal risk factors" associated with the Vision Portfolio. The Memorandum went on to conclude that future legal risk was mitigated and ultimately recommended that FTE move forward with acquiring the Vision Portfolio. The

Memorandum stated that the Vision Portfolio was then valued at $350,000,000. DeSilva also provided FTE financial information to the Szkaradeks representing the Vision Portfolio had a value of $350,000,000.

31.     As part of the PSA, legal counsel for FTE required the Szkaradeks to provide substantial due diligence documents and information, including documents and information concerning claims and litigation involving the Szkaradeks, Vision, and the Vision Portfolio. The Szkaradeks provided this required information to FTE, including a detailed schedule of pending litigation against the Szkaradeks, Vision and the Vision Portfolio. Included within that schedule was every pending lawsuit against the Szkaradeks, Vision, and the Vision Portfolio, including notifications of homes that were not in compliance with local laws, or that had other issues which may lead to future litigation.

32.     All pending litigation against the Szkaradeks, Vision, and the Vision Portfolio was included in Appendix 3.14 of the PSA.

33.     Pursuant to the PSA, the initial terms of the purchase were that the Szkaradeks would sell the Vision Portfolio to FTE through FTE's wholly-owned subsidiary USHR in exchange for: (a) a $250,000 deposit; (b) $10,000,000 in cash; (c) and approximately 20% of FTE's common stock, as well as preferred FTE shares to provide over a 40% ownership stake in FTE.

34.     While the Szkaradeks transferred title to FTE (USHR) for the Vision Portfolio on December 20, 2019, FTE paid the Szkaradeks $250,000 and nothing else.

35.     On December 30, 2019, FTE and the Szkaradeks entered into a First Amendment to the PSA which acknowledged FTE had paid $250,000, but, in lieu of a $10,000,000 payment, FTE instead issued short-term promissory notes to the Szkaradeks due March 2020 for approximately $4.8 million each, and agreed to issue FTE stock to the Szkaradeks, and also to re-

transfer certain properties that were part of the Vision Portfolio back to the Szkaradeks. The Szkaradeks received the short-term notes from FTE, in addition to the $250,000 that had been paid, but no other promised consideration including the issuance of FTE stock to the Szkaradeks. That same day, FTE filed an 8-K which specifically stated:

> The Seller is engaged in ongoing litigation as part of the acquisition . . . Management does not believe that any ongoing litigation will have a material impact on the statements of revenue and certain expenses . . .

"Management" of FTE as of December 30, 2019 consisted of Beys, the CEO, and also included Maria Fernandez, Esq., FTE's current in-house counsel.

36.     As a result, De Silva was able to obtain Benchmark because he "replaced" Benchmark with the Vision Portfolio. And Beys, who undoubtedly performed competent due diligence on this transaction, raised no issues with the Vision Portfolio whose legal woes had been the subject of national news for years, including within the weeks leading up to the signing of the December 2019 PSA, and which were fully disclosed to and known by FTE.

37.     Upon obtaining Benchmark, De Silva arranged for the transfer of Benchmark to one or more of the Lateral Entities, which currently hold legal title to Benchmark.

38.     On or about January 5, 2020, the Pennsylvania Attorney General obtained a temporary restraining order against the Szkaradeks, requiring them to place their $4.8 million promissory notes from FTE into an escrow account. On January 14, 2020, the Szkaradeks and the Pennsylvania Attorney General entered into an escrow agreement pursuant to which the Szkaradeks were required to place the FTE promissory notes into escrow. The promissory notes represent the approximately $10,000,000 in cash that FTE owed the Szkaradeks for the closing on the Vision Portfolio.

39.     Nothing in the escrow agreement with the Pennsylvania Attorney General prohibits the Szkaradeks from voting their shares of FTE stock, and nothing in the escrow agreement places the Szkaradeks' stock into escrow.

40.     In February 2020, Beys filed a verification on behalf of FTE in the Pennsylvania Attorney General Litigation, in which he confirmed that no proceeds had been paid to the Szkaradeks under the promissory notes and that he did not know when, or if, FTE could ever pay these notes.   According to Ms. Fernandez, FTE's general counsel, as of February 2020, the Szkaradeks had not yet been transferred FTE stock either, as she attests under oath that the stock transfer did not occur until April 2021.

41.     In March 2020, FTE failed to pay and defaulted on the short-term promissory notes to the Szkaradeks.

42.     Similarly, later in 2020, upon information and belief, FTE and USHR continued to fail to pay their debts when they defaulted on a short-term promissory note that required a $2.8 million dollar payment to Carl Owen LaBruce Koon ("Koon"), as alleged in a lawsuit that is now pending in the Court of Common Pleas for the Eleventh Judicial Circuit in the County of Lexington, South Carolina, No. 2022-CP-32-00223.

43.     On July 1, 2020, Inmost, the senior secured creditor for the Vision Portfolio, declared default. At risk of defaulting on its obligations with another Vision Portfolio secured creditor, DLP Lending Fund, LLP ("DLP"), FTE spent weeks negotiating a refinancing of the Vision Portfolio's loans with DLP.  DLP is the lender who initiated the Pennsylvania litigation in Northampton County, and which obtained a personal guarantee from Beys. Beys asserts his DLP guarantee was the product of fraud because Beys, a self-proclaimed experienced lawyer, disingenuously claims he did not read the agreement he signed multiple times in multiple places.

