IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FTE NETWORKS, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 22-785-WCB |
| ALEXANDER SZKARADEK and ANTONI SZKARADEK, | § § § | |
| *Defendants*. | § § § | |
| _____ | | |
| ALEXANDER SZKARADEK and ANTONI SZKARADEK, | § § § § | |
| *Third-Party Plaintiffs*, | § § | |
| v. | § § § | |
| MICHAEL BEYS ET AL., | § § § | |
| *Third-Party Defendants*. | § | |
| _____ | | |

**MEMORANDUM OPINION AND ORDER**

On June 14, 2022, plaintiff FTE Networks, Inc., ("FTE") filed this action against defendants Alexander and Antoni Szkaradek (collectively, "the Szkaradeks"). Dkt. No. 1. One month after the complaint was filed, First Capital Real Estate Trust, Inc., ("FC REIT") moved to intervene as a defendant. Dkt. No. 6. The Szkaradeks opposed FC REIT's motion. Dkt. No. 9. For the reasons set forth below, the motion to intervene is GRANTED.

1

## I. Background

This suit relates to a purchase agreement ("the Agreement") that FTE entered into with the Szkaradeks. In the Agreement, FTE agreed to purchase numerous properties that were owned and managed by the Szkaradeks. Dkt. No. 1 at ¶¶ 39, 52. As part of the consideration given to the Szkaradeks for those properties, FTE transferred 22,063,376 shares of FTE stock to the Szkaradeks. The Agreement provided that half of those shares would subsequently be transferred to FC REIT.[1] According to FC REIT, the Szkaradeks have never transferred the 11,031,688 shares that were allocated to FC REIT in the Agreement. FTE thus seeks a judgment that, in part, "[d]irect[s] the Szkaradeks to transfer 11,031,688 shares of FTE stock to the FC REIT." Dkt. No. 1 at 29.

FC REIT is a Maryland corporation that recently forfeited its corporate charter. Dkt. No. 9-1. FC REIT seeks to intervene in this lawsuit to defend its interests in the 11,031,688 FTE shares that are allegedly owed to FC REIT by the Szkaradeks. Dkt. No. 7 at 1. The CEO and a board member of FC REIT have each submitted affidavits stating that the company's proposed intervention in this lawsuit is related to the winding up of FC REIT's affairs. *See generally* Dkt. Nos. 10-1, 10-2. The Szkaradeks have submitted evidence that FC REIT intends to revive its corporate charter, and they argue that FC REIT is therefore not winding up its business. *See* Dkt. No. 13-1.

## II. Legal Standard

Federal Rule of Civil Procedure 24 provides mechanisms for parties to intervene as of right or with the permission of the court. As relevant here, Rule 24(a)(2) provides that:

---

[1] FC REIT became involved in the transaction when a business associate of the Szkaradeks, Suneet Singal, was charged with securities fraud by the Securities and Exchange Commission. Dkt. No. 1 at ¶¶ 43–48. The provision requiring that half of the FTE shares be transferred to FC REIT was intended to compensate "the victims of Signal's [sic] SEC fraud, the shareholders of the FC REIT." *Id.* at ¶ 48.

the court must permit anyone to intervene who[] . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Alternatively, even if intervention is not granted as of right under Rule 24(a), "the court may permit anyone to intervene who[] . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Rule 24 is construed "liberally in favor of intervention." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. 14-874, 2015 WL 5163035, at *2 (D. Del. Sept. 3, 2015) (citing *N.L.R.B. v. Frazier*, 144 F.R.D. 650, 655 (D.N.J. 1992)).

### III.    Discussion

In its briefing, FC REIT makes a prima facie showing that it is entitled to intervene in this lawsuit. Specifically, FC REIT argues that it is the rightful owner of 11,031,688 of the shares of FTE that are at issue in this lawsuit. Dkt. No. 7 at 5–6. FC REIT also argues that its ability to protect its interest in those FTE shares could be impeded by the resolution of this lawsuit. *Id.* at 6. FC REIT adds that FTE's interests may not be completely aligned with FC REIT's with respect to the 11,031,688 shares to which FC REIT claims it is entitled. *Id.* at 6–7. The Szkaradeks do not appear to dispute any of those propositions. *See generally* Dkt. Nos. 9, 13.

Instead of contesting FC REIT's showing of the requirements for intervention under Rule 24, the Szkaradeks argue that the motion to intervene should be denied for two reasons: (1) that FC REIT is not registered to do business in Delaware and therefore may not intervene in this court; and (2) that because FC REIT's corporate charter has been forfeited, FC REIT is a legal non-entity that may not participate in the lawsuit. Neither argument is sufficient to rebut FC REIT's prima facie showing that it is entitled to intervene.

