# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FTE NETWORKS, INC. | : |
| | : |
|     Plaintiff/Counter-Defendant, | : |
| | : |
|        v. | :   No. 1:22-cv-00785 |
| | : |
| ALEXANDER SZKARADEK AND ANTONI SZKARADEK | : |
| | : |
|     Defendants/Counter-Plaintiffs. | : |

**COUNTER-PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNT V OF THE COUNTERCLAIM**

# TABLE OF CONTENTS

TABLE OF CITATIONS .................................................................................................................. ii

A.   The Nevada statute is clear that every record owner may vote their shares ........................1

B.   There are no contractual conditions precedent to the Szkaradeks' right to vote .................3

    a.   Transferring shares to FC REIT is not a condition precedent to voting stock.........4

    b.   Federal securities law prohibited an "immediate" transfer of the shares
       to FC REIT...................................................................................................................5

    c.   The Szkaradeks have not made a restricted transfer .................................................6

C.   There is no basis to vitiate the Szkaradeks' voting rights for fraud allegations .................7

D.   There is no basis to find illegal "vote buying" to nullify the Szkaradeks' voting rights.....8

E.   FTE's factual recitations are not only irrelevant, but they are also inaccurate....................9

F.   Conclusion .............................................................................................................................9

# TABLE OF CITATIONS

**CASES**

*Atkins v. Hiram*, No. CIV. A. 12887, 1993 WL 287617 (Del. Ch. Ct. July 26, 1993) .................. 7

*Castro v. ITT Corp.*, 598 A.2d 674 (Del. Ch. Ct. 1991) ............................................................... 2

*Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752 (Del. 2022) ......................................... 1

*Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377 (Del. 2010) ................................................ 3

*In re MONY Grp., Inc. S'holder Litig.*, 853 A.2d 661 (Del. Ch. Ct. 2004),
    as revised (Apr. 14, 2004) ....................................................................................................... 2

*Innovativ Media Group, Inc. v. FTE Networks, Inc.*, Case No. A-22-849188-B
    (Clark County, Nev.) ............................................................................................................... 9

*Innovativ Media Group, Inc. v. Michael Beys, et al.*, Case No. 22-01362 (D. Nev. 2022) ............ 9

*Innovativ Media Group, Inc., et al. v. Michael Beys, et al.*, Case No. 22-01184
    (D. Nev. 2022) ......................................................................................................................... 9

*Kahn Bros. & Co. Profit Sharing Plan & Tr. v. Fischbach Corp.*, No. CIV. A. 8987,
    1988 WL 122517 (Del. Ch. Ct. Nov. 15, 1988) ...................................................................... 7

*Knickerbocker Inv. Co. v. Voorhees*, 100 A.D. 414 (N.Y. App. Div. 1905) ................................ 8

*Merchantwired, LLC v. Transaction Network Servs., Inc.*, No. CIV.A.02C-08-244FSS,
    2003 WL 21689647 (Del. Super. Ct. July 16, 2003) .............................................................. 4

*Pouls v. Windmill Ests., LLC,* No. CIV.A.SS08C-05-014RF, 2010 WL 2348648
    (Del. Super. Ct. June 10, 2010) ............................................................................................... 4

*Schreiber v. Carney*, 447 A.2d 17 (Del. Ch. Ct. 1982) ................................................................ 8

*Sonoma Springs Ltd. P'ship v. Fid. & Deposit Co. of Maryland*, 409 F. Supp. 3d 946
    (D. Nev. 2019) ......................................................................................................................... 4

*Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187 (3d Cir. 2019) ............... 6

*Zhou v. Deng*, No. CV 2021-0026-JRS, 2022 WL 1024809 (Del. Ch. Ct. Apr. 6, 2022) .............. 7

*Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, No. CV 12946-VCS, 2017 WL 5956877
    (Del. Ch. Ct. Nov. 30, 2017) .................................................................................................... 3

