IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FTE NETWORKS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 22-785-WCB |
| ALEXANDER SZKARADEK and | § | |
| ANTONI SZKARADEK, | § | |
| | § | |
| *Defendants*. | § | |
| _____ | § | |
| | | |
| ALEXANDER SZKARADEK and | § | |
| ANTONI SZKARADEK, | § | |
| | § | |
| *Third-Party Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| MICHAEL BEYS ET AL., | § | |
| | § | |
| *Third-Party Defendants*. | § | |
| _____ | | |

## MEMORANDUM OPINION AND ORDER

On June 14, 2022, plaintiff and counter-defendant FTE Networks, Inc., ("FTE") filed this action against defendants and counter-plaintiffs Alexander and Antoni Szkaradek (collectively, "the Szkaradeks"). Dkt. No. 1. The Szkaradeks answered, asserting several counterclaims against FTE. Dkt. No. 20. Count V of the Szkaradeks' counterclaims seeks a declaratory judgment that the Szkaradeks "have the right and ability" to vote shares of FTE's stock of which they are the record owners. *Id.* ¶¶ 270–75. The Szkaradeks now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Count V of their counterclaims. Dkt. No. 35.

1

I.      **Background**

This suit relates to a purchase agreement ("the Agreement") that FTE entered into with the Szkaradeks. In the Agreement, FTE agreed to purchase numerous properties that were owned and managed by the Szkaradeks. Dkt. No. 1 ¶¶ 39, 52. As part of the consideration given to the Szkaradeks for those properties, FTE transferred 22,063,376 shares of FTE stock to the Szkaradeks. According to FTE, the Agreement provided that half of those shares would subsequently be transferred to First Capital Real Estate Trust, Inc. ("FC REIT").[1] *Id.* ¶ 15. The Szkaradeks admit that they have never transferred 11,031,688 shares of stock to FC REIT. *Id.* ¶ 16; Dkt. No. 20 ¶ 16. FTE thus seeks a judgment in this action that, in part, "[d]irect[s] the Szkaradeks to transfer 11,031,688 shares of FTE stock to the FC REIT." Dkt. No. 1 at 29. At the present time, however, it is undisputed that FTE is the record owner of all 22,063,376 shares of FTE stock that were the subject of the Agreement.

Prior to the filing of this action, the Szkaradeks brought suit against FTE in Nevada state court, seeking "various forms of relief under Nevada's private corporations' statu[t]es." Dkt. No. 38-3 ¶ 1. In the course of that proceeding, the Szkaradeks contended, as they do here, that they were entitled to exercise the rights associated with the 11,031,688 shares that FTE alleges should have been transferred to FC REIT. *Id.* ¶ 15. The Nevada court did not resolve that argument on the merits, however, because "the Delaware courts have exclusive jurisdiction to resolve disputes about the propriety of the Szkaradeks' purported ownership of the FTE stock." *Id.* ¶ 24.

---

[1] FC REIT became involved in the transaction when Suneet Singal, a business associate of the Szkaradeks, was charged with securities fraud by the Securities and Exchange Commission. Dkt. No. 1 ¶¶ 43–48. The provision requiring that half the FTE shares be transferred to FC REIT was, according to FTE, intended to compensate "the victims of Signal's [sic] SEC fraud, the shareholders of the FC REIT." *Id.* ¶ 48.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  A Rule 12(c) motion "will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (internal quotation marks and citation omitted).  The standard that applies to a Rule 12(b)(6) motion to dismiss for failure to state a claim also applies to motions brought under Rule 12(c); that is, in the common situation in which the defendant moves to dismiss the complaint, the court "must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010).  In the less common situation in which the plaintiff moves for judgment on the pleadings, the court must accept as true the factual allegations in the defendant's answer and construe the factual allegations in the light most favorable to the defendant. *United States v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963); *Fanatics Retail Grp. (Dreams), LLC v. Truax*, No. 20-cv-0794, 2020 WL 7042873, at *2 (D. Del. Dec. 1, 2020).  More generally, "[t]he purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008).

## III.  Discussion

The Szkaradeks seek a declaratory judgment that they are entitled to vote all of the FTE shares of which they are the record owners.  FTE argues that the Szkaradeks are not entitled to vote

3

their shares because the Szkaradeks obtained those shares by breaching the Agreement and by obtaining those shares by fraud.

