IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FTE NETWORKS, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 22-785-WCB |
| ALEXANDER SZKARADEK and ANTONI SZKARADEK, | § § § § | |
| *Defendants*. | § § § | |
| _____ | | |
| ALEXANDER SZKARADEK and ANTONI SZKARADEK, | § § § | |
| *Third-Party Plaintiffs,* | § § § | |
| v. | § § | |
| MICHAEL BEYS ET AL., | § § § | |
| *Third-Party Defendants*. | § | |
| _____ | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff FTE Networks, Inc., ("FTE") has sued defendants Alexander Szkaradek and Antoni Szkaradek, charging them with fraudulently inducing FTE to enter into an agreement to purchase certain real-estate properties.

In response to the lawsuit, the defendants moved to appoint a receiver for FTE. Dkt. No. 50. FTE filed an opposition to the motion, Dkt. No. 52, and the defendants filed a reply, Dkt. No. 58. The defendants requested an evidentiary hearing to address the receivership issue. For the reasons set forth below, the request for an evidentiary hearing is GRANTED.

1

I.      **Factual and Procedural Background**

FTE is a Nevada corporation with its principal place of business in New York. FTE was formerly a telecommunications company but is now primarily a real-estate company.

Alexander Szkaradek and Antoni Szkaradek, both citizens of South Carolina, are FTE shareholders. Prior to 2019, the Szkaradeks were the principal owners of Vision Portfolio, a company that possessed a portfolio of lease-to-own homes located throughout the country. Vision Portfolio was managed by Vision Property Management, LLC, which was owned by the Szkaradeks. Between 2016 and 2019, Vision Portfolio was the subject of litigation in several states. In 2019, the Szkaradeks sold Vision Portfolio to FTE.[1]

This lawsuit arises from a 2019 purchase agreement between the parties, amended in 2021, in which the Szkaradeks transferred the Vision Portfolio properties to FTE in exchange for a cash payment and FTE stock. FTE alleges the Szkaradeks fraudulently induced FTE to enter into the 2019 agreement by misrepresenting the value of the Vision Portfolio properties and omitting or misrepresenting the litigation brought against the Szkaradeks, Vision Property Management, LLC, and their broker, Suneet Singal. Dkt. No. 1 ¶¶ 4-15. FTE further alleges that the Szkaradeks conspired with other actors to take control of FTE after the agreement. *Id.* ¶¶ 18-20. The Szkaradeks dispute those allegations and allege that FTE fraudulently induced them into selling the Vision Portfolio properties, failed to make certain required payments to the Szkaradeks, mismanaged the Vision Portfolio properties, and interfered with the Szkaradeks' voting rights as stockholders in FTE. Dkt. No. 20 ¶¶ 172-237.

---

[1] Between 2016 and 2019, the attorneys general of Wisconsin, Maryland, and New York filed lawsuits against Vision Property Management, LLC. Dkt. No. 21 ¶ 171 n.16. Private parties brought a class action against Vision Property Management, LLC, in New Jersey in 2018. *Id.*

On June 14, 2022, FTE filed a complaint against the Szkaradeks, alleging fraudulent inducement and fraud, tortious interference with contract, conspiracy, and breach of contract. Dkt. No. 1. On September 5, 2022, the Szkaradeks filed counterclaims against FTE, alleging fraudulent inducement or, in the alternative, misrepresentation; breach of contract or, in the alternative, negligent misrepresentation; abuse of process; and securities fraud. Dkt. No. 20. The Szkaradeks have also filed a third-party complaint against additional defendants. Dkt. No. 21.

On July 28, 2023, the Szkaradeks filed a motion for appointment of a receiver over FTE pursuant to Delaware law or, in the alternative, Nevada law. Dkt. No. 50; 8 Del. Code §§ 226, 291; NRS 78.347(1). The Szkaradeks allege that FTE is insolvent and has abandoned its business. Dkt. No. 50 at 7–10. They argue that a receivership is necessary to prevent the further loss and/or waste of FTE's assets. *Id.* at 13–14. FTE disputes those allegations and argues that this court must dismiss the motion on several procedural and jurisdictional grounds discussed below. Dkt. No. 52.

## II. Discussion

### A. Whether there is a procedural or jurisdictional bar to this court's appointment of a receiver

In its opposition to the Szkaradeks' motion to appoint a receiver, FTE argues there are several procedural reasons that this court cannot grant the motion. First, FTE argues that the Szkaradeks' failure to comply with Local Rule 7.1.1 warrants dismissal. Second, FTE argues that under the "internal affairs" doctrine, FTE, as a Nevada corporation, is not subject to Delaware receivership statutes. Third, FTE argues that the Szkaradeks' motion is barred by principles of collateral estoppel.

#### i. Local Rule 7.1.1

Local Rule 7.1.1 requires that, for every nondispositive motion, the moving party must make "a reasonable effort" to "reach agreement with the opposing party on the matters set forth in

the motion." Under the language of the rule, a reasonable effort requires "oral communication that involves Delaware counsel for any moving party and Delaware counsel for any opposing party." Rule 7.1.1 further states that failure to comply "may result in dismissal of the motion."

FTE contends that even though the Szkaradeks certified that they had complied with Local Rule 7.1.1 in their motion to appoint a receiver, *see* Dkt. No. 50 at 20, the Szkaradeks did not raise the appointment of a receiver with FTE's Delaware counsel prior to filing the motion. Dkt. No. 52 at 11-12. FTE argues that the Szkaradeks' motion to appoint a receiver should be denied for failure to comply with that provision of the Local Rule. *Id.* (citing *Akula v. Telestax, Inc.*, No. CV 17-1740, 2018 U.S. Dist. LEXIS 174792, at *2-3 (D. Del. Oct. 11, 2018); *UCB, Inc. v. Watson Labs., Inc.*, No. CV 14-1083, 2017 U.S. Dist. LEXIS 97711, at *3-4 (D. Del. May 19, 2017); *In re Automated Transactions LLC*, No. MDL 13-2429, 2014 U.S. Dist. LEXIS 143653, at *5-6 (D. Del. Jan. 31, 2014); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80, 2010 U.S. Dist. LEXIS 27530 (D. Del. Mar. 23, 2010); *Cloud-Williams v. Ocwen Loan Servicing*, No. 14-1096, 2015 U.S. Dist. LEXIS 7329, at *7 n.4 (D. Del. Jan. 13, 2015)).

The Szkaradeks do not dispute that they failed to raise the appointment of a receiver with FTE's counsel. They contend, however, that the alleged noncompliance was "technical in nature" because counsel certified compliance based on FTE's opposition to similar requested relief in a case in Nevada. *See* Dkt. No. 58 at 8; *see also* Dkt. No. 52, Ex. K. The Szkaradeks argue that (1) Local Rule 7.1.1 confers discretion to this court to determine whether to dismiss a motion for noncompliance with the rule and (2) dismissal would be too harsh an outcome in the present case because compliance would have been futile given FTE's position in the Nevada litigation. *See* Dkt. No. 58 at 8 (citing *Stokes v. Markel Am. Ins. Co.*, 595 F. Supp. 3d 274, 288 (D. Del. 2022)).

4

The use of the term "may" in Local Rule 7.1.1 indicates that dismissal for noncompliance is discretionary, not mandatory. None of the cases cited by FTE suggest otherwise. As the court explained in *Stokes*, a party's speculation that a meet and confer would have been futile does not excuse its failure to comply with the rule. 595 F. Supp. 3d at 288. And in the present case the Szkaradeks should have made reasonable efforts to meet and confer with FTE. However, given FTE's opposition to the appointment of a receiver in the past, and the sharply conflicting positions taken by the parties in the current briefing on this issue, it seems quite clear that dismissing the motion and requiring the parties to meet and confer on the receivership issue would not enhance the likelihood of resolving the dispute on that issue, but would simply result in delaying the litigation. The motion to appoint a receiver will therefore not be dismissed for failure to comply with Local Rule 7.1.1.

    **ii.**  **The Internal Affairs Doctrine**

The Szkaradeks have sought the appointment of a receiver pursuant to 8 Del. Code §§ 226 and 291. Dkt. No. 50. FTE argues that the so-called internal affairs doctrine prohibits this court from appointing a receiver. Dkt. No. 52 at 12-14.

    **a.**  **Whether the appointment of a receiver relates to a corporation's internal affairs.**

The internal affairs doctrine is a conflict of law principle recognizing that "only the law of the state of incorporation governs and determines issues relating to a corporation's internal affairs." *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005). FTE argues that the request to appoint a receiver implicates FTE's internal affairs. Dkt. No. 52 at 13 (citing *Barry v. Full Mold Process, Inc.*, No. 4740, 1975 WL 1949 (Del. Ch. June 16, 1975)). The Szkaradeks disagree, arguing that the present case is distinguishable from *Barry* because the request for a receiver in *Barry* was based on deadlock among the directors under 8 Del. Code

5

§ 226(a)(2), whereas the Szkaradeks have requested that a receiver be appointed based on FTE's alleged abandonment of its business under 8 Del. Code §§ 226(a)(3) and 291.  Dkt. No. 58 at 6-7.

Delaware law makes clear that under the internal affairs doctrine a request to appoint a receiver is governed by the law of the state of incorporation.  *See VTB Bank v. Navitron Projects Corp.*, No. CIV.A. 8514, 2014 WL 1691250, at *5 (Del. Ch. Apr. 28, 2014); *Jagodzinski v. Silicon Valley Innovation Co., LLC*, No. CV 7378, 2015 WL 4694095, at *7 (Del. Ch. Aug. 7, 2015) (explaining that the appointment and discharge of a receiver interferes with the internal affairs of a corporation); *Barry*, 1975 WL 1949, at *2 (same); *see also Strunk v. Advent Int'l Corp.*, No. CV-05-457, 2006 WL 978983, at *2-3 (Me. Super. Mar. 27, 2006) (applying the law of the state of incorporation to the request to appoint a receiver).

The Szkaradeks' attempt to distinguish this case from *Barry* is not persuasive.  The *Barry* court suggested that it is the appointment of a receiver itself that interferes with the internal affairs of a corporation, and therefore the appointment of a receiver should be avoided absent "a clear showing of fraud or gross mismanagement by corporate officers which threatens to result in direct loss to the corporation and cannot otherwise be prevented." 1975 WL 1949 at *2.  The Szkaradeks' request for a receiver is based on the alleged mismanagement by FTE's corporate leadership.  Additionally, in the years since *Barry*, the Delaware Court of Chancery has reiterated that the appointment of a receiver is an internal affairs matter that is outside of the reach of section 226(a)(2).  *See VTB Bank*, 2014 WL 1691250, at *5; *Jagodzinski*, 2015 WL 4694095 at *7.  Accordingly, FTE is correct that this court cannot appoint a receiver over a Nevada corporation based on Delaware law.

> b. **Whether the internal affairs doctrine bars a non-Nevada court from deciding the motion to appoint a receiver**

FTE suggests that this court is prohibited not only from appointing a receiver pursuant to Nevada law, but that it has no legal authority in any circumstances to appoint a receiver over a foreign corporation. Dkt. No. 52 at 14. For support, FTE cites *Frankland v. Remington Phonograph Corp.*, a 1922 case in which the court considered its power to appoint a general receiver for a Delaware corporation after the court of another state appointed a receiver for the same corporation's assets in that state. 119 A. 127 (Del. Ch. 1922). FTE quotes dictum from that case, which stated: "That such other courts can administer the assets of a foreign corporation found in their jurisdiction is beyond doubt. That they can, however, go so far as to appoint a general receiver for such corporation, would on principle appear equally beyond doubt as not tenable." *Id.* at 128.

That case is no longer good law. The modern internal affairs doctrine is treated as a choice of law rule, not a jurisdictional principle. *See VantagePoint*, 871 A.2d at 1112 ("The internal affairs doctrine is a long-standing choice of law principle"); *McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987). Just as the internal affairs doctrine permits courts in other states to apply Delaware law to the internal affairs of Delaware corporations, *see Amatuzio v. Amatuzio*, 410 N.W.2d 871, 874 (Minn. App. 1987),[2] and *Strunk*, 2006 WL 978983 at *2, the doctrine permits Delaware courts to apply the law of foreign states to the internal affairs of foreign corporations in Delaware courts. *See McDermott*, 531 A.2d at 215 (applying the laws of Panama to a Panamanian

---

[2] In *Amatuzio*, the Court of Appeals of Minnesota reviewed the trial court's dismissal for lack of subject matter jurisdiction, which was based on the idea that the trial court could not interfere with the internal affairs of the defendant, a Delaware corporation. *Id.* at 873. The Court of Appeals explained that "[a]lthough a court will not ordinarily interfere in the internal affairs of a foreign corporation, it may have jurisdiction to do so in the exercise of sound discretion." *Id.* at 874. The Court of Appeals reversed and remanded the case for the trial court to consider dismissal under the doctrine of forum non conveniens instead. *Id.* at 874–875.

corporation under the internal affairs doctrine); *Enzo Life Scis., Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 597–598 (D. Del. 2015) (applying New York law to a New York corporation under Delaware's internal affairs doctrine).[3]

Apart from the internal affairs doctrine, this court has jurisdiction to appoint a receiver as part of its equity powers. *See KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 122 (3d Cir. 2019); *Tanzer v. Huffines*, 408 F.2d 42, 43 (3d Cir. 1969) ("It is clear that a District Court may appoint a receiver in a proper case. A receiver may be appointed to avert further loss of assets through waste and mismanagement.") (citations omitted); *Jacobs v. Tenney*, 316 F. Supp. 151, 170 (D. Del. 1970) ("A federal court has the power to inquire into the internal affairs of a foreign corporation and the power to appoint a receiver of a foreign corporation—even when the assets of the corporation lie outside the district of the appointing court.") (citing *Burnrite Coal Briquette Co. v. Riggs*, 274 U.S. 208 (1927)); *see also* 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus § 2985 (3d ed. 2023) ("[E]very federal court having equity jurisdiction is said to have inherent power to appoint receivers in proper cases.").

In cases in which federal courts have declined to appoint a receiver, they have done so not based on lack of jurisdiction, but rather because they have determined that a state court is better situated to decide whether it is appropriate to appoint a receiver in the particular case. *See, e.g., In re Puda Coal Secs. Inc., et al. Litig.*, No. 11CV2598, 2016 WL 7335652, at *1 (S.D.N.Y. Dec.

---

[3] While the internal affairs doctrine is not a jurisdictional bar, "there are notions of comity and deference inherent in the doctrine that should not lightly be ignored[.]" *Sylebra Cap. Partners Master Fund, Ltd. v. Perelman*, No. CV 2019-0843, 2020 WL 5989473, at *8 (Del. Ch. Oct. 9, 2020) (citing *Rogers v. Guar. Tr. Co. of N.Y.*, 288 U.S. 123, 130 (1933)). That means that in some circumstances, such as when a novel corporate law issue is involved, a court may decline to exercise its jurisdiction. *See id.* at 2020 WL 5989473, at *8 n.85.

16, 2016) (explaining "equity does not favor the exercise of jurisdiction" to appoint a receiver over a foreign corporation with no assets in New York after the case had settled).

### iii.     Collateral Estoppel

Earlier this year, Innovativ Media Group, Inc., petitioned a Nevada court to appoint a receiver over FTE, but the Nevada court denied the petition. Dkt. No. 50 Ex. 2. The court directed that the denial be without prejudice because the court concluded that the "harsh and extreme relief" of receivership was "not adequately linked to the narrow claims and issues before this particular Court, as opposed to the claims and issues raised by the respective parties (both Innovativ and FTE) in various other courts in various other actions." *Id*.

FTE argues that the motion in the present case should be denied on the grounds of collateral estoppel because the Nevada state court denied Innovativ's motion for receivership. Dkt. No. 52 at 14-16. In response, the Szkaradeks argue that FTE cannot satisfy the "valid and final judgment" prong of the collateral estoppel test. Dkt. No. 58 at 5–6 (citing *M.G. Bancorporation, Inc. v. Le Beau,* 737 A.2d 513, 520 (Del. 1999).

The Szkaradeks are correct. The June 23, 2023, order from the Nevada court denied the petition without prejudice and suggested that the request for a receiver would be better resolved by another court in another action. That decision did not constitute a final judgment on the merits of a claim. *See Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del. 2006) ("the phrase 'without prejudice'" means that an "otherwise final judgment does not operate as a *res judicata* bar to preclude a subsequent lawsuit on the same cause of action."). The Nevada court's order therefore has no collateral estoppel effect in this proceeding.

### B. Whether to hold an evidentiary hearing

Having determined there are no procedural or jurisdictional bars to this court's adjudication of the motion to appoint a receiver, I turn to the substance of the Szkaradeks' request for an evidentiary hearing on the receivership issue.

### i. Governing Law

The appointment of a receiver in federal court is governed by Federal Rule of Civil Procedure 66. Accordingly, federal law applies, even in diversity jurisdiction cases. *See Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291–92 (11th Cir. 1998) ("to the extent Rule 66 dictates what principles should be applied to federal receiverships, courts must comply with the Rule even in the face of differing state law") (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) ("The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles"); *Midwest Bank v. Goldsmith*, 467 F. Supp. 3d 242, 247 (M.D. Pa. 2020) ("a federal court sitting in diversity must apply federal law when determining whether to appoint a receiver"); *U.S. Bank Nat'l Ass'n v. SRA Augusta SPE, LLC*, No. 1:16-CV-00410, 2016 WL 6808132, *3 (D. Me. Nov. 17, 2016) ("The appointment of a receiver is procedural in nature and, therefore, federal law applies."); *see also KeyBank*, 781 F. App'x at 122 (applying federal law principles to the appointment of a receiver in a diversity case).

In a 1959 decision, the Third Circuit suggested that, under the principles of *Erie Railroad Co. v. Tomkins,* 304 U.S. 64 (1938), state law governs the appointment of a receiver if there is a state statute establishing a positive right to a receiver. *See Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 825 (3d Cir. 1959); *see also Glenbrook Cap. Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130 (N.D. Cal. 2007) (applying Delaware law); *Naviwala v. Khanna*, No. 17-3234, 2017 WL 11725581 at *1 n.i (E.D. Pa. Nov. 8, 2017). However, the Supreme Court's decision in *Hanna v. Plumer*

makes clear that "[w]hen a situation is covered by one of the Federal Rules," a court sitting in diversity "is instructed to apply the Federal Rule." *Hanna*, 380 U.S. at 471; *see Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291–92; *U.S. Bank Nat'l Ass'n*, 2016 WL 6808132, at *3 n.8; *Fimbel v. Fimbel Door Corp.*, No. CV 14-1915, 2016 WL 1379788, at *2 n.2 (D.N.J. Apr. 7, 2016); *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 610 n.8 (D.N.J. 2012); 12 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus § 2983 (3d ed. 2023). The Third Circuit has not overruled *Mintzer* outright, but it has retreated from *Mintzer*'s approach in subsequent decisions. *See KeyBank*, 781 F. App'x at 122; *Tanzer*, 408 F.2d at 43; *see also Midwest Bank*, 467 F. Supp. 3d at *247 ("[T]he Third Circuit's subsequent decisions in *Tanzer* and *KeyBank* call into question the court's holding that state law governs the appointment of a receiver."). Accordingly, although a state court in Delaware would have decided whether to appoint a receiver by applying Nevada law, this court will follow federal law with regard to that issue.

### ii.     Application

In *KeyBank*, the Third Circuit set out four non-exhaustive considerations bearing on whether to appoint a receiver: (1) whether milder measures would adequately protect the movant; (2) whether legal remedies appear to be inadequate; (3) whether there was ongoing "fraud or imminent danger of the property being lost, injured, diminished in value, or squandered"; and (4) "whether there had been a showing that the harm accruing to [the movant] by denial clearly overbalanced the harm to [the nonmovant] upon granting the appointment." 781 F. App'x at 122 (citing *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942), and *Mintzer*, 263 F.2d at 825–26).

The Szkaradeks argue that FTE is insolvent and that a receivership is necessary to prevent the further squandering of FTE's assets. In support, the Szkaradeks allege that FTE has been unable to pay its legal bills or hire outside counsel in an action against FTE in New York. Dkt.

11

No. 50 at 7, Ex. 3, Ex. 4. As a result, they contend, a New York court has entered a default judgment against FTE for nearly $3,000,000. Dkt. No. 50 Ex. 8. The plaintiff in that case, GS Capital Partners, LLC., has submitted a Motion for the Turnover of Assets, Dkt. No. 50 Ex. 9, and the judge has ordered that FTE show cause why an order for turnover of assets should not be entered, Dkt. No. 50 Ex. 10. The Szkaradeks allege that FTE's failure to defend itself in the New York action will soon result in the loss of additional assets that should be preserved for the benefit of FTE's shareholders and creditors. The Szkaradeks also point to a filing in another case in which FTE stated it was on "the brink of insolvency." Dkt. No. 50 at 9, Ex. 12.

Beyond that, the Szkaradeks argue that FTE has abandoned its business. In support, they cite documents from a case in Pennsylvania between FTE and DLP, a creditor of FTE and its wholly owned subsidiary, U.S. Home Rentals, LLC ("USHR"). In that proceeding, DLP alleged that USHR lost sixteen properties to tax sales by failing to pay taxes on the properties and that USHR was terminating all USHR staff. Dkt. No. 50 Ex. 13 ¶¶ 23, 24. In its response, USHR admitted it had terminated certain employees[4] but denied the allegations as to its properties. Dkt. No. 50 Ex. 14 ¶¶ 23, 24. The Szkaradeks also allege that FTE has failed to pay taxes on multiple properties, lost multiple properties for failure to pay condominium association fees, failed to respond to or defend against foreclosure proceedings, failed to service USHR accounts, failed to pay utility bills, and failed to respond to tenants' concerns, inquiries, and complaints. Dkt. No 50 at 10-11, Ex. 18 (DLP's First Petition to Appoint Receiver), Ex. 19 (Pennsylvania Appellate Court Opinion). Furthermore, the Szkaradeks allege, FTE has abandoned its corporate business by failing to issue an annual report on a form 10-K to its shareholders in 2020, 2021, and 2022, making

---

[4] The Szkaradeks allege that USHR admitted that it terminated all USHR staff, but FTE in fact admitted only that it terminated "certain of its employees." Dkt. No. 50 Ex. 14 ¶ 23.

12

no effort to re-list its stock on the New York stock exchange, and failing to hire an auditing firm to comply with the requirements accompanying its SEC filings. Dkt. No. 50 at 11.

FTE paints an entirely different picture. It argues that it is not insolvent and has not mismanaged its assets. FTE argues that the Szkaradeks have not presented tangible evidence that FTE's liabilities exceed its assets, nor have they provided any economic analysis to show that FTE is insolvent. Dkt. No 52 at 18-19. FTE contends that it has received liquid assets through its cost-sharing agreements with the Additional Defendants and that its current management is best positioned to continue "the present successful strategy of handling these lawsuits." *Id.* at 19–20; Dkt. No. 52 Ex. M. FTE also argues that its inability to pay certain legal bills or hire outside counsel is not sufficient to show that it is insolvent. Dkt. No. 52 at 20. Rather, FTE argues, it has chosen to prioritize "its limited resources in the manner management best sees fit when considering all of its obligations to creditors and shareholders and competing litigation costs." *Id.* FTE argues that the Szkaradeks have failed to allege fraud or mismanagement related to corporate governance, and that the only fraud mentioned is their pleading is the consumer fraud litigation against FTE, which arises directly from the Vision Portfolio properties that FTE alleges the Szkaradeks sold to FTE to offload liability in the consumer fraud cases. Dkt. No. 52 at 4–7, 17.

The parties briefed the question whether to appoint a receiver under Delaware law, but the arguments and evidence presented bear on the principles of federal receivership law articulated by the Third Circuit. From the evidence presented, it is not clear what FTE's assets and liabilities are. The Szkaradeks have presented evidence that FTE is losing real estate assets and is faced with default judgments. That evidence suggests that FTE's assets, particularly the Vision Portfolio assets, are in imminent danger of being lost, diminished in value, or squandered. FTE, on the other hand, has presented evidence that it has received an infusion of liquid assets pursuant to cost-

13

sharing agreements and argues that its current management is appropriately prioritizing these lawsuits. FTE suggests that a change in management would disrupt its current strategy for protecting the corporation's assets. Because neither party briefed the appointment of a receiver under federal law, neither party has addressed the question whether milder measures would be adequate to protect the Szkaradeks' interests.

The current briefing does not permit a confident conclusion as to whether the requirements for appointment of a receiver have been met. The parties' description of FTE's condition at present are so dramatically different that it is apparent that the only way to determine which description is more accurate is to hear evidence. For now, the Szkaradeks have made a showing that there is sufficient reason to believe that the appointment of a receiver may be appropriate. But their showing falls considerably short, at this point, of justifying a confident determination that receivership would be justified. Accordingly, an evidentiary hearing appears to be necessary to determine whether appointment of a receiver is required.

### III. Conclusion

For the foregoing reason, the Szkaradeks' request for an evidentiary hearing is GRANTED. The court will conduct a brief video conference at 10 a.m., Eastern Time, on Wednesday, December 20, 2023, to discuss the timing of the evidentiary hearing. The Zoom link will be sent to counsel by email in advance of the hearing.

IT IS SO ORDERED.

SIGNED this 14th day of December, 2023.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE