IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FTE NETWORKS, INC., § § *Plaintiff*, § § v. § § Civil Action No. 22-785-WCB ALEXANDER SZKARADEK and § ANTONI SZKARADEK, § § *Defendants*. § § | |
| ALEXANDER SZKARADEK and § ANTONI SZKARADEK, § § *Third-Party Plaintiffs,* § § v. § § MICHAEL BEYS ET AL., § § *Third-Party Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**

Defendants Alexander Szkaradek and Antoni Szkaradek (collectively, "the Szkaradeks") have moved for the appointment of a receiver over plaintiff FTE Networks, Inc. ("FTE"). Dkt. No. 50. For the following reasons, the Szkaradeks' motion is DENIED.

I. **Factual Background and Procedural History**

FTE is a Nevada corporation with its principal place of business in New York. FTE was formerly a telecommunications infrastructure company, but it is now primarily a real estate investment company.

1

Alexander Szkaradek and Antoni Szkaradek, both citizens of South Carolina, are FTE shareholders. Prior to 2019, the Szkaradeks were owners of Vision Property Management, LLC ("Vision"), a company that possessed a portfolio of lease-to-own homes located throughout the country referred to as the "Vision portfolio."

Between 2016 and 2019, Vision was the subject of litigation brought by state attorneys general and consumers in several states, including litigation initiated by the Commonwealth of Pennsylvania in the Common Pleas Court of Allegheny County, Pennsylvania. *See Commonwealth of Pennsylvania v. Vision Property Management et. al.,* GD~19-014368. The allegations in the Allegheny County action are representative of the claims in other states. The complaint in that case alleges that Vision, its owners (the Szkaradeks), and affiliated entities violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, in connection with marketing, selling, and leasing dilapidated homes to low-income consumers in Pennsylvania. *See* PTX 3.[1] FTE was later added as a defendant in the Allegheny County action. *See* Tr. at 304:12–18.[2]

In the spring of 2019, the Szkaradeks received an offer from a non-party to purchase the Vision portfolio of properties. *Id.* at 449:23–450:4. At about that time, Alexander Szkaradek met Suneet Singal, who ultimately became the broker for the sale of the Vision portfolio to FTE. *Id.*; *see also id.* at 100:22–101:8. In the summer of 2019, Mr. Singal approached Richard de Silva, the CEO of Lateral Investment Management, LLC ("Lateral"), with a proposal to sell the Vision portfolio to Lateral. *Id.* at 359:21–361:2. Mr. de Silva began negotiating with Mr. Singal and later

---

[1] Plaintiff FTE's exhibits introduced at the evidentiary hearing will be referred to as "PTX."
[2] The transcript of the evidentiary hearing is numbered continuously across the two days of the evidentiary hearing. References to the transcript include Tr. and the page and line numbers of the transcript. The trial transcript can be found on the district court docket sheet for this case at docket entry nos. 118 and 119.

brought the opportunity to purchase the Vision portfolio of properties to FTE's board of directors. *Id.* at 100:22–101:21. At that time, Mr. de Silva was not a member of FTE's board, but he was familiar with FTE because Lateral owned a security interest in FTE's assets. *See* Dkt. No. 87, Exh. A at 1. Mr. de Silva became an FTE board member on October 18, 2019, when FTE reconstituted its board of directors. *See* Tr. at 360:9–14. On October 22 and 23, 2019, FTE's new board met with Mr. Singal and his employees to discuss the proposal for FTE to purchase the Vision portfolio properties. *Id.* at 363:18–364:18.

At some time between the October 2019 board meetings and the ultimate sale of the Vision portfolio to FTE in December 2019, FTE became aware that Vision was the subject of at least two consumer protection actions, one in Pennsylvania and the other in New York, brought by the respective state attorneys general. *See* Tr. at 420:22–421:23; *see also id.* at 422:24–425:17. Shortly before closing on the purchase of the Vision portfolio, FTE also became aware that the Securities and Exchange Commission ("SEC") had filed fraud charges against Mr. Singal. *Id.* at 369:13–371:1. FTE understood that properties held by Vision were "troubled" or "distressed" at the time of the acquisition. *Id.* at 76:4–13. However, the FTE board members took the position that the portfolio could be rehabilitated and that the purchase would help FTE get "back on its feet." *Id.* at 365:24–366:9.

FTE needed to "get back on its feet" because it was also a troubled company at that time. FTE adduced evidence that in early 2019, FTE became aware of an alleged fraud involving usurious loans orchestrated by its former Chief Executive Officer ("CEO"), Michael Palleschi, and its former Chief Financial Officer ("CFO"), David Lethem, and discovered that Mr. Palleschi and Mr. Lethem had embezzled millions of dollars from the company. *See id.* at 328:19–330:6; *see also* Dkt. No. 1 ¶ 1 & n.1.

3

FTE and the Szkaradeks executed a purchase agreement in late 2019 in which the Szkaradeks transferred the Vision portfolio properties to FTE in exchange for a cash payment and FTE stock. *See* PTX 1. At that point, FTE created a wholly owned subsidiary, US Home Rentals, LLC ("USHR"), to manage the properties. *See* Tr. at 373:22–25; *see also id.* at 238:9–22. The purchase agreement was amended in 2021. *See* PTX 2.

Those purchase agreements and the associated events gave rise to this litigation. On June 14, 2022, FTE filed the complaint in this case against the Szkaradeks, alleging fraudulent inducement and fraud, tortious interference with contract, conspiracy, and breach of contract in connection with their involvement in inducing FTE to purchase the Vision portfolio. Dkt. No. 1. On September 5, 2022, the Szkaradeks filed counterclaims against FTE, alleging fraudulent inducement or, in the alternative, misrepresentation; breach of contract or, in the alternative, negligent misrepresentation; abuse of process; and securities fraud. Dkt. No. 20. The Szkaradeks have also filed a third-party complaint against additional defendants. Dkt. No. 21.

During the course of this litigation, the Szkaradeks moved for the appointment of a receiver over FTE. Dkt. No. 50. FTE opposed the motion, Dkt. No. 52. After receiving briefing from the parties, the court granted the Szkaradeks' request for an evidentiary hearing on their motion. Dkt. No. 75. That hearing was held on March 12 and 13, 2024.

The court sought post-hearing submissions regarding two issues that arose during the hearing. First, the Szkaradeks presented evidence through the testimony of FTE Board Member Joseph Francis Cunningham that FTE had failed to pursue a potentially highly valuable legal claim relating to the foreclosure of Benchmark Builders, LLC ("Benchmark"). *See* Tr. at 59:19–60:19. FTE acquired Benchmark in 2017, and it became a wholly owned subsidiary of FTE. Benchmark was FTE's primary asset as of 2019. Dkt. No. 88 at 2; *see* Tr. at 58:5–12. On October 10, 2019,

4

Benchmark, FTE, and Lateral entered into a foreclosure agreement based on Lateral's security interest in FTE's assets, including Benchmark. *See* Dkt. No. 87, Exh. A at 1.  The parties submitted briefing after the hearing regarding the Szkaradeks' argument that FTE should have pursued a claim to wrest control of Benchmark from Lateral (the "Benchmark claim"). Dkt. Nos. 87, 88.

Second, during the evidentiary hearing the parties repeatedly referenced the litigation in Pennsylvania.  With the consent of the parties, the court requested that the Pennsylvania Attorney General's office submit a letter responding to three questions from the court and addressing certain issues that arose during the evidentiary hearing. Dkt. No. 89; *see also* Tr. at 625:16–627:16.  The Pennsylvania Attorney General's office submitted a letter responding to the court's inquiries. Dkt. No. 97.  FTE, the Szkaradeks, and intervenor DLP Lending Fund, LLC ("DLP"), subsequently submitted responses to the letter from the Pennsylvania Attorney General's office. Dkt. Nos. 103, 106, 107.[3]  The Szkaradeks' proposed receiver, Ian Lagowitz, who testified at the March hearing, also filed a response to the letter from the Pennsylvania Attorney General's office. Dkt. No. 111.

---

[3] The City of Chicago, which has also filed a lawsuit against FTE and the Szkaradeks regarding the Vision portfolio properties, also submitted a letter in this litigation.  *See* Dkt. No. 98. FTE objects to this court's consideration of an unsolicited letter by a non-party.  *See* Dkt. No. 106 at 4–5.  The court appreciates that the City of Chicago has concerns regarding the impact of a receivership on the Chicago properties at issue in its litigation and will therefore accept the letter from the City of Chicago as, in effect, an amicus curiae submission from an interested party.

The Pennsylvania Attorney General's office likewise has an interest in this case and has provided information that is of use to the court.  Moreover, the parties did not object to the court's proposal that the Pennsylvania Attorney General's office be asked to provide its views on the receivership issue in this case.  The litigation in Allegheny County has a unique bearing on this case because the Szkaradeks were ordered to put their FTE equity and promissory notes into escrow by the Common Pleas Court in Allegheny County, *see* PTX 4, and FTE argues that in view of that order, the Szkaradeks lack standing to pursue their counterclaims in this case.  In addition, the Pennsylvania Attorney General's office has been able to offer important information regarding the status of the receivership over FTE properties that was imposed in the Northampton County, Pennsylvania, litigation.

5

This is not the first court to consider imposing a receivership over some of the Vision portfolio properties. DLP requested the appointment of a receiver by a Pennsylvania state court in an action before the Court of Common Pleas in Northampton County. *See* Dkt. No. 103 at 2. The Northampton County court granted that motion in May 2022 and appointed Mr. Lagowitz as the receiver over 2,392 Vision portfolio properties. *See* Tr. at 139:21–141:23. Of those properties, 391 were encumbered by DLP. *Id.* at 142:15–18. The court later vacated its receivership order in September 2022. *Id.* at 144:6–10. The parties to that case proposed, and the court entered, a consent order to have Mr. Lagowitz reappointed as receiver over just the 391 DLP properties. *Id.* at 144:11–24. That order was later expanded to add an additional 26 properties. *Id.* at 144:19–21.

Resolution of the receivership issue has been delayed in part because of the court's need to obtain additional information from both the parties and non-parties, which was submitted over a period of several months following the evidentiary hearing on the motion for appointment of a receiver in March 2024. *See* Dkt. Nos. 87, 88, 97, 98, 103, 106, 107, 110, 111, 115, 116, 117. In addition, proceedings have been ongoing in Pennsylvania state court related to the issues presented in this motion. And in July of this year, FTE asked this court to postpone a ruling on the request to appoint a receiver for three weeks to enable FTE to "conduct an investigation, including with its former transfer agent, to definitively establish that the Szkaradeks physically received all forms of FTE stock and debt, including the 11 million shares designated to FC REIT that they now, for the first time, falsely claim they never received." Dkt. No. 115 at 3. That period has passed, and the parties have added nothing new with respect to that issue. It is therefore time to dispose of the Szkaradeks' motion.

## II. Discussion

A federal court sitting in diversity must apply federal law when determining whether to appoint a receiver. *See* Fed. R. Civ. P. 66; *see also Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 825 (3d Cir. 1959); *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 842–43 (9th Cir. 2009); *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998); *Aviation Supply Corp. v. R.S.B.I Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993).[4] The decision whether to appoint a receiver lies within the discretion of the trial court. *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942). The appointment of a federal receiver is an "extraordinary" and "drastic" remedy that is justified only in extreme situations. *Id.*; *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993); *Comerica Bank v. State Petroleum Distributors, Inc.*, No. 3:08-CV-678, 2008 WL 2550553, at *4 (M.D. Pa. June 2, 2008); *Gandhi-Kapoor v. Hone Capital LLC*, 305 A.3d 707, 722 (Del. Ch. 2023); *see generally* 12 Charles Alan Wright et al., *Federal Practice & Procedure* § 2983, at 18 (2014).

In *KeyBank National Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119 (3d Cir. 2019), the Third Circuit set out four non-exhaustive considerations bearing on whether to appoint a receiver: (1) whether more modest measures would adequately protect the movant; (2) whether legal remedies appear to be inadequate; (3) whether there is ongoing "fraud or imminent danger of the property being lost, injured, diminished in value, or squandered"; and (4) "whether there had been a showing that the harm accruing to [the movant] by denial clearly overbalanced the harm to [the nonmovant] upon granting the appointment." 781 F. App'x at 122 (citing *Maxwell*, 131 F.2d at 403, and *Mintzer*, 263 F.2d at 825–26).

---

[4] This court addressed in detail the question of which law governs the appointment of a receiver in the order granting an evidentiary hearing. Dkt. No. 75 at 10–11.

The Szkaradeks argue that a receivership over FTE is necessary because the evidence demonstrates that FTE is insolvent and that FTE has abandoned its lease-to-own business. As part of its case, the Szkaradeks presented the following evidence: First, FTE has lost a large number of its employees: Mr. Cunningham testified that while FTE had 66 employees and contractor staff four years ago, it now has only three employees or contractors. Tr. at 70:1–18. Second, FTE has failed to pay certain directors and contractors, including Mr. Cunningham in his capacity as a board member and its information technology ("IT") services contractor. *Id.* at 44:2–13; Dkt. No. 116.[5] Third, FTE has not maintained its properties or paid certain taxes due on its properties, including properties that had consumers living in them, which has led to the loss of some of those properties due to foreclosure. *See* Tr. at 77:20–78:10, 147:11–21, 158:19–161:18. Fourth, consumers living in Vision portfolio properties have been unable to reach USHR representatives by telephone because USHR has maintained no active telephone line. *Id.* at 156:20–24. Fifth, on the accounting side, FTE has failed to file required annual Form 10-K reports with the SEC; it has not performed required audits; and it has not taken steps to have its stock relisted following the delisting of its stock in December 2019. *See id.* at 50:14–52:11. Sixth, FTE has missed critical deadlines in litigation, resulting in a court entering a three million dollar default judgment against FTE. *Id.* at 274:6–275:22.

---

[5] In early August of this year, the Szkaradeks submitted a declaration from Patrick Gearman to the court. *See id.* Mr. Gearman was originally hired by Vision Property Management to provide IT services in connection with the Vision portfolio properties. *Id.* ¶ 4. Mr. Gearman later became an independent contractor for FTE and USHR to provide the same services. *Id.* ¶ 7. Mr. Gearman stated in his declaration that he has not been paid for these services since March 2024. *Id.* ¶ 11. The Szkaradeks argue that the failure to pay Mr. Gearman to maintain critical IT services related to FTE and USHR's operations is another indication that FTE has abandoned its business. *Id.* at 1.

FTE does not contest several of the factual allegations regarding how it is conducting its real estate business. FTE does not disagree that it has substantially reduced its staff. FTE's current CEO, Michael Beys, testified that FTE has "gotten [its number of employees] down to the bare necessities to operate." Tr. at 235:2–236:23.[6] Mr. Beys testified that while FTE does pay for property insurance and property taxes on its properties, it has not been able to pay all of those expenses. *Id.* at 260:8–15, 261:14–262:2. Moreover, Mr. Beys testified that while FTE has done "everything [it] could to save as many people in their homes as possible," he acknowledged that FTE has lost some properties. *Id.* at 246:2–7. Regarding whether FTE maintains phonelines, Mr. Beys testified that FTE needs to fix the fact that there is no phoneline for consumers. *Id.* at 238:3–8. Mr. Beys admitted that FTE has not filed annual reports since 2019. *Id.* at 318:2–12.

Notwithstanding those problems, FTE argues that imposing a receivership on FTE would do more harm than good because, at this point, FTE is solvent and is pursuing valuable legal claims. Mr. Beys testified that FTE is solvent based on funding from Lateral and that it pays salaries with proceeds from selling properties. *See* Tr. at 347:6–348:10, 403:7–10. Mr. Beys described himself as "litigation CEO." *Id.* at 403:23–405:24. He testified that he was brought in as a board member originally because of his litigation experience to settle with convertible note holders who had been defrauded by FTE's former CEO and CFO. *Id.* at 328:3–3331:9. Mr. Beys later became a director and interim-CEO, a position he has held since December 2019. *Id.* at 362:16–20, 369:4–12.

---

[6] FTE also submitted a letter responding to the declaration of Mr. Gearman. Dkt. No. 117. FTE represents that Mr. Gearman is not a critical contractor; that FTE's in-house management team is capable of managing the relevant databases; and that Mr. Gearman has received payments that he did not disclose in his declaration. *Id.*

9

Mr. Beys further testified that FTE and Lateral have profit sharing agreements with respect to litigation proceeds, and that FTE has used the proceeds of those shared lawsuits to pay off debt. *Id.* at 336:12–24; *see also id.* at 346:22–348:10. He testified that Lateral and FTE's other creditors would not continue to fund that litigation if the court appoints a receiver over FTE. *Id.* at 348:14–349:1, 382:6–21; *see also* PTX 28.[7] That litigation includes a large claim against Marcum, LLP, FTE's former accounting firm that is alleged to have been involved in the fraud carried out by FTE's former CEO and CFO. *Id.* at 329:19–25, 332:8–18, 335:23–336:3.

Mr. Beys admitted that FTE has missed payments to some of its attorneys and failed to prevent a default judgment against itself in one case. He explained that those failures were attributable to the fact that FTE has had to "fight fires" and has been required to prioritize the payment of certain expenses. *Id.* at 246:2–9, 288:9–21, 292:8–293:20. Mr. Beys further testified that FTE's attorneys in this litigation, who had not been retained at the time of the default judgment, are currently seeking to vacate the default order. *Id.* at 276:23–278:1.

It is evident from the testimony of witnesses for both FTE and the Szkaradeks, as well as from the submission of the office of the Pennsylvania Attorney General, that to the extent FTE is maintaining its lease-to-own business, it is not running that business in a satisfactory way for its customers. However, a receivership is designed to protect the corporation and its shareholders as well as litigants with an interest in the corporation's property, not the corporation's customers. The issues that customers living in Vision portfolio properties face are considerable, but their

---

[7] During the hearing, the defendants objected on hearsay grounds to the admission of PTX 28, a letter from GS Capital to FTE stating that GS Capital would not fund litigation led by a receiver. *See* Tr. at 198:24–199:20. The court overruled that objection on the ground that the letter was not offered to prove the truth of matters asserted, but instead was a statement of GS Capital's intent not to fund litigation in certain circumstances, Tr. at 216:14–217:3. As such, the pertinent portion of the letter qualified for admission under Federal Rule of Evidence 803(3) as a statement of the declarant's intent.

complaints are better addressed through the various consumer protection actions that have been filed against both the Szkaradeks and FTE, as well as affiliated entities.

Considering the high bar for the appointment of a federal receiver, the record before the court does not justify imposing a receivership in this case. The factors that weigh the most heavily in the court's judgment on that issue are whether there is an imminent danger of the property being lost or diminished in value and whether there has been a showing that the risk of harm accruing to the Szkaradeks from denial of their motion outweighs the harm that would result from granting the request for appointment of a receiver.

From the record before this court, it appears that the Vision portfolio properties were troubled properties prior to the sale of the Vision portfolio properties to FTE. Many of those properties were in a state of disrepair, and the company was the subject of numerous consumer protection actions. *See* Tr. at 76:4–17, 422:24–10. While FTE has lost several of its properties to foreclosure, Mr. Beys testified that FTE does not have the funds to pay property taxes on every one of the properties it is at risk of losing. *Id.* at 261:16–25. Thus, while there is a substantial risk of more Vision portfolio properties being lost, it is not apparent to the court that a receiver could do a significantly better job at retaining or rehabilitating the Vision portfolio properties. Moreover, the Szkaradeks have not presented sufficient evidence to show the value of those properties. Much of Mr. Lagowitz's testimony was focused on a receiver's ability to save homes that are currently occupied by consumers. *See, e.g., id.* at 145:1–147:10. While Mr. Lagowitz's focus on protecting consumers is admirable, it does not support the Szkaradeks' case for appointment of a receiver, as that issue relates to the value of FTE's assets that are at risk of being squandered.

Moreover, FTE's position is that the primary driver of its value currently is its legal claims, including this one. FTE has profit-sharing agreements that have allowed it to stay afloat.

11

Appointing a receiver over FTE would put a receiver in control of litigation-oriented decisions. There is no evidence that a receiver would be better positioned to manage that litigation. In fact, given Mr. Beys' experience with FTE's litigation portfolio, it is likely that a receiver would be in a worse position to make those decisions. It is also likely that FTE's creditors, Lateral and GS Capital, would stop funding the various actions if a receiver were appointed. *See* PTX 28; Tr. at 348:14–349:1, 382:6–21. Viewing the record as a whole, the court cannot find that the harm to the Szkaradeks' interests resulting from the failure to appoint a receiver would outweigh the harm to FTE from wresting its litigation decisions away from it.

The Szkaradeks' position is that FTE has made bad litigation decisions because Lateral owns several of the relevant claims and that FTE has a conflict of interest with Lateral that has prevented FTE from pursuing the Benchmark claim. *See id.* at 587:14–588:13. However, the evidence shows that even where Lateral owns the claim—which is the case with the convertible noteholder litigation—Lateral has invested that money back into FTE in order for FTE to pay its expenses. *See id.* at 347:6–348:3.

Regarding the Benchmark claim, the post-trial briefing does not show that FTE has failed to pursue a viable legal claim because of a conflict of interest. FTE acquired Benchmark in 2017, and Benchmark became a wholly owned subsidiary of FTE at that time. As articulated in their letter brief, the Szkaradeks believe that FTE should have investigated three claims related to the foreclosure agreement: (1) that Lateral violated Nevada law by forming the agreement; (2) that Lateral's foreclosure on Benchmark was a fraudulent insider deal because Mr. de Silva knew of the crisis within FTE before it was made public and used that information for his own benefit; and (3) that FTE should intervene in a shareholder suit against Mr. Beys and his affiliates. Dkt. No. 88 at 6–7. FTE responds that those claims are baseless because Mr. de Silva was not an insider at

the time of the deal and there is no evidence as to the value of Benchmark compared to the $70 million in debt that FTE owed Lateral. *See* Dkt. No. 87.

Mr. Beys testified that because a similar argument was made in shareholder litigation in Nevada, he has reviewed the Benchmark claim with FTE's lawyers and has concluded that the claim is baseless. Tr. at 416:7–14. This court will not attempt to assess in detail the merits of the three potential Benchmark claims as part of this proceeding, except to say that the court is not persuaded by the Szkaradeks' briefing that FTE has failed to pursue plainly meritorious actions that could benefit the company.

Regarding whether more modest measures than appointing a receiver for FTE would adequately protect the Szkaradeks' interests, it is notable that FTE did not oppose a limited receivership over USHR. *See* Tr. at 412:8–413:19. The Szkaradeks argued that a limited receivership over USHR would not adequately protect them and that Mr. Lagowitz, the receiver they advocated for the court to appoint, would need to have full authority over FTE. *See id.* at 584:8–585:20. "Although a nonmovant's consent to the appointment of a receiver weighs heavily in favor of appointment of a receiver, the ultimate decision of whether to appoint a receiver is left to the discretion of the district court." *Midwest Bank v. Goldsmith*, 467 F.Supp.3d 242, 251 (M.D. Pa. 2020). Here, the court is not convinced that appointment of a receiver over USHR would do more good than harm.

The court asked the Pennsylvania Attorney General's office, which is engaged in ongoing litigation with FTE, to state its position as to the appointment of a federal receiver. That office responded that it has "serious concerns" about the management of the Northampton County

13

receivership, which could be replicated if a federal receiver were appointed for FTE.[8]  The Attorney General's letter related concerns that consumers covered by the Northampton County receivership continue to pay for their own repairs and cannot reach representatives of the receiver to answer their calls and emails.  Dkt. No. 97 at 11–12, 14–17.  The Pennsylvania Attorney General's office also noted that FTE properties are the subject of pending consumer litigation in Michigan, Illinois, and New Jersey, and that the pendency of those actions could impact the decision whether to impose a receivership over FTE.  *Id.* at 12–13.  In light of the expressed concerns regarding the management of the Northampton County receivership and various different problems that may be specific to properties in different geographic areas, the court is not convinced that that a federal receivership would benefit either the shareholders of FTE or even the consumers currently living in the former Vision portfolio properties.[9]

Finally, FTE argued at the evidentiary hearing that the Szkaradeks should be barred from moving to appoint a receiver because the Szkaradeks lack clean hands.  During closing argument, FTE argued that because the Szkaradeks had failed to comply with an order to turn their shares of FTE over to be held in escrow in the Allegheny County action, they should not be allowed to

---

[8] The receiver in the Northampton County case, Ian Lagowitz, is the same person the Szkaradeks have proposed to be appointed as the receiver in this case.

[9] DLP submitted a response to the Commonwealth's letter in which DLP argued that a federal receiver would be less hamstrung than the receiver in the Northampton County case. Dkt. No. 103 at 5. DLP's argument relates mainly to the perceived ability of a federal receiver to manage the sale of properties, particularly vacant properties, more efficiently than a receiver with a more limited mandate. For the reasons previously stated, however, the court is not satisfied that the Szkaradeks have shown that a receiver would either have the funds to maintain all the former Vision portfolio properties or that the approach employed by a receiver would benefit shareholders more than FTE's current litigation-based business plan. Moreover, to the extent that DLP's letter focuses on the added benefit that a federal receivership would confer in facilitating the sales of property by the Northampton County receiver, any such added benefit would not seem to apply outside that jurisdiction, since FTE has full authority to sell the properties to which it holds title; a federal receivership would not appear to offer any advantages in that regard.

pursue the equitable remedy of appointment of a receiver.  *See* Tr. at 608:7–611:3; *see also* PTX 4.  The Pennsylvania Attorney General's office submitted a petition for contempt against the Szkaradeks, requesting that the Pennsylvania court hold the Szkaradeks in contempt of court for failing to turn over their consideration from the 2019 and 2021 purchase agreements.  *See* Dkt. No. 97 at 10–11; *see also id.*, Exh. F.  The Szkaradeks represent that they have responded to that petition and related proceedings by reaching a consent agreement with the Pennsylvania Attorney General's office.  Dkt. No. 112.

Given this court's resolution of the Szkaradeks' motion, it is unnecessary to determine at this point whether the shares of FTE properly belong to the Szkaradeks or Pennsylvania.  It is also unnecessary to address FTE's contention, see Dkt. No. 110 at 2 and Dkt. No. 115 at 1, that the Szkaradeks have unclean hands and are therefore foreclosed from urging the court to appoint a receiver.[10]

---

[10] There are subtexts to the parties' positions on the present motion that are not immediately apparent from a narrow framing of the dispute over the appointment of a receiver.  FTE contends that the purpose underlying the Szkaradeks' effort to have a receiver appointed is to bring to an end FTE's litigation (including but not limited to this case) against them.  FTE's litigation against the Szkaradeks is based in large part on FTE's theory that the Szkaradeks and their associates defrauded FTE by inducing FTE to purchase the Vision properties by misrepresenting their value and failing to disclose the extent to which those properties were encumbered by substantial liabilities.  For their part, the Szkaradeks have asserted that FTE made misrepresentations to them in connection with the Vision portfolio sale and that FTE's principals are attempting to thwart the Szkaradeks' rights as shareholders to direct FTE's activities, and thus to deprive them of the benefits of their investment in the company.  *See* Dkt. No. 20.  While the court's decision on the receivership issue has not been driven by these considerations, it is impossible to ignore them when attempting to reach an equitable resolution of the present dispute.  A third consideration is the effect that the parties' dispute, and their ongoing conduct of their affairs, will have on FTE's customers, i.e., those individuals and families living in the still-occupied Vision properties.  As noted, the purpose of a receivership is to protect the shareholders and creditors of the company in question, not to act for the benefit of the company's customers.  But it is impossible to ignore the fact that the parties' ongoing dispute may have serious consequences for the customers, a factor that the court will take into consideration in further proceedings in this case.

For the foregoing reasons, the motion by the third-party plaintiffs to appoint a receiver is denied.

IT IS SO ORDERED.

SIGNED this 3d day of September, 2024.

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎_____
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎WILLIAM C. BRYSON
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎UNITED STATES CIRCUIT JUDGE