IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FTE NETWORKS, INC., § § *Plaintiff*, § § v. § § Civil Action No. 22-785-WCB ALEXANDER SZKARADEK and § ANTONI SZKARADEK, § **FILED UNDER SEAL** § *Defendants*. § § | |
| ALEXANDER SZKARADEK and § ANTONI SZKARADEK, § § *Third-Party Plaintiffs*, § § v. § § MICHAEL BEYS ET AL., § § *Third-Party Defendants*. § | |

**MEMORANDUM OPINION AND ORDER**

Defendants Alexander Szkaradek and Antoni Szkaradek (collectively, "the Szkaradeks") have filed three motions for partial summary judgment. For the reasons stated below, the Szkaradeks' first motion, Dkt. No. 90, is GRANTED. The Szkaradeks' second motion, Dkt. No. 92, is DENIED. The Szkaradeks' third motion, Dkt. No. 94, is DENIED.

**I.     Background**

Plaintiff FTE is primarily a real estate investment company. Defendants Alexander Szkaradek and Antoni Szkaradek (collectively, the "Szkaradeks") are FTE shareholders. Prior to 2019, the Szkaradeks were the principal owners of Vision Portfolio, a company that owned a

1

portfolio of "lease-to-own" homes located throughout the country. Vision Portfolio was managed by Vision Property Management, LLC ("Vision Property"), which was owned by the Szkaradeks.

In late 2019, FTE and the Szkaradeks executed a purchase agreement under which the Szkaradeks transferred the Vision Portfolio properties to FTE in exchange for a cash payment and FTE stock. *See generally* Dkt. No. 91-1, Ex. 1. The purchase agreement set forth certain restrictions and conditions with regard to the Szkaradeks' shares of FTE stock. Most pertinent here is the restriction that barred the shareholders from transferring their shares to an individual named Suneet Singal, or any persons or entities affiliated with Mr. Singal. *Id.* § 4.7(b). The purchase agreement was subsequently amended on two occasions. *See generally* Dkt. No. 91-1, Exs. 2 & 3.

On June 14, 2022, FTE filed the complaint in this case against the Szkaradeks, alleging fraudulent inducement, tortious interference with contract, conspiracy, and breach of contract in connection with their conduct in inducing FTE to purchase Vision Portfolio. Dkt. No. 1. On September 5, 2022, the Szkaradeks filed counterclaims against FTE, alleging fraudulent inducement or, in the alternative, misrepresentation; breach of contract or, in the alternative, negligent misrepresentation; abuse of process; and securities fraud. Dkt. No. 20. The Szkaradeks have also filed a third-party complaint against other defendants. Dkt. No. 21. During and prior to this litigation, the parties have also been defendants in litigation brought by several state attorneys general and various consumers.[1]

---

[1] Further details regarding the concurrent litigation were set forth in my recent opinion denying the Szkaradeks' request for a receivership. *See generally* Dkt. No. 120.

## II. Legal Standards

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine and material if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For an issue on which the nonmoving party bears the burden of proof at trial, the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c) as of 1986). The burden on the moving party in that situation can be satisfied by "showing"—that is by "pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party carries its burden, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up).

## III. Discussion

### a. First Summary Judgment Motion

The Szkaradeks move for summary judgment on FTE's second cause of action for tortious interference. *See generally* Dkt. No. 91. That cause of action is based on the following theory: The purchase agreement prohibits FTE stock from being transferred to Mr. Singal; in violation of that prohibition, however, the Szkaradeks conspired with Mr. Singal to interfere with the purchase agreement by "surreptitiously transferring more than 11 million shares of FTE" to Mr. Signal through certain shell companies. Dkt. 1 ¶¶ 123, 126.

The Szkaradeks offer two arguments in support of their motion. First, they argue that the claim fails as a matter of law because, as parties to the contract at issue, they cannot tortiously interfere with that contract. Dkt. No. 91 at 11. Second, they argue that FTE's allegations in support of the claim are contrary to the record. *Id.*

"A federal court sitting in diversity must apply substantive state law and federal procedural law." *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "Delaware courts follow Section 766 of the Restatement (Second) of Torts in assessing a tortious interference claim." *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012). Section 766 requires, *inter alia*, "an intentional act that was a significant factor in causing the breach of contract." *Id.* That "intentional act must be committed by an entity other than an agent for a party to the contract because an agent cannot interfere with his principal's own contract, provided the agent does not exceed the scope of his authority. In other words, the party who tortiously interferes must be a third party to the contract, as well as a stranger to the business relationship underpinning the contract." *Sees v. Mackenzie*, No. N22C-09-813 SKR, 2023 WL 5202675, at *4 (Del. Super. Ct. Aug. 14, 2023), *aff'd*, 315 A.3d 499 (Del. 2024) (cleaned up).

The Szkaradeks argue that the governing Delaware case law forecloses FTE's claim of tortious interference with contract because they were parties to the purchase agreement, as is clear from the copy of the purchase agreement attached to their motion. Dkt. No. 91, Ex. 1. FTE does not dispute that the Szkaradeks were parties to the agreement. *See* Dkt. 109 at 28.

FTE responds by focusing on the references to "agents" in the case law. FTE's argument is that Alexander Szkaradek "wore two hats and was both a party and an agent for the parties" and that "there is substantial evidence showing that Alexander Szkaradek exceeded the scope of his

4

authority" as an agent. Dkt. No. 109 at 28–29. That argument ignores the requirement under Delaware law that the party "who tortiously interferes must be a third party to the contract, as well as a stranger to the business relationship underpinning the contract." *See Sees*, 2023 WL 5202675 at *4. Even if FTE is correct that Alexander Szkaradek was an agent for a party to the agreement, his simultaneous role as a party to the agreement means he was neither a third party to the agreement nor a stranger to the business relationship that was established by the agreement. *See id.* I therefore agree with the Szkaradeks that FTE's second cause of action for tortious interference fails a matter of law. *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 (D. Del. 2012) ("[A] party to a contract cannot tortiously interfere with that very same contract."). Because I agree with the Szkaradeks' first argument challenging the tortious interference with contract claim, I need not address their second argument. The Szkaradeks' motion for summary judgment on the tortious interference with contract claim is granted.

  **b. Second Summary Judgment Motion**

The Szkaradeks move for summary judgment on FTE's fifth cause of action for breach of contract and injunctive relief. *See generally* Dkt. No. 93. FTE has alleged two theories supporting its breach of contract claim: (1) that the Szkaradeks and Mr. Singal conspired "to withhold 11,031,688 shares of FTE, which were promised to be transferred to . . . the shareholders of the FC REIT" in violation of the purchase agreement, and (2) that the Szkaradeks agreed "to transfer 11,031,688 of their own FTE common shares to Innovativ, an affiliate of Singal that is acting in concert with Singal, his family members and/or affiliates," in violation of the purchase agreement, which prohibited the transfer of shares to Mr. Singal or any of his affiliates. Dkt. No. 1 ¶¶ 159–162.

5

The Szkaradeks argue that summary judgment should be granted on the breach of contract claim because "the Szkaradeks have not transferred any of the shares of FTE that they received as equity compensation in connection with the Vision Transaction to anyone." Dkt. No. 93 at 12. The Szkaradeks, however, offer no record citation for that assertion. *See id.* Instead, they argue that the "fact is evidenced by FTE's requested relief that the Szkaradeks be enjoined from making any transfer to the 'Singal Parties' *in the future*." *Id.* (original emphasis).

Federal Rule of Civil Procedure 56(c)(1) requires that "[a] party asserting that a fact cannot be [] genuinely disputed must support the assertion by [ ] citing to particular parts of materials in the record . . . ." Whether or not the Szkaradeks have transferred any shares is a factual question that is material to FTE's breach of contract claim. The Szkaradeks' motion lacks any record citation for its assertion that they have not transferred any shares.

To be sure, on an issue on which the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. In this instance, however, FTE identifies record evidence contradicting the Szkaradeks' assertion that there has been no transfer of shares. *See, e.g.*, Dkt. No. 109 at 12–13 (citing Ex. 1 at 567:7–569:6 (testimony given by Antoni Szkaradek that he does not know how many, if any, FTE shares he owns));[2] *id.* (citing Ex. 2 at 122:8–128:21 (testimony given by Joseph Cunningham that Tom Coleman may have received shares from the Szkaradeks)). FTE further submitted a declaration from its CEO in which the CEO testified that he had multiple phone calls with Mr. Coleman, one of Mr. Singal's affiliates, during which Mr. Coleman represented that he

---

[2] FTE's response brief miscites the testimony as Exhibit 2. The testimony is attached as Exhibit 1.

6

owned all the FTE shares originally held by the Szkaradeks. *See* Dkt. No. 109-6, Declaration of Micheal Beys, ¶¶ 25, 29; *see also id*. ¶ 15 (explaining that Mr. Coleman requested an inspection of FTE's books and records, which is a request that, without ownership of the Szkaradeks' shares, Mr. Coleman would lack the authority to make).

In support of its other breach of contract theory—that the Szkaradeks did not transfer their shares to FC REIT as they were required to do—FTE points to evidence that the Szkaradeks were unaware of that requirement and have not complied with it.[3] *See* Tr. 475:3–15, 476:5–481:19. Drawing all inferences in favor of FTE as the nonmoving party, I find that the evidence is sufficient to create a genuine dispute over a material question of fact, i.e., whether the Szkaradeks have transferred any shares and thus whether they are in breach of the contract.

The Szkaradeks argue in their reply brief that FTE has "admitted that the Szkaradeks are the record holders of the shares." They cite this court's order granting their motion for judgment on the pleadings as evidence in support of their argument that there has been no breach. Dkt. No. 113 at 16. As an initial matter, that argument was not made in the Szkaradeks' opening brief, and "[a]rguments raised for the first time before a district court in a reply brief are deemed forfeited." *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023). But even apart from the fact that the argument was not made in the Szkaradeks' opening brief, the argument does not establish that summary judgment in the Szkaradeks' favor is appropriate. The order granting the Szkaradeks' motion for judgment on the pleadings was specific to the issue of whether the Szkaradeks would be permitted to vote their shares as record owners of the shares. *See* Dkt. No. 41 at 10. The order explicitly noted that it was not making any findings beyond that the Szkaradeks were entitled to

---

[3] In passing, FTE asks for an adverse inference based on the Szkaradeks' failure to produce documents. Dkt. No. 109. Whether FTE is entitled to that relief is better addressed in the context of jury instructions at a later date.

7

vote the shares; in particular, the order noted that it was not making a finding that "any election in which the Szkaradeks vote their shares is necessarily valid." *Id*. Thus, that order did not resolve whether the Szkaradeks are liable for breach of the contract.

The Szkaradeks also argue that they could not have made an effective transfer of the shares without FTE's approval. Dkt. No. 113 at 3–4. Procedurally, that argument is also new in the Szkaradeks' reply brief and is therefore forfeited. *Niaspan*, 67 F.4th at 135. In any event, the Szkaradeks' only legal support for that assertion is a cursory reference to a "Rule 144." *See* Dkt. No. 113 at 3. From the Szkaradeks' brief, however, it is unclear what Rule 144 refers to or how it applies here. *See id.* I decline to attempt to decipher what legal authority the Szkaradeks seek to invoke and how to apply it. Furthermore, the Szkaradeks' only factual support for the assertion consists of holdings statements as of November 12, 2021, issued by a Nevada agency and transfer company, and a declaration from Mr. Coleman, which tracks the assertions made in the Szkaradeks' brief. *See* Dkt. No. 113-1 ¶ 17–19; Dkt. No. 113-3. Drawing all reasonable inferences in favor of FTE, I find that evidence to be contrary to the representations from FTE's CEO in his declaration and thus that there is a dispute of material fact as to who actually owns the shares. Thus, the Szkaradeks have not established that, as a matter of law, they could not have effectuated a transfer without FTE's approval, nor have they established that there is no genuine dispute of material fact that they remain the holders of the shares today.

The remainder of the Szkaradeks' reply challenges the sufficiency of the evidence put forth by FTE. *See, e.g.*, Dkt. No. 113 at 17 ("FTE would have clear documentary evidence to support its claim if any such transfer has occurred."), *id.* at 18 ("FTE presents limited evidence of tangential involvement by Innovativ's principle in a single unrelated business transaction."). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

8

inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255. Because, at this stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *id.*, I find FTE's proffered evidence to be sufficient to defeat summary judgment. Thus, I will deny this motion.

Separately, the Szkaradeks challenge FTE's request for injunctive relief. *See* Dkt. No. 93 at 14. FTE made a request for an injunction as part of its prayer for relief (as opposed to, for example, seeking a preliminary injunction).[4] *See* Dkt. No. 1 at 29. The threshold question that must be answered before any relief can be granted is whether the Szkaradeks are liable. Because I cannot resolve that question at this stage, I defer on the issue of injunctive relief until after liability is resolved.[5] *See Anderson*, 477 U.S. at 255 ("Neither do we suggest that . . . the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

### c. Third Summary Judgment Motion

Finally, the Szkaradeks move for summary judgment on FTE's third cause of action seeking indemnification. *See generally* Dkt. No. 95. FTE's indemnification claim is based on section 7.2 of the purchase agreement. FTE has alleged two theories: (1) that the Szkaradeks failed

---

[4] FTE argues that "[t]o the extent the Szkaradeks still possess any shares, they should be directed to comply with the PA AG Order requiring them to turn over all shares." Dkt. No. 109 at 27. FTE, however, has not formally moved for any relief. Thus, I understand FTE's argument to be directed to support the issuance of the injunction FTE plans to seek if it should prevail on the liability issue. It is therefore premature to address any injunction arguments at this time.

[5] The Szkaradeks also argue that complying with the requested injunction would necessitate violating a court order issued in pending litigation in Pennsylvania. Dkt. No. 93 at 13–15. As with the other injunction issues, that argument is premature and more appropriate for resolution following a decision on liability, at which point I will have a full evidentiary record before me to aid in determining whether the Szkaradeks are correct on that point and, if so, to assess the appropriate course of action.

to obtain the necessary consent to transfer assets, as required by the purchase agreement, and (2) that the Szkaradeks made "material factual misrepresentation[s]" that their "Equity Interests were free and clear of all Liens" and about whether they were "the subject of multiple ongoing lawsuits." Dkt. No. 1 ¶¶ 133–140. Although the Szkaradeks' opening brief challenges both theories, their reply brief challenges only the first theory. *See* Dkt. No. 113 at 19–20. Thus, I consider only their arguments regarding the first theory.

FTE's first theory is that the Szkaradeks needed the consent of Inmost Partners, LLC ("Inmost"), which is FTE's largest lender, before the Szkaradeks could transfer ownership of certain assets. *See* Dkt. No. 1 ¶¶ 69–70. According to FTE, the Szkaradeks did not obtain that consent, causing Inmost to "exercise its managerial security interests" with respect to those assets. *Id.* ¶ 74. As a result of that failure, FTE contends, the Szkaradeks' representations and warranty in the purchase agreement that no consents were necessary were false. *Id.* ¶ 136.

The Szkaradeks argue that they did not need to obtain consent before transferring assets, so "any default caused by the transfer of the ownership interests" was not their fault. *See* Dkt. No. 95 at 9, 11. Specifically, they explain that they owned an entity known as Dobry Holdings LLC ("Dobry"), which was the owner of the assets. *Id.* at 10. They subsequently transferred their ownership of Dobry, but Dobry remained the owner of the assets. *Id.* In their view, the loan documents did not require Inmost's consent for the Szkaradeks to transfer ownership of Dobry, so that transaction did not violate the agreement. *Id.*

Instead, the Szkaradeks argue, it was FTE that "did not seek or obtain the consent of Inmost prior to making [an] unliteral change" in ownership. *Id.* Thus, they argue that "[s]ince Inmost's consent . . . was not required in connection with the Vision Transaction, FTE's indemnity claim based on the need for such approval is unavailing" and that "the inescapable conclusion is that any

10

default caused by the transfer of the ownership interest" was caused by FTE's "failure to comply with the Vision/Inmost Loan Documents." *Id.* at 11.

In response, FTE identifies a notice of default that Inmost sent to the Szkaradeks and Dobry, in which Inmost asserted that Dobry triggered a default event when it transferred ownership of the assets to FTE without Inmost's consent. *See* Dkt. No. 109-16 at 4. The Szkaradeks characterize the notice of default very differently, as constituting Inmost's "advi[sing] that it was aware of the Vision transaction and stat[ing] that a transfer of ownership of the [assets] away from Dobry without its approval would be a default." Dkt. No. 95 at 5. Given the parties' conflicting interpretations of those events, there is a material dispute of fact at least as to the application of the notice requirement and whether it supports FTE's theory that the Szkaradeks caused the default, or whether the notice requirement supports the Szkaradeks' theory that FTE caused the default.

An admission in the Szkaradeks' reply brief provides further support for my finding that there is a factual dispute precluding summary judgment as to the third cause of action. In that brief, the Szkaradeks identify statements FTE made in a 10-K filing that "Inmost claims that . . . [FTE] failed to obtain consent from the Noteholder Agent before transferring the equity interests of certain Entities." *See* Dkt. No. 113 at 19 (citing FTE's 10-K filing). In the Szkaradeks' view, the fact that FTE never "submitted any subsequent public filing which contradict[s] or otherwise recant[s] these statements" establishes that there was no dispute of fact as to which party caused the default. But the Szkaradeks acknowledge that FTE submitted a declaration with its opposition brief that "directly contradict[s] the prior public statements made by FTE in [its] SEC filings." Dkt. No. 113 at 20. Thus, whether the 10-K is accurate or whether the representations in the declaration are accurate is another disputed issue of fact. Accordingly, I will deny this motion.

11

Separately, in its opposition brief FTE argues that "it cannot be disputed that [Dobry's] sale of its Equity Interests and/or Assets without Inmost's consent . . . led to FTE's right to indemnification under the Purchase Agreement." Dkt. No. 109 at 20. Thus, FTE argues that it is "entitled to a finding of liability against the Szkaradeks as a matter of law." *Id*. FTE, however, has not formally moved for summary judgment, so FTE appears to be asking me to enter summary judgment for it *sua sponte*. In the Third Circuit, "a party must be given notice when summary judgment is being contemplated against it so that the evidence necessary to oppose the motion may be marshaled and presented to the Court." *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004); *see also Forrest v. Parry*, 930 F.3d 93, 111 (3d Cir. 2019) ("whether expressly or in effect, a district court may not grant summary judgment without providing the losing party notice, or a notice-equivalent, and an opportunity to oppose"). Here, the Szkaradeks were not given notice of the possibility that summary judgment finding them liable on the indemnification cause of action would be entered. Moreover, in the Third Circuit, "the *sua sponte* grant of summary judgment, without giving notice to the parties, is not the preferred method by which to dispose of claims. This is so not only because district courts run the risk of unduly prejudicing the parties, but also because such grants of summary judgment can have serious, if unintended, consequences." *Gibson*, 355 F.3d at 223. In view of that guidance and the fact that FTE did not formally move for summary judgment, I decline to find for FTE on the issue of liability for indemnification.

\* \* \*

In summary, my rulings are as follows:

1. The Szkaradeks' first motion for summary judgment on the second cause of action is granted.

      2.      The Szkaradeks' second motion for summary judgment on the fifth cause of action is denied.

      3.      The Szkaradeks' third motion for summary judgment on the third cause of action is denied.

*   *   *

The Szkaradeks have filed their reply memorandum in support of their summary judgment motions under seal. Out of an abundance of caution, I have therefore filed this order under seal. Within three days, the parties are directed to advise the court by jointly submitted letter if there are any portions of this order that should remain under seal and, if so, to explain why. An unsealed version of this order will be docketed after counsel's letter is received.

IT IS SO ORDERED.

SIGNED this 11th day of October, 2024.

_____<br>
WILLIAM C. BRYSON<br>
UNITED STATES CIRCUIT JUDGE