44.     On November 5, 2020, FTE filed a 10-K for 2019, that specifically identified pending litigation against Vision.

45.     On December 22, 2020, FTE issued a shareholder update. In that update, FTE stated its decision to separate from another subsidiary and solely pursue the Vision Portfolio.

46.     The FTE December 2020 update was also issued at a time when Beys had admitted that the Szkaradeks had not been paid under their notes for the Vision Portfolio, and when Ms. Fernandez conceded the Szkaradeks had not yet been paid in stock either.

47.     On April 2, 2021, FTE entered into the Second Amendment to the PSA with the Szkaradeks, at a time when it indisputably knew that the lenders were declaring default and that the Vision Portfolio was engaged in litigation. FTE was required to issue revised promissory notes to replace the short-term notes it defaulted on back in March 2020, and FTE issued – finally – the required common and preferred stock to the Szkaradeks.

48.     By entering into the Second Amendment, FTE ratified the PSA rather than rescinding it.

49.     Under the Second Amendment to the PSA, the Szkaradeks agreed to transfer half of their stock to First Capital Real Estate Trust, Inc. ("FC REIT").

50.     However, as of April 2021, and unknown to the Szkaradeks, FC REIT was not in good standing with Maryland, its state of incorporation, and was on the brink of having its corporate charter forfeited.

51.     In October 2021, the State of Maryland forfeited FC REIT's corporate charter, rendering it a legal non-entity.

52.     FTE claims that the Second Amendment to the PSA, supposedly unbeknownst to FTE, was an attempt by the Szkaradeks to initiate a hostile takeover of FTE's management,

10

although FTE had failed to issue its stock and to pay other consideration to the Szkaradeks as required back in December 2019. However, FTE protected itself from such an attack in the Second Amendment. Specifically, under Paragraph 1.4(b)(iii), FTE agreed that the Szkaradeks could transfer stock to Suneet Singal (who had introduced De Silva to the Szkaradeks in 2019) ("Singal") and his affiliates if "all voting rights associated with such [stock] shall be exercised by the [Szkaradeks]." If the Szkaradeks transferred stock in violation of this provision, both beneficial ownership and ownership of record would be restored to the Szkaradeks. And, if the Szkaradeks issued stock and did not retain the voting rights, the transfer would be "void ab initio" and the stock would be returned to the Szkaradeks.

53.     In early 2022, De Silva offered to loan FTE money to financially support the Vision Portfolio, and requested a poison pill in exchange, i.e. to make De Silva and/or one or more of the Lateral Entities the majority shareholder by allowing De Silva to purchase extra shares at a lower rate that would have priority voting rights.

54.     De Silva's plan was thwarted when the FTE shareholders representing a majority interest of the shares amended the bylaws to prevent a poison pill from occurring.  What resulted has been a war of attrition by Beys against all shareholders who signed the amendment. The Szkaradeks were among the shareholders who signed this amendment.

55.     On February 15, 2022, FTE filed counterclaims against the Szkaradeks in the DLP Pennsylvania litigation.

56.     In April 2022, FTE defaulted on its promissory notes to the Szkaradeks, issued in connection with the Second Amendment.

57.     In the DLP Pennsylvania litigation, in direct contradiction to its statements to the SEC, FTE argued for the first time that the Szkaradeks had defrauded FTE by failing to inform it about the nature of the litigation against the Vision Portfolio.

58.     Beys verified the allegations in the Pennsylvania DLP Lawsuit.

59.     The Szkaradeks filed a demurrer to the Pennsylvania DLP Lawsuit for lack of jurisdiction, because the PSA contains a venue and jurisdiction clause that requires any disputes as to the PSA's terms be filed in Delaware, not Pennsylvania.  The Pennsylvania court dismissed FTE's frivolous claims against the Szkaradeks for lack of jurisdiction.

60.     On information and belief, Beys has personally contacted various state attorney generals and requested that they initiate litigation against FTE related to the Vision Portfolio.

61.     On information and belief, Beys and/or De Silva encouraged and/or induced a third party to file an arbitration action against FTE, the Szkaradeks, USHR, Singal, FC REIT and various other parties on the premise that a finder's fee for the Vision Portfolio is owed to that third party.

62.     On information and belief, FTE is unwilling to negotiate directly with FTE's largest lenders, leaving the Szkaradeks vulnerable to personal guarantees on these loans.

63.     In June of 2022, FTE filed the current action against the Szkaradeks, undoubtedly as a result of the dismissal of similar claims they had attempted unsuccessfully to assert in the Pennsylvania action.

64.     In the Complaint, FTE seeks to disenfranchise the Szkaradek's equity interest in FTE, but to otherwise allow it to fully retain all of the remaining Vision Portfolio.  FTE seeks to enjoin the Szkaradeks from exercising their FTE shareholder voting rights.

65.     In July of 2022, FTE shareholders Innovativ Media Group, Inc. ("Innovativ") and TTP8, LLC ("TTP8") filed a shareholder derivative lawsuit in the United States District Court for

the District of Nevada against Beys, De Silva and FTE (among others), Case No. 2:22-cv-01184 ("Nevada Derivative Lawsuit"), asserting claims for the various breaches of fiduciary duties committed by Beys and De Silva.

66.     In August of 2022, FTE took additional steps designed to interfere with, and prevent the Szkaradeks from exercising, their shareholder voting rights.

67.     Through a Schedule 14-A dated August 17, 2022, FTE issued a Notice of Annual Meeting of Stockholders ("the Meeting") and Special Meeting Proxy Statement ("Proxy Statement") for Monday, August 29, 2022 commencing at 9:00 a.m. (Eastern Time).

68.     The Notice, issued through Beys, provided that at the Meeting FTE would consider and vote on (among other items): 1) to elect three directors to serve on the Company's Board of Directors, and, 2) to approve the amended and restated Company Bylaws.

69.     Beys, De Silva and Jeremy Stillings were nominated by FTE for the three Board Directors seats. Stillings is an attorney, now a managing director for SOLIC, and specializes in client bankruptcy and work-outs.

70.     Current director Cunningham was not nominated by FTE and would have been deemed removed from the Board and having vacated his position.

71.     On page 22 of the Notice of Annual Meeting of Stockholders, FTE in essence implements self-help and blatantly purported to exclude the Szkaradeks – who own approximately 40% of the issued and outstanding FTE stock - from those entitled to vote at the shareholder meeting and represents that:

(1) The beneficial ownership reported in the table includes: (l) 33,110,629 shares of Common Stock beneficially owned and entitled to vote as of July 21 , 2022; (2) 2,844,985 shares of Common Stock which are issuable pursuant to conversions of the Company's legacy Series A and Series A-1 Preferred Stock; and (3) the voting rights associated with 1,000 shares of the Company's Series J-1 Preferred Stock and 1,000

shares of the Company's Series J-2 Preferred Stock issued to the Lateral Entities, which are entitled to 6,405.5 votes per share of Series J-1 and Series J-2 Preferred Stock.

(2) **Excludes shares of Common Stock and Series I Preferred Stock issued to Alexander Szkaradek and Antoni Szkaradek in connection with the Second Amendment to the Vision Asset Purchase Agreement, which are the subject of litigation in Delaware and are not entitled to vote at this Meeting**.

(Emphasis added).

72.     The efforts of FTE, through Beys, to unilaterally disenfranchise the Szkaradeks is transparently improper – FTE justifies its purported interference with their voting rights simply because FTE itself has brought the instant lawsuit against the Szkaradeks.

73.     The existence of litigation (especially litigation brought by an entrenched Board seeking to eliminate any competition for control) is not legal justification to exercise self-help and disenfranchise the Szkaradeks, and the Szkaradeks' shares are not restricted under FTE's articles of incorporation or certificate of designation.

74.     Furthermore, it is believed and therefore alleged that FTE plans to issue unauthorized additional shares of FTE stock, common or preferred, or other securities convertible into or exchangeable or exercisable for shares of common or preferred stock in an effort to further dilute the Szkaradeks' voting rights.

75.     Designating any new series of preferred shares and/or converting any existing common stock into a series of preferred shares prior to the next properly noticed annual meeting with all record shareholders entitled to vote is likewise improper.

76.     The Szkaradeks possess enough votes to impact the election of any Board Director candidate – including Beys and De Silva – and FTE's efforts are designed simply to prevent the Szkaradeks' franchise.

14

77.     The effect of a board meeting and the election of directors without the Szkaradeks participation would be to freeze-out the Szkaradeks, deprive them of the value of their investment in FTE, and accomplish the hijacking of proper corporate governance in favor of rank gamesmanship.

78.     Stockholders like the Szkaradeks have the right to choose those individuals who, as members of the board, will direct and oversee the business and affairs of the corporation. Simply because FTE has sued the Szkaradeks does not allow FTE to unilaterally eliminate their franchise.

79.     Because FTE is a Nevada corporation, shareholder voting rights associated with its stock are governed by Chapter 78 of the Nevada Revised Statutes. Under Nevada law, all shareholders owning shares as of the record date may vote at a meeting of the shareholders.  Nev. Rev. St. 78.350(1). Voting rights may only be limited by the articles of incorporation or in the certificate of designation. *Id.*

80.     There was no justification for preemptively interfering with the exercise of the Szkaradeks' franchise at a shareholder's meeting and Beys' and De Silva's effort to do so was a violation of the control group's fiduciary duty.

81.     On August 25, 2022, the Szkaradeks filed a Motion for Preliminary Injunction before this Court, seeking to enjoin the August 29 shareholder's meeting from going forward.

82.     In addition, Innovativ filed a complaint in the United States District Court for the District of Nevada against Beys, De Silva and FTE, Case No. 2:22-cv-01362 ("Nevada Proxy Lawsuit") as a result of the failure to make required, accurate proxy filings and other reports with the SEC regarding FTE, also seeking to prohibit the shareholders meeting from going forward.

83.     Fortunately, after Innovativ went to Court in Nevada seeking to prohibit the August 29, 2022 shareholders' meeting from going forward, and after the Szkaradeks filed their injunction

petition in this Court and participated in a telephone conference with this Court, FTE at the last moment cancelled the shareholder's meeting.

84.    As a result of all of the above, the Szkaradeks have not, and upon information and belief will not, receive the consideration to which they are entitled from FTE and USHR under the PSA.

**FIRST CLAIM FOR RELIEF**
**(Breach of Duty of Loyalty v. Beys and De Silva)**

85.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

86.    The Szkaradeks are shareholders of record of FTE.

87.    As current directors of FTE, Beys and De Silva owe the Szkaradeks a duty of loyalty.

88.    As an officer of FTE, Beys owes the Szkaradeks a duty of loyalty.

89.    The duty of loyalty requires officers and directors to ensure that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by stockholders generally.

90.    Beys and De Silva have directly breached their duty of loyalty to the Szkaradeks by, among other things, initiating frivolous litigation against the Szkaradeks and others in an attempt to disenfranchise and/or prevent the use of the Szkaradeks' shareholder franchise, by failing to honor FTE's and USHR's debts and obligations to the detriment of the Szkaradeks, and by soliciting and causing hostile acts against and detrimental to FTE's shareholders, including the Szkaradeks, by encouraging public authorities and private entities to initiate litigation against FTE's shareholders.

91.    Beys' and De Silva's efforts to impede the Szkaradeks' shareholder franchise is directly related to Beys' and De Silva's personal interests, and in contravention of the Szkaradeks'

rights and best interests as shareholders, in that they do not want the Szkaradeks to exercise their rights to vote their stock because Beys and De Silva do not want FTE's shareholders to elect new management.

92.     Beys' and De Silva's breach of the duty of loyalty involves actions of intentional misconduct, orchestrated and made by them individually and/or jointly, including, but not limited to, false representations, material omissions and/or material misrepresentations in court filings, and false, inaccurate, misleading, and incomplete public filings, such that Beys and De Silva are personally liable to the Szkaradeks.

93.     A demand would be futile, given Beys and De Silva's refusal to call a shareholder meeting at which the Szkaradeks would be permitted to vote, attempts to obtain the Szkaradeks' and other shareholder's stock so they cannot seek a shareholder meeting, issuance of a letter to the shareholders filed with the SEC on May 23, 2022, in which Beys admits he wants to obtain the Szkaradeks' stock because he does not want the Szkaradeks questioning Beys' or De Silva's activities further, Beys' and De Silva's unsupported claims that the Szkaradeks are not permitted to exercise their shareholder rights to vote, and Beys' and De Silva's blatant misrepresentations and/or material omissions both under oath to the courts and in filings to the SEC.

94.     The Szkaradeks have been directly damaged in excess of $75,000 as a result of Beys' and De Silva's breach of the duty of loyalty.

95.     At all times, Beys' and De Silva's conduct was done oppressively, willfully, wantonly, maliciously and/or fraudulently, such that an award of punitive damages is appropriate.

96.     The Szkaradeks have been forced to retain counsel to enforce their rights and are entitled to an award of their reasonable attorney fees and costs.

**WHEREFORE**, for these reasons, Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Additional Defendants Michael Beys and Richard De Silva in an amount in excess of $75,000, plus punitive damages, attorneys' fees and such further relief to which the Court finds the Szkaradeks are entitled.

**SECOND CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty v. Beys and De Silva)**

97.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

98.    The Szkaradeks are shareholders of record of FTE.

99.    As current directors of FTE, Beys and De Silva owe the Szkaradeks a fiduciary duty.

100.    As an officer of FTE, Beys owes the Szkaradeks a fiduciary duty.

101.    This fiduciary duty required Beys and De Silva to exercise due care, good faith and loyalty to the Szkaradeks.

102.    Beys and De Silva have breached their fiduciary duty to the Szkaradeks by devaluing assets and share value through, among other things:

    a.     Failing to pay taxes on multiple properties despite multiple delinquent notices;

    b.     Losing multiple properties due to tax lien foreclosures and failure to pay condominium and homeowner association fees;

    c.     Failing to respond or defend against foreclosures in multiple states;

    d.     Failure to service USHR's accounts;

    e.     Failure to pay utility bills;

    f.     Failing to take any serious efforts to have FTE's stock re-listed;

    g.     Failing to obtain appropriate audited financials;

h.      Failing to file required SEC forms and comply with SEC regulations;

i.      Filing frivolous litigation and failing to defend against or pursue meritorious litigation;

j.      Failing to negotiate with FTE's largest lenders;

k.      Failing to pay assumed obligations, resulting in defaults, litigation and loss of assets;

l.      Failing to pay the consideration required by contractual obligations to purchase FTE's assets;

m.      Failing to create a budget;

n.      Failing to manage FTE's operations and oversee collections, payoffs, sales, tax delinquencies, rehabilitation of properties, appraisals and investor reporting;

o.      Failing to comply with basic corporate governance principals by refusing to respond to shareholder inquiries, refusing to hold shareholder meetings at which the Szkaradeks are permitted to exercise their voting rights, prohibiting FTE's sole independent director from communicating with shareholders, by failing to issue accurate shareholder updates, and by litigating against any shareholder that inquired into the status of FTE;

p.      Paying themselves exorbitant salaries and other compensation and/or failing to disclose management and officer salary and compensation while working without compensation committee approval;

q.      Failing to disclose adverse litigation and regulatory action to shareholders;

r.      Failing to disclose conflicts of interest;

s.      Failing to disclose losses of FTE (and USHR) assets to foreclosures and lender actions;

t.      Failing to disclose material litigation settlements;

u.       Soliciting and causing hostile acts by others; and

v.      Failing to undertake efforts to bring FTE into compliance with NYSE and SEC regulations so that its stock can be publicly traded again.

103.    These breaches involve actions of intentional misconduct, including dereliction of duties, false representations, omissions and material misrepresentations, such that an aware of punitive damages is appropriate.

104.    The Szkaradeks have been directly damaged in excess of $75,000 as a result of the breaches of fiduciary duty set forth herein.

105.    The Szkaradeks have been forced to retain counsel to enforce their rights, and are entitled to an award of its reasonable attorney fees and costs.

**WHEREFORE**, for these reasons, Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Additional Defendants Michael Beys and Richard De Silva in an amount in excess of $75,000, plus punitive damages, attorneys' fees and such further relief to which the Court finds the Szkaradeks are entitled.

### THIRD CLAIM FOR RELIEF
**(Abuse of Process v. Beys and De Silva)**

106.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

107.    By authorizing and initiating litigation on behalf of FTE against the Szkaradeks in New York and Delaware, and by making multiple material false, inaccurate and/or misleading statements to courts in New York, Delaware and Nevada, as well as by failing to defend lawsuits filed against FTE, Beys and De Silva had an ulterior purpose other than resolving a legal dispute.

108.    Beys and De Silva have engaged in willful and improper acts in the use of process, and have sought to obtain an improper collateral advantage through these actions.

109.    Specifically, Beys' and De Silva's ulterior purpose was to protect the Benchmark transaction and/or allow De Silva to execute his loan-to-own scheme on the Vision Portfolio.

110.    Beys' and De Silva's ulterior purpose was to delay and/or prevent shareholders from calling a shareholder meeting at which the Szkaradeks would be permitted to exercise their shareholder rights to vote, such that Beys and De Silva can remain in control long enough to execute De Silva's scheme on the Vision Portfolio.

111.    Beys' and De Silva's willful use of process was not proper in the regular conduct of the proceedings, in that Beys and De Silva authorized and/or verified multiple filings containing false or materially misleading statements.

112.    The Szkaradeks have been directly damaged in excess of $75,000 as a result of Beys' and De Silva's breach of the duty of loyalty.

113.    At all times, Beys and De Silva's conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

114.    The Szkaradeks have been forced to retain counsel to enforce their rights, and are entitled to an award of its reasonable attorney fees and costs.

**WHEREFORE**, for these reasons, Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Additional Defendants Michael Beys and Richard De Silva in an amount in excess of $75,000, plus punitive damages, attorneys' fees and such further relief to which the Court finds the Szkaradeks are entitled.

### FOURTH CLAIM FOR RELIEF
**(Aiding and Abetting Breach of Fiduciary Duty v. Beys and De Silva)**

115.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

116.     At all times, Beys and De Silva knew that the other owed the Szkaradeks a fiduciary duty and that each had breached that duty by, among other things, foreclosing on Benchmark, attempting to dilute the Szkaradeks' voting rights, and/or engaging in specious self-dealing to the detriment of the Szkaradeks.

117.     Beys and De Silva have aided and abetted the other's breaches of fiduciary duty by, among other things:

a.     On information and belief, encouraging private parties and/or public authorities to prosecute claims against the Szkaradeks;

b.     Initiating, authorizing and verifying frivolous and specious litigation against the Szkaradeks in multiple jurisdictions; and

c.     Refusing to abide by corporate formalities, including calling a shareholder meeting at which the Szkaradeks would be permitted to exercise their shareholder voting rights.

118.     Beys and De Silva are aware that his conduct substantially and directly assists the other in breach their fiduciary duties to the Szkaradeks.

119.     The Szkaradeks have been damaged in an amount in excess of $75,000 as a result of Beys' and De Silva's conduct.

120.     At all times, Beys conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

121.     The Szkaradeks have been forced to retain counsel and are entitled to a reasonable award of attorney fees and costs.

**WHEREFORE**, for these reasons, Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Additional Defendants

Michael Beys and Richard De Silva in an amount in excess of $75,000, plus punitive damages, attorneys' fees and such further relief to which the Court finds the Szkaradeks are entitled.

**FIFTH CLAIM FOR RELIEF**
**(Civil Conspiracy v. Beys and De Silva)**

122.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

123.    At all times, Beys and De Silva have acted in concert to obtain the unlawful objective of plundering FTE's assets for their own personal gain, to the direct detriment of the Szkaradeks, shareholders of FTE.

124.    Beys and De Silva have engaged in multiple concerted efforts to protect and/or accomplish their unlawful scheme, including, but not limited to:

a.    Abuse of control of FTE (and USHR);

b.    Refusing to recognize the rights of FTE's shareholders;

c.    Filing materially false and fraudulent SEC filings;

d.    Filing multiple lawsuits containing false and misleading allegations;

e.    Undertaking multiple efforts to dilute the franchise of the Szkaradeks.

125.    Beys' and De Silva's conduct has been expressly aimed at harming the Szkaradeks.

126.    The Szkaradeks have been damaged in an amount in excess of $75,000 as a result of Beys' conduct.

127.    At all times, Beys' and De Silva's conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

128.    The Szkaradeks have been forced to retain counsel and are entitled to a reasonable award of attorney fees and costs.

**WHEREFORE**, for these reasons, Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Additional Defendants

Michael Beys and Richard De Silva in an amount in excess of $75,000, plus punitive damages, attorneys' fees and such further relief to which the Court finds the Szkaradeks are entitled.

## SIXTH CLAIM FOR RELIEF
### (Fraud v. Beys)

129.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

130.    Beys has knowingly and intentionally made multiple materially false and misleading statements, many of which were made under oath.

131.    Beys, a licensed attorney, materially misrepresented the extent of FTE's knowledge of the Vision Portfolio, the extent of FTE's due diligence, and/or the real reasons Beys initiated the New York and Delaware litigation against the Szkaradeks.  These misrepresentations were made under oath to a court of law.

132.    Beys materially misrepresented the extent of FTE's knowledge of the Vision Portfolio, the extent of FTE's due diligence, and/or the real reasons Beys is refusing to call a shareholder meeting at which the Szkaradeks would be permitted to exercise their shareholder voting rights to the Nevada court.  The misrepresentations were made under oath to a court of law.

133.    Beys filed a materially misleading 8-K in May 2022, which neglected to inform FTE shareholders that a receiver had been appointed over a subsidiary, which the SEC requires a company to report within four days.  Beys omitted to inform FTE's shareholders that Innovativ sought a shareholder meeting, or that the Nevada litigation existed at all, and instead repeated his false allegations about the litigation he filed and verified.

134.    Beys filed a materially misleading 8-K on August 17, 2022, which purported to call a shareholder's meeting at which the Szkaradeks would not be permitted to exercise their shareholder voting rights.

135.    When Beys made these statements, he knew they were materially false and/or misleading.

136.    Beys' statements were made with the intent to hinder and/or induce the Szkaradeks to refrain from challenging Beys' and De Silva's abuse of control.

137.    The Szkaradeks have been damaged in an amount in excess of $75,000 as a result of Beys' conduct.

138.    At all times, Beys' and De Silva's conduct was done wantonly, fraudulently, maliciously and/or oppressively, such that an award of punitive damages is appropriate.

139.    The Szkaradeks have been forced to retain counsel and are entitled to a reasonable award of attorney fees and costs.

**WHEREFORE**, for these reasons, Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Additional Defendants Michael Beys in an amount in excess of $75,000, plus punitive damages, attorneys' fees and such further relief to which the Court finds the Szkaradeks are entitled.

### SEVENTH CLAIM FOR RELIEF
**(Injunctive Relief v. Beys and De Silva)**

140.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

141.    As a result of Beys' and De Silva's corporate mismanagement, and demonstrated commitment to do virtually anything, including, but not limited to, lying under oath, to protect their interests above the interests of FTE and its shareholders, the Szkaradeks face a risk of imminent harm that Beys and De Silva will undertake additional efforts to minimize FTE's value, to jettison or transfer FTE and USHR assets, and/or to further disenfranchise shareholders by diluting stock rights and/or value.

142.    This harm cannot be remedied by an award of damages.

25

143.    The Szkaradeks are entitled to an injunction prohibiting Beys and De Silva from undertaking any effort to minimize FTE's value, to jettison or transfer FTE and USHR assets, and/or to further disenfranchise shareholders by diluting stock rights and/or value.

144.    The balance of the public interest weighs in favor of the Szkaradeks' request and against Beys' and De Silva.

145.    The Szkaradeks have been forced to retain counsel and are entitled to a reasonable award of attorney fees and costs.

**WHEREFORE**, for these reasons, Alexander Szkaradek and Antoni Szkaradek respectfully request that the Court enter an Order prohibiting Beys and De Silvas from undertaking any efforts to minimize FTE's value, to jettison or transfer FTE and USHR assets, and/or to further disenfranchise shareholders by diluting stock rights and/or stock value, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## EIGHTH CLAIM FOR RELIEF
### (Fraudulent Inducement v. Beys and De Silva)

146.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

147.    Beys and De Silva, on behalf of FTE, made material misrepresentations of fact to the Szkaradeks for purposes of inducing the Szkaradeks to enter into the PSA.

148.    The material misrepresentations of fact were made knowingly and intentionally, with knowledge of their falsity, for purposes of causing the Szkaradeks to enter into the PSA.

149.    The material misrepresentations were made with the intent of misleading the Szkaradeks into relying upon these representations.

150.    The Szkaradeks reasonably and justifiably relied upon the material misrepresentations of fact made by FTE and its authorized representatives.

151.     Beys and De Silva caused the Szkaradeks to incur harm and damage as a result of their reasonable reliance on material misrepresentations of fact made by Beys and De Silva on behalf of FTE.

152.     The Szkaradeks harm and damage includes, but is not limited to, the loss of the value of the Vision Portfolio.

153.     Through their actions and omissions on behalf of FTE, Beys and De Silva have wasted and lost many of the properties that were a part of the Vision Portfolio.

154.     As a result of Beys' and De Silva's fraudulent inducement as set forth herein, the PSA between FTE and the Szkaradeks must be rescinded such that ownership of the Vision Portfolio is returned to the Szkaradeks, and the Szkaradeks will in turn return to FTE the stock and promissory notes currently held by the Szkaradeks.

155.     In addition, to the extent that Beys and De Silva have wasted properties that were part of the Vision portfolio and as a result cannot be returned to the Szkaradeks, a judgment in the amount of the value of those wasted and lost properties must be entered in favor of the Szkaradeks.

**WHEREFORE**, for these reasons, Defendants Alexander Szkaradek and Antoni Szkaradek respectfully request that judgment be entered in their favor and against Michael Beys and Richard De Silva, and that the Court order that the PSA between the Szkaradeks and FTE be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by FTE, be entered in favor of the Szkaradeks and against Beys and De Silva, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## NINTH CLAIM FOR RELIEF
### (Accounting v. USHR)

156.     The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

157.    USHR, as a subsidiary of FTE, has refused to protect its own financial status or to maintain its assets.

158.    As shareholders of FTE, the Szkaradeks are entitled to know the financial status of the subsidiary of the company in which they have invested, yet despite requests for same FTE and USHR have failed and refused to provide this information to the Szkaradeks.

159.    Accordingly, the Szkaradeks request an accounting of USHR so that the Szkaradeks can ascertain the true extent of their financial harm.

160.    The Szkaradeks have been forced to obtain counsel and are entitled to an award of reasonable attorneys' fees and costs.

**WHEREFORE**, the Szkaradeks respectfully request that the Court enter an order requiring USHR to provide an accounting to the Szkaradeks from December 30, 2019 to the present, plus attorneys' fees and such other and further relief to which the Court finds the Szkaradeks are entitled.

<u>**TENTH CLAIM FOR RELIEF**</u>
**(Constructive Trust v. Lateral Entities)**

161.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

162.    On information and belief, the Lateral Entities, either jointly or separately, and either all or any one of them, hold legal title to Benchmark, which title formerly belonged to FTE.

163.    The Szkaradeks are shareholders of FTE.

164.    FTE is, in good conscience, entitled to be the legal owner of its former interest in Benchmark.

165.    A confidential relationship exists between FTE and the Lateral Entities, such that the Lateral Entities', or any one of theirs', retention of Benchmark is inequitable and unjust, and

the Lateral Entities, or any one of theirs, retention of Benchmark was obtained without sufficient consideration and/or as a product of fraud or undue influence.

166.    A constructive trust upon the Lateral Entities', or any one of their, interest in Benchmark is essential to the effectuation of justice.

167.    A demand upon FTE's directors is futile because the Lateral Entities are controlled in whole or in part by De Silva, and De Silva's conduct has been, at all times, to protect the Lateral Entities' interests over the interests of FTE's other shareholders, as set forth in the complaint above.

168.    Plaintiffs have been forced to retain counsel, and are entitled to an award of their reasonable attorney fees and costs.

**WHEREFORE**, for these reasons, the Szkaradeks respectfully request that the Court impose a constructive trust over the Lateral Entities.

### ELEVENTH CLAIM FOR RELIEF
**(Fraudulent Inducement v. USHR)**

169.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

170.    USHR, by and through its authorized representatives, made material misrepresentations of fact to the Szkaradeks for purposes of inducing the Szkaradeks to enter into the PSA and also the Second Amendment.

171.    The material misrepresentations of fact were made knowingly and intentionally, with knowledge of their falsity, for purposes of causing the Szkaradeks to enter into the PSA and Second Amendment.

172.    The material misrepresentations were made with the intent of misleading the Szkaradeks into relying upon these representations.

173.    The Szkaradeks reasonably and justifiably relied upon the material misrepresentations of fact made by USHR and its authorized representatives.

174.    USHR caused the Szkaradeks to incur harm and damage as a result of the Szkaradeks reasonable reliance on material misrepresentations of fact made by USHR and its authorized representatives.

175.    The Szkaradeks harm and damage includes, but is not limited to, the loss of the value of the Vision Portfolio.

176.    Through its actions and omissions and those of its authorized representatives, USHR has wasted and lost many of the properties that were a part of the Vision Portfolio.

177.    As a result of USHR's fraudulent inducement as set forth herein, the PSA, and all amendments, must be rescinded such that ownership of the Vision Portfolio is returned to the Szkaradeks, and the Szkaradeks will in turn return to FTE the stock and promissory notes currently held by the Szkaradeks.

178.    In addition, to the extent that USHR has wasted properties that were part of the Vision portfolio and as a result cannot be returned to the Szkaradeks, a judgment for rescissory damages in the amount of the value of those wasted and lost properties must be entered in favor of the Szkaradeks.

**WHEREFORE**, for these reasons, the Szkaradeks respectfully request that judgment be entered in their favor and against Additional Defendant US Home Rentals, LLC, and that the Court order that the PSA between the Szkaradeks and USHR be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by USHR, be entered in favor of the

Szkaradeks and against USHR, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## TWELFTH CLAIM FOR RELIEF
### (Misrepresentation v. USHR)

179.    The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

180.    USHR, by and through its authorized representatives, made material misrepresentations of fact to the Szkaradeks that induced the Szkaradeks to enter into the PSA and also the Second Amendment.

181.    The material misrepresentations of fact, even if innocently made, misled the Szkaradeks into relying upon these representations.

182.    The Szkaradeks reasonably and justifiably relied upon the material misrepresentations of fact made by USHR and its authorized representatives.

183.    USHR caused the Szkaradeks to incur harm and damage as a result of the Szkaradeks reasonable reliance on material misrepresentations of fact made by USHR and its authorized representatives.

184.    The Szkaradeks harm and damage includes, but is not limited to, the loss of the value of the Vision Portfolio.

185.    Through its actions and omissions and those of its authorized representatives, USHR has wasted and lost many of the properties that were a part of the Vision Portfolio.

186.    As a result of USHR's misrepresentations as set forth herein, the PSA, and all amendments, must be rescinded such that ownership of the Vision Portfolio is returned to the Szkaradeks, and the Szkaradeks will in turn return to FTE the stock and promissory notes currently held by the Szkaradeks.

187.     In addition, to the extent that USHR has has wasted properties that were part of the Vision portfolio and as a result cannot be returned to the Szkaradeks, a judgment for rescissory damages in the amount of the value of those wasted and lost properties must be entered in favor of the Szkaradeks.

**WHEREFORE**, for these reasons, the Szkaradeks respectfully request that judgment be entered in their favor and against Additional Defendant US Home Rentals, LLC and that the Court order that the PSA between the Szkaradeks and USHR be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by USHR, be entered in favor of the Szkaradeks and against USHR, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

**THIRTEENTH CLAIM FOR RELIEF**
**(Breach of Contract v. USHR)**

188.     The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

189.     FTE, USHR and the Szkaradeks entered into agreements (the PSA and Second Amendment) in which FTE and USHR were required to provide the Szkaradeks with substantial consideration in the form of stock, promissory notes, and other consideration in exchange for the Vision Portfolio.

190.     USHR has breached the contract by failing to provide the Szkaradeks with the consideration required by the PSA in exchange for the Vision Portfolio, and by failing and refusing to take required steps to protect the equity that USHR obtained through the Vision Portfolio.

191.     USHR's breach has caused damage to the Szkaradeks, and will continue to cause substantial further damage to the Szkaradeks as long as USHR continues to administer the Vision Portfolio, such that rescission is the only appropriate relief to be granted.

192.     As a result of USHR's breaches as set forth herein, the PSA must be rescinded such that ownership of the Vision Portfolio is returned to the Szkaradeks, and the Szkaradeks will in turn return to FTE the stock and promissory notes currently held by the Szkaradeks.

193.     In addition, to the extent that USHR has lost or wasted properties that were part of the Vision Portfolio and as a result cannot be returned to the Szkaradeks, a judgment in the amount of the value of those wasted or lost properties must be entered in favor of the Szkaradeks.

**WHEREFORE**, for these reasons, the Szkaradeks respectfully request that judgment be entered in their favor and against Additional Defendant US Home Rentals, LLC and that the Court order that the PSA between the Szkaradeks and USHR be rescinded and that the Vision Portfolio be returned to the Szkaradeks, and that a judgment, in the amount to be determined by the Court based on the value of the properties wasted and lost by USHR, be entered in favor of the Szkaradeks and against USHR, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

## FOURTEENTH CLAIM FOR RELIEF
### (Injunctive Relief v. USHR)

194.     The Szkaradeks incorporate the preceding paragraphs as if fully set forth herein.

195.     As a result of USHR's actions and omissions set forth herein, as well as its demonstrated commitment to do virtually anything to harm the interests of FTE's shareholders, the Szkaradeks face the imminent risk of harm that USHR will continue to take efforts to minimize FTE's value, to jettison FTE's and USHR's assets, and/or to further disenfranchise FTE shareholders by diluting stock rights and/or stock value.

196.     The Szkaradeks have no adequate remedy at law because the harm cannot be remedied by an award of monetary damages.

197.    The Szkaradeks are entitled to an injunction prohibiting USHR from undertaking any efforts to minimize FTE's value, to jettison or transfer USHR's assets, and/or to further disenfranchise shareholders by diluting stock rights and/or stock value.

198.    The balance of the public interest weighs in favor of the requested injunction.

**WHEREFORE**, for these reasons, the Szkaradeks respectfully request that the Court enter an Order prohibiting USHR from undertaking any efforts to minimize FTE's value, to jettison or transfer USHR's assets, and/or to further disenfranchise FTE's shareholders by diluting stock rights and/or stock value, plus such other and further relief to which the Court finds the Szkaradeks are entitled.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>**LAMB McERLANE PC**</td></tr>
<tr><td>Dated:  September 13, 2022</td><td>By:   <em>/s/ Virginia Whitehill Guldi</em></td></tr>
</table>

Respectfully submitted,

**LAMB McERLANE PC**

Dated:  September 13, 2022     By:   */s/ Virginia Whitehill Guldi*
Virginia Whitehill Guldi, ID No. 2792
24 East Market Street, P.O. Box 5656
West Chester, Pennsylvania 19381
Telephone: (610) 430-8000
Email: vguldi@lambmcerlane.com

Of Counsel (admitted *pro hac vice*):
Joel L. Frank
John J. Cunningham, IV
Guy A. Donatelli
LAMB McERLANE, PC
24 East Market Street, P.O. Box 5656
West Chester, Pennsylvania 19381
Telephone: (610) 430-8000
Email: jfrank@lambmcerlane.com
Email: jcunningham@lambmcerlane.com
Email: gdonatelli@lambmcerlane.com
*Attorneys for Defendants*
*Alexander Szkaradek and Antoni Szkaradek*