With respect to the first point, under Delaware law, "[a] foreign corporation . . . which has done business in this State without authority shall not maintain any action or special proceeding in this State unless and until such corporation has been authorized to do business in this State." 8 Del. C. § 383. However, section 383 "is not applicable if the corporation is not doing business in Delaware for purposes of [section] 383 and is thus not required to register." *Coyle v. Peoples*, 349 A.2d 870, 873 (Del. Super. Ct. 1975), *aff'd*, 372 A.2d 539 (Del. 1977); *see also Profast Com. Flooring, Inc. v. Landis, Ltd.*, No. CV N15C-09-204, 2016 WL 4533499, at *2 (Del. Super. Ct. Aug. 29, 2016).

In this case, FC REIT points out that it "does no business anywhere" and "is actively engaged in the winding up of its affairs." Dkt. No. 10 at 2. In any event, the only Delaware activity in the record relating to FC REIT is the Agreement—to which FC REIT was not a party. *See generally* Dkt. No. 1-4. Even if that transaction could be considered business activity on the part of FC REIT, one transaction in Delaware "does not constitute the general transaction of business." *Coyle*, 349 A.2d at 874. Accordingly, section 383 does not prohibit FC REIT from intervening in this lawsuit.

With respect to the second point, it is true that FC REIT has forfeited its Maryland corporate charter. It is also the case that, in general under Maryland law, "[a] corporation, the charter for which is forfeit, is a legal non-entity; all powers granted to [the corporation] by law, including the power to sue or be sued, [are] extinguished generally as of and during the forfeiture period." *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1101 (Md. 2004). However, Maryland law also provides that "[w]hen the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation shall manage its assets for purposes of liquidation." Md. Code, Corps. & Ass'ns § 3-515(a). In such cases, the directors may "[s]ue or be sued in the name of the corporation" and "[d]o all other acts consistent with law and the charter of the corporation

necessary or proper to liquidate the corporation and wind up its affairs." *Id.* § 3-515(c)(3)–(4). In short, Maryland law allows a corporation that has forfeited its charter to litigate in its own name if that litigation constitutes a "legitimate winding up activit[y]." *Mintec Corp. v. Miton*, 392 B.R. 180, 187 (D. Md. 2008).

FC REIT argues that its proposed intervention, and specifically the acquisition of the approximately 11 million shares it allegedly owns, is necessary to the winding up of the business. In his affidavit, Richard Leider, a board member of FC REIT, stated that the company seeks to intervene "for the purpose of obtaining assets belonging to the FC REIT," and that "[o]btaining the assets of FC REIT is a necessary step in the process of winding up the operations." Dkt. No. 10-1 at ¶¶ 4–5. Frank Forelle, the CEO of FC REIT, also stated in an affidavit that the proposed intervention is "for the purpose of managing the assets of the FC REIT while winding up its affairs." Dkt. No. 10-2 at ¶ 8. As the court in *Mintec* noted, "an attempt to protect one of the only significant remaining assets of a corporation" is certainly a "legitimate winding up activity." *Mintec*, 392 B.R. at 187.

The Szkaradeks argue that FC REIT is not winding up its business because FC REIT's counsel admitted in a letter that the company is seeking to revive its charter. *See* Dkt. No. 13 at 1; Dkt. No. 13-1. The problem with that argument is that seeking to revive a corporate charter is not necessarily inconsistent with conducting winding-up activities. Section 3-515(b) of the Maryland Code, Corporations and Associations explicitly contemplates the filing of "articles of revival" for a business with a forfeited charter, and indeed obligates the directors of the business to engage in winding-up activities "[u]nless and until" such articles are filed. Therefore, the mere fact that FC REIT may attempt to file articles of revival at some time in the future does not preclude it from participating in litigation consistent with section 3-515. And if the charter for FC REIT were to be

5

revived at any point, FC REIT would then have the ability to participate in this lawsuit regardless of whether FC REIT's participation constituted a winding-up activity.

The Szkaradeks also argue that a shareholder of FC REIT has sought the appointment of a receiver for the company, and that I should deny the motion to intervene pending the outcome of that shareholder's petition because "[t]he appointment of a receiver would terminate the powers of the director-trustees of FC REIT."  Dkt. No. 13 at 2.  The problem with that argument is that section 3-515(a) explicitly requires the directors of the company to "manage [the corporation's] assets" for purposes of winding up "until a court appoints a receiver."  Because no receiver has been appointed for FC REIT, the directors of FC REIT are authorized to "[s]ue or be sued in the name of the corporation," and the fact that a receiver might be appointed at some point is not a persuasive justification to curtail that authority.  *See* Md. Code, Corps. & Ass'ns § 3-515(c)(3).  If a receiver is appointed and the receiver wishes not to pursue FC REIT's interest in the FTE shares, the receiver will presumably be free to manage the company's conduct in the litigation accordingly.

### IV.     Conclusion

FC REIT has established that it is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a), and the Szkaradeks' arguments to the contrary are unpersuasive.  FC REIT's motion to intervene is therefore GRANTED.

IT IS SO ORDERED.

SIGNED this 16th day of November, 2022.

                                                                    _William C. Bryson_
                                                                    WILLIAM C. BRYSON
                                                                    UNITED STATES CIRCUIT JUDGE