**STATUTES**

17 C.F.R. § 230.144 (Persons deemed not to be engaged in a distribution and therefore not underwriters) ..................................................................... 5, 6

17 C.F.R. § 240.12b-2 (Definitions) ............................................................................. 6

Del. Code Ann. tit. 8, § 225 (Contested election of directors; proceedings to determine validity) ...................................................................................... 7, 8

Nev. Rev. Stat. Ann. § 78.010(1)(k) (Definitions; construction) ................................... 1

Nev. Rev. Stat. Ann. § 78.105(1)(c) (Maintenance of records at principal office or with custodian of records; inspection and copying of records; civil liability; penalties) ........... 2

Nev. Rev. Stat. Ann. § 78.350 (Voting rights of stockholders; determination of stockholders entitled to notice of and to vote at meeting) ............................... 1, 5

The Response [D.I. 38] to the Motion for Judgment on the Pleadings on Count V of the Counterclaims [D.I. 35] avoids the issue at bar. The governing statute plainly permits every stockholder of record to vote their shares and requires that the votes be counted. Nev. Rev. Stat. Ann. § 78.350. FTE has judicially admitted that the Szkaradeks are the record owners of the subject stock. *See* Am. Answer to Counterclaim at ¶ 271 [D.I. 23]. *See Cox Commc'ns, Inc. v. T-Mobile US, Inc.,* 273 A.3d 752, 766 (Del. 2022) (concessions of fact in the pleadings are judicial admissions which conclusively bind the party and the court). Apparently recognizing this clear legal principle, FTE resorts to unproven and irrelevant allegations and inapposite cases as a defense. FTE's efforts are unavailing.

A. **The Nevada statute is clear that every record owner may vote their shares.**

The determination of the Szkaradeks' right to vote their shares requires no more than the simple application of the governing statute to the judicially admitted facts. Under Nevada law, "*every stockholder of record* of a corporation is entitled" to "vote for each share of stock standing in his or her name on the records of the corporation." Nev. Rev. Stat. Ann. § 78.350 (emphasis added). A "stockholder of record" is "a person whose name appears on the stock ledger of the corporation as the owner of record of shares . . ." Nev. Rev. Stat. Ann. § 78.010(1)(k). FTE has judicially admitted that the Szkaradeks are current "stockholders of record" of FTE. Therefore, the Szkaradeks are entitled to vote.

There are no relevant conditions or exceptions to the statutory mandate that *every* stockholder of record may vote their shares and that they be counted. Accordingly, the factual circumstances of how a record stockholder acquired their shares is immaterial. Indeed, the policy behind a bright line rule providing for votes from current stockholders of record obviously promotes certainty in stockholder votes. *See Castro v. ITT Corp.,* 598 A.2d 674, 677 (Del. Ch.

Ct. 1991) (explaining that a similar stockholder voting provision of Delaware law "permits a corporation to rely exclusively upon its stock ledger in order to determine who are its stockholders" and that the stock ledger "shall be the only evidence as to who are the stockholders entitled … to vote…") (internal citation omitted). That the company itself is charged with the maintenance of that record stockholder list and the awareness of those within its composition furthers confidence in those votes. Nev. Rev. Stat. Ann. § 78.105(1)(c). Indeed, it is only *after* the Szkaradeks acted unfavorably to FTE's present management that FTE sought to contest their voting rights. [D.I. 1-2] (Feb. 3, 2022 Bylaw Amendments); [D.I. 20, paragraphs 208, 213-217] (describing FTE's subsequent litigation). Clearly, FTE cannot unilaterally disenfranchise those stockholders with whom management disagrees, yet that is exactly what FTE is trying to do. *See In re MONY Grp., Inc. S'holder Litig.*, 853 A.2d 661, 673 (Del. Ch. Ct. 2004), as revised (Apr. 14, 2004) ("The shareholder franchise occupies a special place in Delaware corporation law, and our courts are vigilant in policing fiduciary misconduct that has the effect of impeding or interfering with the effectiveness of a stockholder vote.").

  **B.**  **There are no contractual conditions precedent to the Szkaradeks' right to vote.**

FTE contorts plain language within the Purchase Agreement and its amendments into phantom conditions precedent. FTE contends that the Szkaradeks may not vote their record shares because they allegedly breached a condition precedent to obtaining the stock. [D.I. 38, pp. 9-14]. They also claim that the Szkaradeks breached a restriction on transferring the stock. [D.I. 38, p. 11] Specifically, FTE alleges that the Szkaradeks failed conditions precedent to voting because they did not "immediately" transfer 11,031,688 common shares to First Capital Real Estate Trust, Inc ("FC REIT") and they transferred shares to Innovativ Media Group in violation of a transfer restriction.

2

For its first argument, FTE relies upon *Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377 (Del. 2010) and *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, No. CV 12946-VCS, 2017 WL 5956877 (Del. Ch. Ct. Nov. 30, 2017). However, both cases are inapposite.

In *Crown,* the Delaware Supreme Court held that a stock purchase agreement was invalid because the sale violated a transfer restriction, and that purchaser was not entitled to vote the purchased shares through an irrevocable proxy issued in connection with the purchase agreement. Unlike the purchaser in *Crown,* the Szkaradeks acquired their stock directly from FTE, the issuer, and are not relying on a proxy agreement for their present voting rights. Additionally, the only alleged transfer restrictions on the Szkaradeks' record shares concern to whom the shares may be transferred after they have been issued by FTE to the Szkaradeks. Finally, in *Crown* the right to vote was not readily apparent from the corporate records, whereas here the right is clear as discussed above.

In *Zohar*, a corporate officer seeking to retain her voting power following her impending involuntary removal from the corporation issued irrevocable voting proxies (without consideration) for shares to entities under her control. In turn, the court invalidated the proxies on the grounds that they did not comply with the irrevocability requirements of Delaware law and violated the corporate indentures. Here, the Szkaradeks' ownership of the shares and their voting rights are not contractual or derivative of somebody else's interest through a proxy; rather, their voting rights arise directly from their undisputed record ownership of the shares. Also, there are no allegations that the Szkaradeks violated FTE's governing documents.

Similarly, the cases FTE cites for the proposition that failure to satisfy a contractual condition precedent may be fatal to a contract claim, [D.I. 38, p. 14], are inapplicable because contractual rights are not at issue. *See Sonoma Springs Ltd. P'ship v. Fid. & Deposit Co. of*

3

*Maryland*, 409 F. Supp. 3d 946 (D. Nev. 2019) (excusing a surety's performance obligation under a bond following a property owner's material breach of a condition precedent); *Merchantwired, LLC v. Transaction Network Servs., Inc.*, No. CIV.A.02C-08-244FSS, 2003 WL 21689647 (Del. Super. Ct. July 16, 2003) (dismissing a complaint for breach of contract for failing to allege performance of all conditions precedent). As explained above, the record owner's right to vote flows from statutory rights, not contractual rights, and that record ownership is already admitted.

      **a.**      **Transferring shares to FC REIT is not a condition precedent to voting stock.**

The Agreement does not condition the Szkaradeks' receipt of stock and their right to vote on the immediate transfer of stock to FC REIT. Rather, the Agreement conditions FTE's obligation to issue stock to the Szkaradeks upon their production of documentation as may have been requested demonstrating that the Szkaradeks agreed to transfer stock to FC REIT and to enable FTE's transfer agent to make the transfer. *See* Second Amendment to Purchase Agreement, Section 1.5 at Ex. F to Compl. ("subject to the condition precedent that [the Szkaradeks shall have provided such documentation …") [D.I. 1-6]. In this regard, FTE's admitted transfer of the stock to the Szkaradeks deems this limited condition fulfilled and waives any claim that it was not. *See Pouls v. Windmill Ests., LLC,* No. CIV.A.SS08C-05-014RF, 2010 WL 2348648, at *5 (Del. Super. Ct. June 10, 2010) ("A condition precedent may be waived by conduct which evidences such an intention.").

Likewise, FTE's arguments relying on a putative interest of FC REIT in the stock miss the mark. First, FC REIT is not a party to this case following its voluntary dismissal from this action and has no pending claim to the stock or its voting rights. [D.I. 30]. Second, FTE's assertion about putative rights that someone else may have is irrelevant and contrary to the

4

governing statute that requires it to count the votes of its record stockholders. Nev. Rev. Stat. Ann. § 78.350. Finally, FTE's characterizations of Nevada state court rulings are inaccurate. The subject Order only dismissed the Szkaradeks' claims without prejudice because the Nevada court lacked jurisdiction to adjudicate them due to Delaware's exclusive jurisdiction term in the Agreement, which FTE admits caused it to file in this Court. *See* June 30, 2022 Order [D.I. 38-3], [D.I. 1, paragraphs 29-30] (admitting this court's exclusive jurisdiction via contract).

      b.      **Federal securities law prohibited an "immediate" transfer of the shares to FC REIT.**

FTE also misrepresents the circumstances of "immediate" transfer of stock to FC REIT. Because the shares were issued to the Szkaradeks without registration under the Securities Act of 1933, as amended, those shares are "restricted securities" for purposes of federal securities law. 17 C.F.R. § 230.144(a)(3). [D.I. 1-4, 1-6] (evidencing that the shares were acquired directly from FTE, the issuer, in a private transaction). Therefore, those shares can only be subsequently transferred pursuant to a registration statement filed with the SEC covering the transfer or an available exemption from registration, including the exemption provided in Rule 144 under the Securities Act. 17 C.F.R. § 230.144. Rule 144 is intended to prevent the recipient of restricted securities from making them available to the public in a way that the issuer could not have. *See* Preliminary Note to 17 C.F.R. § 230.144. Among other requirements, Rule 144 provides a holding period for restricted securities before transfer. 17 C.F.R. § 230.144(d). This holding period for the shares began, at earliest, on April 2, 2021, the date of the Second Amendment to the Purchase Agreement that provided the issuance of the stock. [D.I. 1-6]. Moreover, because FTE was a reporting issuer (*i.e.* subject to reporting requirement under the Securities Exchange Act), the holding period extended another six months if FTE was not current on its public information requirements (*i.e.* it failed to comply with its periodic reporting requirements under

the Securities Act. 17 C.F.R. § 230.144(c). Rule 144 requires that there be adequate public information available about the issuer if there are to be any sales of restricted shares prior to one year following the date of issuance. *Id.* There is no dispute that FTE has not filed a Form 10-K annual report since November 5, 2020. *See* [https://www.sec.gov/edgar/search/#/dateRange=custom&ciks=0001122063&entityName=FTE%2520Networks%252C%2520Inc.%2520(CIK%25200001122063)&startdt=2020-01-01&enddt=2023-02-21](https://www.sec.gov/edgar/search/#/dateRange=custom&ciks=0001122063&entityName=FTE%2520Networks%252C%2520Inc.%2520(CIK%25200001122063)&startdt=2020-01-01&enddt=2023-02-21) (SEC Edgar Search, last visited Feb. 21, 2023); s*ee also Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (in deciding a motion for judgment on the pleadings, the court may take judicial notice of matters of public record such as SEC filings.). Under the circumstances, the required holding period lasted into April 2022, which was after the stockholders' bylaws amendment of February 3, 2022 that offended FTE's management and led it to attack those stockholders through its litigation. [D.I. 38, p. 6].

    c.    **The Szkaradeks have not made a restricted transfer.**

FTE's alternative justification to vitiate voting rights is that the Szkaradeks breached a contractual obligation by agreeing to sell stock to Innovativ. Section 1.4 of the Second Amendment replaces Section 4.7(b) of the Purchase Agreement and imposes transfer restrictions on the Szkaradeks' FTE stock including restricting transfers to Suneet Singal affiliates. [D.I. 1-6]. The Second Amendment adopts the definition of Rule 12b-2 of the Securities Exchange Act, 17 C.F.R. § 240.12b-2. Rule 12b-2 defines an affiliate as "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified." *Id.* No court has found that Innovativ is a Singal affiliate, which it is not, but even if it was, FTE has not alleged a transfer to Innovativ. Instead, it has alleged only an *agreement* to make a transfer, not an actual transfer. And even if a restricted transfer occurred,

6

the Second Amendment dictates that it would be either null and void with the record ownership and interests returned to the Szkaradeks or, under certain circumstances, permissible so long as the Szkaradeks retained and exercised all associated voting rights. *See* Section 1.4(b)(ii), (iii)(1)&(2). Therefore, either result would retain voting rights for the Szkaradeks. Here, there is no dispute that the Szkaradeks are the current record owners of the stock and there also is no allegation that they *completed* a restricted transfer. Therefore, FTE cannot unilaterally deny the Szkaradeks' voting rights for this reason.

> **C. There is no basis to vitiate the Szkaradeks' voting rights for fraud allegations.**

FTE's contention that it can deny the Szkaradeks' voting rights because of its own unproven allegations of fraud against the Szkaradeks is not only unsupported, but contravenes principles against shareholder disenfranchisement. FTE relies upon cases brought under an inapplicable Delaware statute, Del. Code Ann. tit. 8, § 225, relating to the validity of a contested election of directors. [D.I. 38, pp. 15-16]. However, FTE's cited cases hold only that the court may consider allegations of fraud, which, if proven, would impact the contested election. *See Zhou v. Deng*, No. CV 2021-0026-JRS, 2022 WL 1024809 (Del. Ch. Ct. Apr. 6, 2022) (declining to set aside a stockholder vote because petitioner failed to demonstrate alleged fraud by clear and convincing evidence), *Kahn Bros. & Co. Profit Sharing Plan & Tr. v. Fischbach Corp.*, No. CIV. A. 8987, 1988 WL 122517 (Del. Ch. Ct. Nov. 15, 1988) (finding that the court may consider allegations of fraud in the acquisition of stock that defendant voted in the contested election after obtaining the shares in violation of a standstill agreement intended to limit defendant's total shares), *Atkins v. Hiram*, No. CIV. A. 12887, 1993 WL 287617 (Del. Ch. Ct. July 26, 1993) (finding that the court may consider allegations of fraud regarding an irrevocable proxy making defendant the majority voter in a contested election). The holdings of these cases

are confined to claims under § 225 relating to contested elections, which is not at issue here. Therefore, the cited cases are inapposite.

FTE also relies upon a case from New York, *Knickerbocker Inv. Co. v. Voorhees*, 100 A.D. 414 (N.Y. App. Div. 1905), [D.I. 38, pp. 15-16], which involved a suit to set aside a voting trust that was allegedly void on its face, obtained by fraud, and included voting trustees who were acting in bad faith and mismanaging the company. The facts of that case were entirely dissimilar from the instant case. There, the corporation sought and obtained a temporary injunction restraining the voting trust rather than unilaterally denying the voting rights of the trust. *Knickerbocker*, 100 A.D. at 415. Moreover, the instant case does not concern a voting trust at all, but rather the right of individual stockholders to vote their own undisputed record shares received from the issuer.

### D. There is no basis to find illegal "vote buying" to nullify the Szkaradeks' voting rights.

FTE cites to cases concerning alleged improper vote buying, [D.I. 38, p. 15-16], which are completely irrelevant. FTE cites *Schreiber v. Carney*, which explains that illegal vote buying occurs when there is a "voting agreement supported by consideration personal to the stockholder, whereby the stockholder divorces his discretionary voting power and votes as directed by the offeror." *Schreiber v. Carney*, 447 A.2d 17, 23 (Del. Ch. Ct. 1982). That is clearly not the case here. It is undisputed that the Szkaradeks obtained their record shares – and corresponding voting rights - directly from the issuer, FTE. There is no split between the owner and voter of the shares because the Szkaradeks are the undisputed record owners of the shares with full ownership and thereby hold their corresponding votes as a matter of law. Therefore, there is no illegal "vote buying" here.

E.  **FTE's factual recitations are not only irrelevant, but they are also inaccurate.**

Despite FTE's hyperbole, it is the managers of FTE, not the Szkaradeks, that have engaged in illegal activity that that has already led to repeated injunctions against them. Since this litigation began, there have been multiple injunctions blocking illicit schemes from FTE's directors, Michael Beys and Richard de Silva, to rig control of FTE to convert company assets. *See, e.g., Innovativ Media Group, Inc. v. FTE Networks, Inc.*, Case No. A-22-849188-B (Clark County, Nev.) (Orders dated Nov. 7, 2022 (following evidentiary hearing, enjoining management's illegal attempt to stack the board of directors and requiring maintenance of status quo), Aug. 25, 2022 (enjoining management's illegal stockholder meeting scheme to stack the board of directors); *Innovativ Media Group, Inc. v. Michael Beys, et al.*, Case No. 22-01362 (D. Nev. 2022) (Stipulation and Order filed Aug. 26, 2022 (cancelling illegal stockholder meeting and ordering compliance with applicable law)). While FTE cries wolf about an alleged coup, it is actively engaging in illegal conduct designed to enrich Beys and de Silva while subverting the rights of its stockholders to take lawful action, as the owners of the corporation, to ensure the directors fulfill their fiduciary duties. *See Innovativ Media Group, Inc., et al. v. Michael Beys, et al.*, Case No. 22-01184 (D. Nev. 2022).

F.  **Conclusion.**

FTE independently and without legal authority seeks to deny the Szkaradeks their voting rights. And FTE would have this Court retroactively validate that action by denying the Motion in flagrant disregard to the clear statutory authority entitling the Szkaradeks to vote based solely on FTE's misrepresentation of the Agreement, unproven allegations, and factually distinct case citations. The Court should reject these efforts to disenfranchise these record owners from their manifest voting rights.

This Motion concerns <u>only</u> whether the Szkaradeks have a right to vote their record shares as a matter of law, not whether the Szkaradeks will ultimately keep those shares. FTE's Opposition seeks to obscure this basic question. As undisputed current record owners, the Szkaradeks patently have a right to vote.

Accordingly, because there is no factual dispute concerning the Szkaradeks record ownership of the subject FTE shares and that the governing law empowers stockholders of record to vote their shares, the Szkaradeks respectfully request entry of an Order granting partial judgment on the pleadings in their favor as to Count V of the Counter-Complaint for Declaratory Judgment ordering that the Szkaradeks may vote their FTE shares as long as they are stockholders of record.

Respectfully submitted,

**LAMB McERLANE PC**

Dated: February 23, 2023   By:   */s/ Virginia Whitehill Guldi*
Virginia Whitehill Guldi (ID No. 2792)
Joel L. Frank (admitted *pro hac vice*)
24 East Market Street, P.O. Box 5656
West Chester, Pennsylvania 19381
Telephone: (610) 430-8000
Email: vguldi@lambmcerlane.com
Email: jfrank@lambmcerlane.com
*Attorneys for Defendants*
*Alexander Szkaradek and Antoni Szkaradek*

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 23, 2023, I caused the foregoing Counter-Plaintiffs' Reply in Further Support of Their Motion for Judgment on the Pleadings on Count V of the Counterclaim to be electronically filed via this Court's CM/ECF system, which effectuated service on all counsel of record.

                                                                        */s/ Virginia Whitehill Guldi*