As an initial matter, FTE asserts that the court in the Nevada action made findings of fact that have a collateral estoppel effect against the Szkaradeks in this proceeding. In particular, FTE focuses on the court's findings that (1) FTE agreed to transfer 22,063,376 shares of FTE stock to the Szkaradeks "provided that the Szkaradeks immediately sell, transfer, and convey 11,031,688 of those shares to the FC REIT"; and (2) it was undisputed that the Szkaradeks never transferred those 11,031,688 shares to FC REIT. Dkt. No. 38 at 8, 10; Dkt. No. 38-3 ¶¶ 13–14. Regardless of the potential import of those findings on the merits of the present dispute, however, those findings do not have a collateral estoppel effect because they were not "essential to the prior judgment." *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 16-453, 2022 WL 14760673, at *2 (D. Del. Oct. 25, 2022) (quoting *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995)). That is, those findings were not essential to the court's conclusion that it lacked jurisdiction over the Szkaradeks' claims and therefore cannot serve as the basis for collateral estoppel in this proceeding.

FTE is a Nevada corporation, and thus the question whether the Szkaradeks are entitled to vote their shares is governed by Nevada law. *See* Nev. Rev. Stat. § 78.015(1). Section 78.350 of the Nevada Revised Statutes makes clear that "every stockholder of record of a corporation is entitled at each meeting of stockholders thereof to one vote for each share of stock standing in his or her name on the records of the corporation." And Nevada law defines the term "stockholder of record" by statute to mean "a person whose name appears on the stock ledger of the corporation as the owner of record of shares of any class or series of the stock of the corporation." *Id.* § 78.010(k).

4

On issues of corporate law, Nevada courts often look to Delaware law as persuasive authority. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008) ("[T]he Nevada Supreme Court frequently looks to the Delaware Supreme Court and the Delaware Courts of Chancery as persuasive authorities on questions of corporation law . . . ."). And, as the Delaware Court of Chancery has explained, Delaware law also provides that "only holders of record of voting stock, as of the record date" are entitled to vote at a shareholder meeting. *Mariner LDC v. Stone Container Corp.*, 729 A.2d 267, 273. (Del. Ch. 1998). That point is made even more clearly in the Delaware Code, which states that "[t]he stock ledger shall be *the only evidence* as to who are the stockholders entitled by this section . . . to vote in person or by proxy at any meeting of stockholders." 8 Del. C. § 219(c) (emphasis added). Such a "rule of expediency," the Delaware Court of Chancery explained, "permits a corporation to rely exclusively upon its stock ledger in order to determine who are its stockholders." *Castro v. ITT Corp.*, 598 A.2d 674, 677 (Del. Ch. 1991)

In view of the above authorities, the general rule is clear that the record owner of shares of a Nevada corporation is the person who is authorized to vote those shares. Rather than dispute that general rule, FTE raises several arguments as to why the circumstances of this case preclude a grant of judgment on the pleadings in favor of FTE on the declaratory judgment counterclaim.

First, FTE cites two Delaware cases for the proposition that "a party cannot exercise voting rights that it obtains from another in breach of contract." Dkt. No. 38 at 9 (citing *Zohar II 2005-1, Ltd. v. FSAR Holdings, Inc.*, No. CV 12946-VCS, 2017 WL 5956877, at *22 (Del. Ch. Nov. 30, 2017), and *Crown EMAK Partners, LLC v. Kurz*, 992 A.2d 377, 392 (Del. 2010)). In FTE's view, the Agreement required the Szkaradeks to transfer half the shares they obtained to FC REIT, and the Szkaradeks' failure to do so amounted to a failure to comply with a condition precedent to the

5

Agreement, which precludes the Szkaradeks from voting those shares they were contractually bound to transfer to FC REIT.

The facts and posture of the *Zohar* and *Crown* cases differ significantly from those of the case at bar. In both *Zohar* and *Crown*, the courts held that the record owner of the shares obtained those shares in violation of a prior agreement restricting the transfer of the shares. *Zohar*, 2017 WL 5956877, at *22; *Crown*, 992 A.2d at 392. There is no indication in this case that the Szkaradeks' shares of FTE stock were subject to any transfer restrictions prior to the execution of the Agreement. Moreover, *Zohar* and *Crown* were both actions brought under 8 Del. C. § 225, which permits a shareholder to contest the "election, appointment, removal or resignation of any director or officer of any corporation." *Zohar*, 2017 WL 5956877, at *18; *Crown*, 992 A.2d at 378. That is, the courts in those cases were faced with the question whether an election or appointment that had already occurred was valid. They did not address the question whether shareholders could be prospectively prohibited from voting shares of which they were the record owners.

In any event, the plain language of the Agreement indicates that the transfer of the approximately 11 million shares to FC REIT was not a condition precedent to the Agreement. Rather, the section of the Agreement discussing those shares indicates that the Szkaradeks were required, as a condition precedent, to

> provide[] such documentation as shall reasonably be requested by [FTE] to demonstrate that the [Szkaradeks] have agreed to sell, transfer, and convey the FC REIT shares to [FC REIT] and to enable and instruct [FTE's] transfer agent to transfer the FC REIT Shares from the [Szkaradeks] to [FC REIT] following the issuance of such shares to the Szkaradeks.

Dkt. No. 1-6 § 1.5. That language required the Szkaradeks to provide certain documentation to FTE before FTE became obligated to transfer its shares to the Szkaradeks. *See id.* Given that the shares in dispute were undisputedly transferred by FTE to the Szkaradeks, the court can infer that either the

6

Szkaradeks complied with that condition precedent or that FTE waived that condition. *See Pouls v. Windmill Ests., LLC*, No. CIV.A.SS08C-05-014RF, 2010 WL 2348648, at *5 & n.9 (Del. Super. Ct. June 10, 2010) ("A condition precedent may be waived by conduct which evidences such an intention.") (citing cases). Thus, FTE's contention that the Szkaradeks failed to comply with a condition precedent to the Agreement is unpersuasive.

On the same point, FTE also suggests that the Szkaradeks have breached the Agreement by agreeing to transfer 11,031,688 shares of FTE stock to Innovativ Media Group, Inc., an entity that FTE alleges is "an affiliate of [Mr.] Singal." Dkt. No. 38 at 11. It is true that the Agreement prohibits the distribution, sale, or transfer of any of the equity consideration received by the Szkaradeks to Mr. Singal or any family members or affiliates of Mr. Singal. Dkt. No. 1-6 ¶ 1.4(b)(ii). However, FTE alleges merely that the Szkaradeks have "agreed" to transfer their shares, not that any such transfer has actually occurred. Dkt. No. 1 ¶ 160. Therefore, even assuming that a breach of the Agreement would be a proper basis to prospectively prohibit the Szkaradeks from voting their shares, FTE has not sufficiently alleged that the Szkaradeks actually breached the Agreement by agreeing to transfer their shares to Innovativ.

Second, FTE cites a number of cases for the proposition that "proven fraud" and "vote-buying" can be bases for setting aside a stockholder vote. Dkt. No. 38 at 15–16 (citing cases). Essentially, FTE argues that it has alleged in this case that the Szkaradeks acquired their shares in FTE via fraud and that the Szkaradeks are engaged in vote-buying, and thus that there are disputed factual questions that bear on whether the Szkaradeks are entitled to vote their shares.

The cases cited by FTE support the proposition that a stockholder's vote might be invalid if the votes cast were obtained by fraud. *See, e.g.*, *Zhou v. Deng*, No. CV 2021-0026-JRS, 2022 WL 1024809, at *8 (Del. Ch. Apr. 6, 2022), *aff'd*, 287 A.3d 633 (Del. 2022) ("In certain circumstances,

proven fraud can also be a basis to set aside a stockholder vote . . . ."); *Kahn Bros. & Co. Profit Sharing Plan & Tr. v. Fischbach Corp.*, No. 8987, 1988 WL 122517, at *5 (Del. Ch. Nov. 15, 1988) (holding that questions about whether a shareholder "acquired his control block of stock as the result of a fraud practiced upon the corporation itself . . . and whether, if so, his voting of such stock should be void or voidable" were relevant to a determination of whether "the directors who purport to hold office do not do so validly"); *Carballal v. PMBC Corp.*, No. 17058, 1999 WL 342341, at *3 (Del. Ch. May 14, 1999) ("If (for example) the defendants were contending that the plaintiffs had acquired their shares through fraud or other inequitable conduct, then arguably it could be claimed that as a consequence the plaintiffs did not rightfully own their shares, and were therefore not entitled to vote those shares on March 11.").

There is also support in the case law for the proposition that votes that have been purchased are not validly cast. *See, e.g.*, *Chew v. Inverness Mgmt. Corp.*, 352 A.2d 426, 430 (Del. Ch. 1976) ("So any agreement by a stockholder to sell his vote or to vote in a certain way, for a consideration personal to himself is contrary to public policy and void." (citation omitted)); *Schreiber v. Carney*, 447 A.2d 17, 26 (Del. Ch. 1982) ("Because vote-buying is so easily susceptible of abuse it must be viewed as a voidable transaction subject to a test for intrinsic fairness.").

As with the *Zohar* and *Crown* cases, however, each of the above-cited cases were actions seeking to invalidate elections or other transactions due to alleged fraud or vote-buying that had allegedly occurred prior to those events. *Zhou*, 2022 WL 1024809, at *1; *Kahn Bros.*, 1988 WL 122517, at *1; *Carballal*, 1999 WL 342341, at *1; *Chew*, 352 A.2d at 427; *Schreiber*, 447 A.2d at 18. None of those cases suggest that the record owner of stock in a corporation may be prospectively barred from voting their shares.

8

The decision of the Delaware Court of Chancery in *Wincorp Realty Investments, Inc. v. Goodtab, Inc.*, not cited by the parties, is also instructive. No. 7314, 1983 WL 8948 (Del. Ch. Oct. 13, 1983). In that case, the plaintiffs sought a preliminary injunction to prevent the defendants from voting certain shares in an upcoming election of directors on the ground that "the right to vote a large block of corporate shares by the defendants' faction ha[d] been obtained by means of an illegal vote-buying scheme." *Id.* at *1. Despite viewing the merits of the plaintiffs' argument as "strong stuff," the court denied the motion for two reasons. *Id.* at *4. First, the court explained that even if the defendants succeeded in electing their preferred director, "there [would] be an opportunity to challenge his seating as a director without any immediate threat to the well-being of the corporation in the interim." *Id.* Second, the court noted that there was not a *per se* bar on vote-buying under the Delaware Court of Chancery's decision in *Schreiber*. *Id.* at *4–5. Thus, the court permitted the election of directors "to run its course without intervention by the Court." *Id.* at *4.

In *Kerkorian v. Western Air Lines, Inc.*, 253 A.2d 221 (Del. Ch. 1969), the Delaware Court of Chancery also addressed a situation somewhat similar to that presented by this case. In that case, the corporation sought to preclude a shareholder from inspecting its books and records under 8 Del. C. § 220 on the ground that the shareholder held the stock in violation of federal law. *Kerkorian*, 253 A.2d at 222. Notably, as with the right to vote in a shareholder election, the right to inspect books and records is available to a "stockholder of record." *Id.* at 224 (citing 8 Del. C. § 220). In support of its assertion that the shareholder held his shares illegally, the corporation pointed to allegations that it had made in an administrative proceeding before the Civil Aeronautics Board ("CAB"). *Id.* The court observed, however, that "the CAB ha[d] made no determination that [the shareholder's] ownership or status is in any way illegal. It may do so. It has not as yet." *Id.* The court therefore declined to prohibit the shareholder from inspecting the books and records, explaining

that doing so would permit the corporation to "parlay its own complaint in one proceeding into a reason for equitable relief in another." *Id.* at 224–26.

In this case, FTE's allegations of fraud have not been resolved on the merits, and no party has requested a resolution of those issues on the merits at the pleading stage. To prohibit the Szkaradeks from voting shares of which they are the record owners would effectively permit FTE to "parlay its own complaint . . . into a reason for equitable relief." *See id.* at 224. As the record owners of the disputed shares of FTE stock, the Szkaradeks are entitled to vote those shares, and FTE has not presented any reason to conclude that the present circumstances of this case override that entitlement.

To be clear, I do not hold today that any election in which the Szakaradeks vote their shares is necessarily valid. FTE may wish to contest the results of any such election on the ground that the Szkaradeks obtained their shares via fraud or engaged in impermissible vote buying. If this court or another court resolves those allegations in favor of FTE on the merits, it may be the case that any election in which the Szkaradeks participated can be invalidated. However, because they are the record owners of the disputed shares at this time, the Szkaradeks are entitled to vote those shares until and unless their right to do so is successfully challenged.

## IV.    Conclusion

In response to the Szkaradeks' motion for judgment on the pleadings regarding its declaratory judgment counterclaim, the court declares that the Szkaradeks are entitled to vote their shares at the present time, subject to potential revocation of that entitlement in the event of a finding of fraud or other conduct that would serve as the basis for invalidating their votes. The motion for judgment on the pleadings on Count V of the Counterclaims against counter-defendant FTE is therefore GRANTED to that extent. The court's ruling does not address any claims that the Szkaradeks'

possession of those shares is unlawful, that their act of voting the shares is unauthorized, or that any actions resulting from their exercise of the right to vote those shares is invalid.

IT IS SO ORDERED.

SIGNED THIS 8th day of March, 2023.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE